Alan Jones
16406 270th Pl NE
Duvall, WA 98019
Tel: 318-759-7497
Email: alan@jones.how

Pro Se Defendant

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| Light Field Lab, | Case Number: 4:23-CV-05344-YGR |
| Plaintiff(s), | **MOTION TO DISMISS AND COUNTERCLAIMS** |
| v. | |
| Alan Jones, | |
| Defendant. | |

Unfortunately, I must begin with an apology. I am aware of my obligation under FRCP Rule 8(d)(1) and so strive to be concise. Inexperience, case and relevant law complexity, and the relevant law quantity make brevity, both of statements and overall, challenging.

I believe that the facts on the papers are sufficient to make a determination on the arguments contained within this motion. As such, I request that this motion be decided on the papers without oral arguments as per Fed. R. Civ. P. 78(b) "By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings." Further supported by N.D. Cal. Civ. L.R. 7-1(b) which states "In the Judge's discretion, or upon request by counsel and with the Judge's approval, a motion may be determined without oral argument or by telephone conference call."

## FACTUAL BACKGROUND

1. *Legal Basis of Underlying Disagreement*: The disagreement which precipitated Plaintiff's complaint was an allegation of disability discrimination and retaliation. In order to evidence this claim, as required under FRCP 11(b)(3), Exhibit A has an email from the EEOC dated October 30th 2023, eleven days after Plaintiff first filed their case, setting up an interview appointment

with them for January 18th 2024. While this evidence does support that claim, it would be even more compelling should I supply a document providing evidence of the underlying claim from prior to their f ling. I have such evidence available, but under the Federal Rules of Evidence Rule 408 I am unable to supply it without the court's permission. As such, I have attached a proposed order to allow my amending this motion with exhibits containing such evidence under FROE Rule 408(b) for the purpose of establishing the underlying disagreement. Precedent exists supporting this "The district court concluded that portions of the e-mails were admissible for permitted purposes, such as showing that Dr. King advised UHS that she had a claim for employment discrimination." King v. Univ. Healthcare Sys, 645 F.3d 713, 720 (5th Cir. 2011) Should the order be granted, I would ensure that any f nancial information or aspects inadmissible under FROE Rule 408(a) are redacted.

2. *Defendant's Administrative Remedies Were and Are Not Exhausted*: Given the EEOC interview is not until January 18th 2024, and was not even booked at the time of Plaintiff's f ling, it is impossible for Defendant to have exhausted their administrative remedies. There are also multiple possible outcomes from the administrative process. For an employee to pursue a lawsuit against an employer due to wrongful termination, they are legally required to exhaust administrative remedies. "[B]efore bringing suit under Title VII, a claimant must exhaust her administrative remedies." Crowder v. Railcrew Xpress, 557 Fed.Appx. 487, 491 (6th Cir. 2014); see 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1).

3. *Termination Caused Options Expiry and Vesting Cessation:* Termination was the cause for cessation of options vesting and set the time period in which options could be vested. As evidenced in Plaintiff's complaint, Dkt. No 1-14,16,21,22.

4. *All Potential Resolution Discussions Were Settlement Communications:* Prior to Plaintif f ling suit, any communications that may or may not have occurred with relation to any potential resolution of the underlying matters were settlement communications. As such, there were no statements made regarding any form of satisfactory resolution outside of settlement communications. Unfortunately, I cannot present something which does not exist as evidence to the court, however, this absence is relevant to later arguments.

5. *Plaintif Seeks Relief to Protect Equity:* In their complaint Dkt. No 1, Prayer for Relief-4 Plaintiff seeks to have the court declare that they have "no further or ongoing equity-related obligations to Jones." Plaintiff further reveals this desire in Exhibit B (it contained its own exhibits, plan related documents, omitted for clarity), which is the release and covenant not to sue Plaintiff sent by email and referenced in Dkt. No 22-IV-C.

6. *Plaintif Omits Wrongful Termination:* Plaintiff's Dkt. No 1 complaint fails to make any mention of the underlying disagreement. Plaintiff further avoids identifying the underlying laws involved in their f ling Dkt. No 22, despite referencing detail on other aspects of the issues raised in Dkt. No 21.

7. *Plaintif Alleges Threats Without Specif city or Evidence:* Within Dkt. No 1, Plaintif makes multiple allegations or references to a threat of litigation from myself, but all lack evidence, concreteness, and specif city; for example, no laws are cited, no particular acts, nor is the context of these alleged threats provided. Such as "Jones threatens to sue to obtain the equity interest in these shares.", "Jones's continued threats to sue.", "further demands and threats from him", and implicitly via "threatened litigation is also harmful". Later, in Dkt. No 22 they reference emails and conversations, again without specif city as to the issues, and all communications referenced were privileged.

8. *Without Specif city or Evidence Plaintif Claims Defendant Made Demands:* Similarly to their claim of threats, their claim of demands are equally vague, without evidence, specif city, or concreteness. For example "Jones's demand for equity interests outside the Plan terms", "Jones's demands have a real, present and ongoing impact", "an impossible choice: either give Jones what he demands", "Jones claims a right to stock equity interests exceeding $75,000.", "Jones, however, asserts an entitlement to company stock equity interest", "Jones asserts an entitlement to exercise", "Jones's assertion that he is entitled to stock equity interest", "Jones's insistence that he alone is exempt from the Plan", and implicitly via "Jones breached the agreements." They further these allegations in Dkt. 22. An important fact to note in considering this is stock options are not shares, acknowledged in Dkt. No 1-13, Plaintiff's complaint, "Stock options are not stocks".

9. *Plaintiff's Alleged Damages Lack Evidence, Concreteness, and Specif city:* The damages Plaintiff claims in Dkt. No 1 as grounds for f ling suit are either based on hypothetical actions which there is nothing forcing them to take, or a purported fear of litigation and related costs. They summarize these conclusory statements as such in Id. at 30 "Light Field Lab will face legal uncertainty and the risk of f nancial harm".

10. *Plaintif  and Counsel Were Aware of Defendant's Disability:* Due to the underlying disagreement being related to my disability, Plaintiff's counsel has been aware that I am disabled and immunocompromised since they were f rst engaged by Plaintiff. While this timeframe cannot be established with evidence at this time, as is required by FRCP Rule 11(b)(3), the admission of evidence as requested in Fact 1 would provide the evidentiary support required to make such a statement admissible under FRCP Rule 11(b)(3). However, their awareness of my being immunocompromised is additionally supported as it was stated in the email thread Exhibit C and the f lings Plaintif  has been served in Dkt. No 9 (through direct statement of being immunocompromised) and Dkt. No 12 (through statement of being a Type 1 Diabetic and the acute health risk of attending in person).

11. *Plaintif  and Counsel Were Aware of Defendant's Isolating:* Plaintiff's counsel is and was aware that I am isolating in order to protect my health (due to being immunocompromised as a result of my disability). This was communicated by my prior counsel and by myself including forwarding communication I sent my prior counsel to Plaintiff's counsel. This is evidenced by my referencing health risks of in person attendance in Dkt. No 12, which Plaintiff did not challenge, and further evidenced by an email thread in Exhibit C, which as can be seen were sent on October 26th, the day after their f rst personal attempt at service and only one week after their initial complaint was f led.

12. *Plaintiff Refused to Provide Waiver of Service:* Also referenced in Dkt. No 9 and further evidenced in Exhibit C, Plaintiff refused to provide a waiver of service despite being aware that I am immunocompromised due to my disability (Fact 10) and isolating (Fact 11).

**MOTION TO DISMISS AND
COUNTERCLAIMS**
PAGE **4** of **28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

13. *Plaintif Alleged Evasion of Service:* In Dkt. No 17 Plaintiff claims I evaded service. This was f led on November 28th 2023, thirty-three days after they were informed that I was not evading service, but isolating due to being immunocompromised as a result of my disability.

14. *Plaintif Alleged Police Involvement in Service:* In Dkt. No 17, Plaintif claims police were involved in the serving of process, but fails to give specif city sufficient to determine the intended meaning of involved, provides no evidence of involvement, nor do they establish their claim's relevance to the facts of the case.

15. *Plaintif Implied Causality Between Alleged Police Involvement and Appearance:* Also in Dkt. No 17, Plaintif implies causality between the alleged police involvement and my appearance by placing them in close proximity; the same sentence separated only by a comma. As previously mentioned, this was f led on November 28th 2023. That is f fteen days after they were made aware through my statements in Dkt. No 9 that I appeared as a result of their process servers' "increasingly f agrant violations of Washington State law regarding valid service."

16. *Process Server is Plaintif 's Agent:* As it relates to multiple arguments and counterclaims, it is important to establish that in engaging a process server Plaintiff is liable for the process server's actions. See Dale v. ITT Life Ins. Corp., 207 Cal. App. 3d 495, 501-02 (Cal. App. 4 Dist. 1989) (holding that a process server hired by a plaintiff is the plaintif 's agent, and the plaintiff is responsible for the process server's acts)

17. *Process Server Engaged in Trespass, Intimidation, and Harassment:* Plaintiff's process server trespassed on my property other than to go to the front door, invaded privacy by shining lights into the residence, while wearing a bulletproof vest and f rearm. This is evidenced in Exhibit D showing the process server pointing a f ashlight into the property, while wearing a bulletproof vest and f rearm, in a location only reachable by either climbing the deck or trespassing around the back of the house, up to the back door, and walking along the deck. Process servers also engaged in prolonged surveillance, which is more challenging for me to evidence here, but under FRCP 11(b)(3) I do believe that as process servers typically charge for mileage and hours, they would have provided documentation of the scope of their surveillance in order to provide reports and invoice the Plaintif , which should be evidenced during discovery.

**MOTION TO DISMISS AND
COUNTERCLAIMS**
PAGE **5** of **28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1

## LEGAL ARGUMENTS

2      Within this motion, I will be setting out multiple arguments as to why Plaintiff's claims

3  should be dismissed, which is allowed under Fed. R. Civ. P. 8(d)(3) "A party may state as many

4  separate claims or defenses as it has, regardless of consistency."

5      Under Fed. R. Civ. P. 8(d)(2) "A party may set out 2 or more statements of a claim or

6  defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a

7  party makes alternative statements, the pleading is sufficient if any one of them is sufficient." As

8  such, if any of the defenses presented here is suf cient for dismissal, then the pleading is

9  suf cient. Alternatively stated and logically equivalent, in order for this pleading to be

10  insuf cient all defenses presented within this pleading must be insuf cient.

11      Also, as I am Pro Se, there is the possibility my language and explanation may not be in the

12  form or language to which the court is accustomed. I hope that should I fall short in some way

13  my pleadings be understood as per Fed. R. Civ. P. 8(3)'s statement "Pleadings must be construed

14  as to do justice," which is all I seek.

15      Rule 12(b)(1) allows a party to challenge a federal court's subject matter jurisdiction. As the

16  party invoking subject matter jurisdiction of the federal court, the plaintif  bears the burden of

17  establishing that the Court has the requisite subject matter jurisdiction to grant the relief

18  requested. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A complaint

19  will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction

20  either "facially" or "factually." Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d

21  730, 733 (9th Cir. 1979); see also Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.

22  2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual.").

23      A challenge to subject matter jurisdiction is a factual attack when the moving party relies on

24  extrinsic evidence and does not assert a lack of subject matter jurisdiction solely based on the

25  pleadings. Safe Air for Everyone, 373 F.3d at 1039. "In resolving a factual attack on subject

26  matter jurisdiction, the district court may review evidence beyond the complaint without

27  converting the motion to dismiss into a motion for summary judgment." Id. (citing Savage v.

28  Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

**MOTION TO DISMISS AND
COUNTERCLAIMS
PAGE 6 of 28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1

### 1.  LACK OF RIPENESS

2

To show its claims are ripe, a plaintiff must establish that its claims do not "rest[ ] upon

3

contingent future events that may not occur as anticipated, or indeed may not occur at all . . . ."

4

Scott v. Pasadena Unif ed Sch. Dist., 306 F.3d 646, 656, 662 (9th Cir. 2002) (citations and

5

quotation marks omitted).

6

Due to Facts 1 and 2, it is impossible for Plaintif to establish ripeness until Defendant has

7

exhausted all administrative remedies, and, even then, would require some act indicating an

8

intention to sue made after they were exhausted. That is a future event, which has multiple

9

potential outcomes, may or may not occur, and would still leave room for an employee to make a

10

decision as to what they wish to do after completion. As such, Plaintiff's claims not only are

11

unripe, but it is impossible with the facts as they were at the time of f ling, or currently are, for

12

them to meet ripeness. As such, their claim should be dismissed.

13

### 2.  LACK OF STANDING

14

To establish Article III standing, a plaintiff must show: (1) the existence of an injury-infact

15

that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the

16

challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision.

17

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). To demonstrate standing at the pleading

18

stage, "the complaint must allege suf cient facts plausibly establishing each element of the

19

standing inquiry." Native Vill. of Kivalina v. ExxonMobil Corp., 696 F.3d 849, 867 (9th Cir.

20

2012)

21

Given Facts 7, 8, and 9 Plaintif 's complaint fails all of (1). Actual or imminent is also failed

22

due to Fact 2. Due to the failure of (1), (2) also fails. (2) additionally fails per Fact 9.

23

Redressability, (3) also fails due to Fact 1 and Fact 5 as the remedy they seek does not address

24

the legal uncertainty as it fails to address the matter of whether the termination was wrongful.

25

Failure of any of the three makes their argument insuf cient to establish Article III standing, as

26

such dismissal is appropriate for each individually.

27

28

### 3.  DECLARATORY JUDGMENT ACT

Under the Declaratory Judgment Act, "A party seeking standing has the burden of proving three necessary elements: (1) "injury in fact" — an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Neuse River Found., Inc. v. Smithfield Foods, Inc., 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002), review denied, 356 N.C. 675, 577 S.E.2d 628 (2003) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 364 (1992))."

These requirements are very similar to those of standing, and it fails for the similar reasons. Given Facts 7, 8, and 9, all aspects of (1) fail. Actual or imminent is also failed due to Fact 2, which additionally fails on conjectural or hypothetical as there are multiple potential resolutions for administrative remedies; Furthermore, it is unknown what an employee will decide after their administrative remedies have been exhausted. Due to the failure of (1), (2) also fails. (2) additionally fails per Fact 9. Redressability, (3) also fails due to Fact 1 and Fact 5 as the remedy they seek does not address the legal uncertainty as it fails to address the legal uncertainty of whether the termination was wrongful. Failure of any of the three makes their argument insufficient to warrant a Declaratory Judgment, as such Plaintiff is not entitled to seek Declaratory Judgment under the act and their claim should be dismissed.

### 4.  FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

"Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"; however, "a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to

1   relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a

2   cause of action will not do." Twombly, 550 U.S. at 555-56. To survive a Rule 12(b)(6) motion, a

3   plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl.

4   Corp. v. Twombly, 550 U.S. 544, 570 (2007)."

5   Facts 2, 6, 7, 8 are incapable of forming a legal theory under which relief can be granted;

6   which is apparent from the demonstration of its failures in arguments 1-3. As such, Plaintif's

7   claim should be dismissed under FRCP 12(b)(6).

8   **5.   FEDERAL RULES OF EVIDENCE 408(a) VIOLATION**

9   I am unable to make assertions as to the specifcs of why I claim that I did not demand shares

10   due to FROE 408(a) which prohibits me from requesting settlement communications classifed

11   under FROE 408(a)(1) be introduced for the purposes of impeachment.

12   Given Fact 4, the only potential source for Plantiff's counsel's allegations in Facts 6 and 7

13   could be settlement communications. In Dkt. No 22, Plaintif further sought to substantiate their

14   claim of threat to sue through referencing documents that could only be settlement

15   communications, a purpose clearly barred under FROE 408(a)(1).

16   Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from

17   a pleading an insufcient defense or any redundant, immaterial, impertinent, or scandalous

18   matter." Although Rule 12(f) is not premised on inadmissibility, a court "may strike ...

19   statements as immaterial and/or prejudicial [from a complaint] if those statements would be

20   inadmissible at trial." Collier v. Boymelgreen Devs., No. 06CV5425(SJ), 2008 WL 835706, at

21   *10 (E.D.N.Y. Mar. 28, 2008).

22   Based on this, I request that the court strike any statements which Plaintiff is unable to

23   substantiate through evidence without the use of settlement communications. Given there was

24   never any demand for shares, they will be unable to do so with or without communications

25   barred under FROE 408(a)(1). If their claim is not dismissed, Plaintiff could see if the court

26   would allow privilege to be waived as there is some ambiguity in case law as to whether

27   408(a)(1) can be waived. However, such a fnding is highly unlikely, see Baptiste v. Rohn, Civil

28   Action No. 2013-0104 (D.V.I. Mar. 29, 2016) and Alpex Computer Corp. v. Nintendo Co., 770

**MOTION TO DISMISS AND**
**COUNTERCLAIMS**
**PAGE 9 of 28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1    F. Supp. 161 (S.D.N.Y. 1991). However, I would welcome the decision regardless of whichever
2    way the court may rule.

3        Plaintiff's current statements are too general to prove actual controversy, they acknowledge
4    their alleged evidence is inadmissible (Dkt. No 22-IV-B-1), yet they're happy to ignore FROE
5    408 while making vague statements in order to create the facial appearance of suf ciency (Dkt.
6    No 22-II-2). Plaintiff's conduct suggests contempt for the rules of evidence and fails to meet
7    their burden to establish actual controversy. This alone is sufficient for their claim to be
8    dismissed.

9    **6.  FEDERAL RULES OF CIVIL PROCEDURE 11(b)(3)**

10       Fed. R. Civ. P. 11(b) ("Representations to the Court. By presenting to the court a pleading,
11   written motion, or other paper—whether by signing, f ling, submitting, or later advocating it—an
12   attorney or unrepresented party certif es that to the best of the person's knowledge, information,
13   and belief, formed after an inquiry reasonable under the circumstances:

14       (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary
15   delay, or needlessly increase the cost of litigation;

16       (2) the claims, defenses, and other legal contentions are warranted by existing law or by a
17   nonfrivolous argument for extending, modifying, or reversing existing law or for establishing
18   new law;

19       (3) the factual contentions have evidentiary support or, if specif cally so identif ed, will likely
20   have evidentiary support after a reasonable opportunity for further investigation or discovery")

21       (4) the denials of factual contentions are warranted on the evidence or, if specif cally so
22   identif ed, are reasonably based on belief or a lack of information.

23       Richter v. Oracle Am., 22-cv-04795-BLF, at *4 (N.D. Cal. June 15, 2023) ("In the Ninth
24   Circuit, Rule 11 sanctions are appropriate where: (1) attorneys make or use a court f ling for an
25   improper purpose; or (2) such a f ling is frivolous. See Townsend v. Holman Consulting Corp.,
26   929 F.2d 1358, 1362 (9th Cir. 1990) (en banc); see also Christian v. Mattel, Inc., 286 F.3d 1118,
27   1127 (9th Cir. 2002). A "frivolous" argument or claim is one that is "both baseless and made
28   without a reasonable and competent inquiry." Townsend, 929 F.2d at 1362.")

Facts 13, 14, and 15 have no claim as to why they are relevant to the case and could cause prejudice towards myself. As such, it appears that it may have been presented for an improper purpose.

As stated in Lack of Standing, redressability fails, which, given it means the relief sought doesn't match the damages claimed, and the omission of key details which supported that, it is also clear that the complaint's purpose itself is improper.

In Dkt. No 1-13, Plaintif 's complaint, Plaintiff indicates that stock options and shares are not the same - "Stock options are not stocks". Given that at no times were shares demanded in any communications, there can be no possibility, let alone likelihood, that such evidentiary support would ever appear with or without evidence barred under FROE 408(a). As such, the introduction of that claim, in addition to violating FROE 408(a) is therefore a violation of FRCP Rule 11(b)(3). Fact 13 is also a violation of FRCP Rule 11(b)(3) due to Fact 11 and that a waiver had been requested.

Due to Facts 1, 2, 3, 5, and 6, it is clear that Plaintiff's claims fail FRCP 11(b)(1, 2, and 3). Plaintiff omits material information which would make it clear their complaint fails to meet threshold requirements and seeks relief such that I alone would be exempt of the benef ts of the plan should an investigation f nd that my termination was wrongful. A reasonable and competent inquiry would have revealed any prosecution prior to exhaustion of administrative remedies to be baseless. These proceedings also delay, through interference of my time, with my ability to exercise those rights which will eventually result in the statute of limitations running out, assuming that the date of termination is considered the last act, denying me the possibility to exercise those rights. As such, I request that the court exercise its inherent power and dismiss the Plaintiff's claim.

## 7.  LACK OF PROSECUTION

The court has the "inherent power" to control its docket and may "impose sanctions, including dismissal, in the exercise of that discretion." Olivia v. Sullivan, 958 F.2d 272, 273 (9th Cir. 1992). Further, pursuant to Rule 41(b), dismissal with prejudice is appropriate when a plaintiff fails to prosecute an action. Fed.R.Civ.P. 41(b). The court must weigh five factors

MOTION TO DISMISS AND
COUNTERCLAIMS
PAGE **11** of **28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

before dismissing for failure to prosecute: "1) the public's interest in the expeditious disposition of cases; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the judicial policy favoring disposition of cases on their merits; and 5) the availability of a less drastic sanction." Moshin v. Cal. Dept. Water Resources, 52 F.Supp.3d 1006 (9th Cir. 2014) (citing Yourish v. California Amplifer, 191 F.3d 983, 990 (9th Cir. 1999)). Although dismissal is a harsh penalty and should not be imposed unless "extreme circumstances" exist (Thompson v. Housing Authority, 782 F.2d 829, 831 (9th Cir. 1986)).

Under the Federal Rules of Civil Procedure Rule 7.1(a)(2), all parties must fle a disclosure statement. Similarly, under Civil Local Rule 3-15, all parties must fle a certifcate of interested entities or persons. Plaintiffs are required to fle these documents with their initial fling. Over eight weeks ago. Plaintiff has highly experienced attorneys and even after I filed the required disclosures on December 4th 2023, they have still failed to. Though they clearly had time as they were able to prepare Dkt. No 22 in that period. Yet they still fail to enter these mandatory flings.

I believe the fve matters are for the court's judgment, as such I would only mention that any risk of prejudice is entirely the result of Plaintif's inaction in the circumstances described above. One of the purposes of the missing documents is to ensure a fair trial. As such, having that disclosure is critical; made even more so through the location of the jury pool and the likely sizable number of persons and entities who have interest and the reasonable possibility they could have connections to potential jurors. It seems reasonable to consider failing to take action to ensure a defendant receives a fair trial as an extreme circumstance. It is hard to imagine something more extreme in a justice system than denying fairness. As such, I request their claim be dismissed for a lack of prosecution.

Additionally, I request that, under Civil Local Rule 7-11, the attached proposed order compelling these disclosures be granted, whether or not the case is dismissed for this or any other reason, as to ensure fairness of the remaining proceedings. Precedent exists for this, though in the cited case the party was a defendant the rules apply to all parties, see Stewart v. Screen Gems-EMI Music, Inc., No. 14-cv-04805-JSC, at *3-4 (N.D. Cal. Jan. 13, 2015) ("a defendant does not have the discretion to decide whether to comply with Rule 7.1 and the Local Rule. The

**MOTION TO DISMISS AND
COUNTERCLAIMS
PAGE 12 of 28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1   language of the Rules is mandatory. If a defendant could decide for itself whether to comply then

2   the purpose of the Rules would be lost. CRS Recovery, Inc. v. Laxton, No. C 06-7093 CW, 2008

3   WL 4408001, *1 (N.D. Cal. Sept. 26, 2008)").

4   **8. MOOTNESS**

5       Article III of the United States Constitution limits the jurisdiction of federal courts to live

6   "Cases" or "Controversies." See U.S. Const. art. III, § 2, cl. 1. "The doctrine of mootness, which

7   is embedded in Article III's case or controversy requirement, requires that an actual, ongoing

8   controversy exist at all stages of federal court proceedings." Pitts v. Terrible Herbst, Inc., 653

9   F.3d 1081, 1086-87 (9th Cir. 2011) (citing Burke v. Barnes, 479 U.S. 361, 363 (1987)). The

10  Supreme Court has described mootness as "the doctrine of standing set in a time frame: The

11  requisite personal interest that must exist at the commencement of the litigation (standing) must

12  continue throughout its existence (mootness)." Arizonans for Official English v. Arizona, 520

13  U.S. 43, 68 n.22 (1997).

14      For the same reasons the case is unripe and lacks standing, the case is, and always has been,

15  moot. The facts upon which the case lacks standing have not changed and therefore, it has

16  always been moot. The lack of controversy is further substantiated by my acknowledgment in

17  Dkt. No 21 that "I have no intention of litigating the underlying issue I brought to them of my

18  belief that I was the victim of disability discrimination and retaliation."

19      No matter how much Plaintiff may wish it to be true in order to try substantiate this case as

20  justifable, I cannot even have that intention because my administrative remedies are not yet

21  exhausted. Additionally, morally I only wish for that to which I'm justly entitled and I have the

22  right to assert so without interference in administrative remedies. If wrongful termination did not

23  occur, then the timeframes for exercise are clear as per Fact 3. Unless my termination were to be

24  determined to be lawful, my administrative remedies exhausted, a right to sue issued, and I were

25  to indicate an intent to or to commence proceedings against Plaintiff, none of which have

26  occurred nor is there certainty they ever will, their suit is moot. As such their claim should be

27  dismissed.

28

MOTION TO DISMISS AND
COUNTERCLAIMS
PAGE **13** of **28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1

**COUNTERCLAIMS**

2

**1. ABUSE OF PROCESS**

3

Abuse of process is illuminated in Lunsford v. American Guarantee Liability Ins. Co., 18
4
F.3d 653, 655 (9th Cir. 1994) through their comparison of abuse of process and malicious
5
prosecution. "Abuse of process differs from malicious prosecution in that the gist of the tort is
6
not commencing an action or causing process to issue without justifcation, but misusing, or
7
misapplying process justifed in itself for an end other than that which it was designed to
8
accomplish."

9

The elements of abuse of process are stated in Spellens v. Spellens, 49 Cal.2d 210, 232-233 [
10
317 P.2d 613]: "`The essential elements of abuse of process, as the tort has developed, have been
11
stated to be: frst, an ulterior purpose, and second, a wilful act in the use of the process not proper
12
in the regular conduct of the proceeding. Some defnite act or threat not authorized by the
13
process, or aimed at an objective not legitimate in the use of the process"

14

Ulterior purpose can be established through the lack of redressability (as per Lack of
15
Standing arguments). The willful act aspect is established through Fact 6, the lack of
16
justiciability of their claims on many grounds yet their claims being brought none the less, and is
17
exceptionally well captured, along with additional evidence of ulterior purpose, in Exhibit B, the
18
release and covenant not to sue Plaintiff references in Dkt. No 22. The key aspects of that
19
document are Light Field Lab will dismiss claims if Defendant agrees to waive their rights under
20
the plan and with those rights waived Plaintiff has no issue with their exercising their wrongful
21
termination rights.

22

Plaintiff claims in Dkt. No 1 "Light Field Lab contends that Jones has no rights under the
23
express terms of the Plan Documents.", which due to Fact 1 can only be true if defendant's
24
termination was lawful. In that circumstance, the waiving of rights Plaintiff requests from
25
Defendant in order to cease litigation, which is effectively identical to the relief they seek from
26
the court, can not possibly have any effect on Plaintiff's liability in an administrative action
27
investigation. Why, then, is Plaintiff going to such lengths to have action taken to alter my rights
28
under the plan documents if they also believe such alteration would have no effect?

MOTION TO DISMISS AND
COUNTERCLAIMS
PAGE **14** of **28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1

## 2. RETALIATION

2

Under 29 U.S.C. § 215(a)(3) it is unlawful "to discharge or in any other manner discriminate

3

against any employee because such employee has f led any complaint or instituted or caused to

4

be instituted any proceeding under or related to this chapter."

5

"it needs no argument to show that fear of economic retaliation might often operate to induce

6

aggrieved employees quietly to accept substandard conditions." Mitchell v. DeMario Jewelry,

7

361 U.S. 288, 292 (1960)

8

"Section 704 of Title VII prohibits retaliation against an employee for opposing unlawful

9

discrimination." McGinest v. GTE Service Corp., 360 F.3d 1103, 1124 (9th Cir. 2004). "To

10

establish a prima facie case of retaliation under Title VII, [Cloud] must show 1) that [she] acted

11

to protect [her] Title VII rights; 2) that an adverse employment action was thereafter taken

12

against [her]; and 3) that a causal link existed between the two events." Id.

13

The first aspect is evidenced by Fact 1. The second element is evidenced by Dkt. No 1 and

14

indeed the existence of these proceedings as lawsuits can be considered a retaliatory act as per

15

United States v. Wagner, 940 F.Supp. 972, 978-80 (N.D.Tex. 1996) (holding that a lawsuit can

16

be a retaliatory action giving rise to a § 3617 claim). The final element, causality, is shown

17

through the arguments which established abuse of process and so does not bear repeating here.

18

## 3. FRAUD UPON THE COURT

19

Under the Federal Rules of Civil Procedure 60(b) a party may be granted relief from a

20

proceeding on the grounds of fraud, misrepresentation, or misconduct by an opposing party.

21

Fed. R. Civ. P. 60 ("(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER,

22

OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal

23

representative from a f nal judgment, order, or proceeding for the following reasons:

24

…

25

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct

26

by an opposing party;

27

") (Sections (b)(1), (b)(2), and (b)(4-6) omitted)

28

**MOTION TO DISMISS AND
COUNTERCLAIMS
PAGE 15 of 28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

Haeger v. Goodyear Tire & Rubber Co., 813 F.3d 1233, 1245 (9th Cir. 2016) held "that the 'end result of the scheme was to undermine the judicial process, which amounts to fraud upon the court.' (Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128 (9th Cir. 1995) citing Hazel–Atlas Glass Co. v. Hartford–Empire Co.,322 U.S. 238, 245–46, 250, 64 S.Ct. 997 (1944) (deliberately planned scheme to present fraudulent evidence constitutes fraud upon the court); Abatti v. C.I.R.,859 F.2d 115, 118 (9th Cir.1988) (fraud upon the court involves unconscionable plan or scheme to infuence the court improperly))."

Counterclaim 1 discussed Plaintif 's material omissions and misrepresentations to the court (as the purpose is a representation to the court, the fact alone of the true purpose being another proves it as misrepresentation), they also stand as arguments for fraud upon the court.

## 4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The elements of intentional infiction of emotional distress are: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376,  394 (1970).

"A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." Hughes, 109 P.3d at 976. "Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintif  is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." Molko v. Holy Spirit Assn., 762 P.2d 46, 63 (Cal. 1988) (en banc), superseded on other grounds by statute.

"Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." Hughes, 109 P.3d at 976" Wescott v. Beresford Corp., 22-cv-00067-JSC, at *12 (N.D. Cal. Apr. 8, 2022)

Just as the coercive power of fear of economic retaliation needs no argument, nor does the emotional distress the enacting of such retaliation need one. Not only is the case itself able to

MOTION TO DISMISS AND
COUNTERCLAIMS
PAGE **16** of 28

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1   induce this, but Plaintiff further weaponized my disability to ensure every action they took in this

2   maximized the threat to my health and Plaintiff's coercive power. See Facts 6, 12, 17. Being

3   sued for asserting Title VII protected rights is illegal, as discussed in retaliation; that alone makes

4   just that aspect obviously meet the severe and outrageous standard. The additional conduct goes

5   far beyond that and is plainly not "merely" outrageous, but vile and egregious.

6   **5. HARASSMENT**

7   Flowers v. Southern Regional Physician Serv, 247 F.3d 229, 234-35 (5th Cir. 2001)

8   ("existing decisions by the courts of appeals that have considered this issue evidence that a claim

9   for disability-based harassment is cognizable under the ADA, and several district courts have

10   already confrmed that such a cause of action exists. Accordingly, because Title VII has been

11   extended to hostile work environment claims, we follow the growing consensus that our

12   harassment jurisprudence be extended to claims of disability-based harassment. As such, we fnd

13   that a cause of action for disability-based harassment is viable under the ADA")

14   Flowers v. Southern Regional Physician Serv, 247 F.3d 229, 235-36 (5th Cir. 2001) ("A

15   cause of action for disability-based harassment is "modeled after the similar claim under Title

16   VII." McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 563 (5th Cir. 1998).

17   Accordingly, to succeed on a claim of disability-based harassment, the plaintiff must prove:

18   (1) that she belongs to a protected group; (2) that she was subjected to unwelcome

19   harassment; (3) that the harassment complained of was based on her disability or disabilities; (4)

20   that the harassment complained of affected a term, condition, or privilege of employment; and

21   (5) that the employer knew or should have known of the harassment and failed to take prompt,

22   remedial action.")

23   Harassment exists independently from the retaliation claim and intentional inflction of

24   emotional distress because many of the acts committed were chosen to specifcally target that my

25   disability leaves me immunocompromised. Facts 10, 11, 12, 16, and 17, and even this suit (as

26   there is no possibility of a broad waiver from all elements which usually require an in-person

27   attendance and the travel alone would force me to expose myself to significant risk), demonstrate

28   Plaintiff sought to target and exploit this.

**MOTION TO DISMISS AND**
**COUNTERCLAIMS**
**PAGE 17 of 28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

Fact 1 establishes (1) my protected group membership. The facts mentioned in the prior paragraph establish (2), (3), and (5). The arguments for abuse of process establish (4) with the privilege the rights afforded by the plan documents.

Given Facts 10, 11, 16, and 17, these actions also count as harassment under Wash. Rev. Code § 9A.46.020(1)(a)(iv) "Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical health or safety;"

## 6. BANE ACT VIOLATION

The Bane Act (Civ. Code, § 52.1) authorizes a civil action "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." ( Jones v. Kmart Corp. (1998) 17 Cal.4th 329, 331, 70 Cal.Rptr.2d 844, 949 P.2d 941 ( Jones ).)

To substantiate a Bane Act violation one must show "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." (Allen v. City of Sacramento (2015) 234 Cal.App.4th 41, 67 (Allen).)

Facts 1, 3, and 5 establish the various rights underlying the disagreement and the manner in which Plaintiff bringing this action interferes. The suit itself and the manner in which the acts involved have been carried out are already covered in this pleading and clearly demonstrate that their conduct involved not just threats, intimidation, or coercion, but all three. As such, Plaintiff's conduct violates the Bane Act and I request the court rule as such.

PRAYER FOR RELIEF

## 1. DISMISS PLAINTIFF'S CLAIM

Independently per each of the causes provided within this motion, I request the court dismiss Plaintiff's claims with prejudice and bar them from any claim as to costs incurred or any other remedy or relief which they may seek in relation to this matter.

In further support that awarding their fees would be inappropriate, given the underlying matter is related to wrongful termination we can look to cases where the party accused of having infringed civil rights is the defendant. Given the peculiar circumstance of this case where the

MOTION TO DISMISS AND
COUNTERCLAIMS
PAGE **18** of **28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

usual role of plaintiff and defendant are reversed, due to Plaintiff's choice to attempt to preemptively litigate away potential liability, we must bear in mind the roles are reversed in the below.

Summers v. A. Teichert Son, Inc., 127 F.3d 1150, 1154 (9th Cir. 1997) ("attorney's fees should be granted to a defendant in a civil rights action only "upon a f nding that the plaintiff's action was frivolous, unreasonable, or without foundation." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978).")

Bringing this action was unlawful on many grounds argued in this pleading, and as such Plaintiff is not entitled to their costs, though even should that be ignored Plaintiff should still be held to the same standard as if they were an accused defendant in a civil rights action. Plaintif has not even acknowledged the underlying issues, let alone proven that questions as to the lawfulness of my termination were meritless, and therefore could not be reasonably granted costs on those grounds also.

Finally, with relation to dismissal, given the usual timeframe for providing an answer if dismissal is denied is only two weeks and I am Pro Se with no prior experience; I request that in the (I would hope extremely unlikely given the number of threshold issues which this fails upon) event that dismissal is denied, I be given a much longer timeframe to prepare a full answer. While I want this addressed and gone quickly, I have had to take around half the time I should have been working off as well as all of my weekends and evenings. This is unsustainable and may result in my loss of employment in addition to the extreme harm it is causing to my health.

## 2. DECLARE LITIGATING THIS SUIT AS RELATED TO MY TERMINATION

As mentioned previously, I am required to exhaust administrative remedies prior to bringing a wrongful termination suit and I desire to access administrative remedy rather than litigate. As such I do not wish to, may or may not be allowed to, and therefore am not, f ling any counterclaim that relate to the underlying matters. The only matters I am bringing counterclaim in relation to are the unlawfulness of Plaintiff bringing this suit and the consequential unlawfulness of all acts involved in doing so. To ensure that is clear, all claims within this f ling

**MOTION TO DISMISS AND**
**COUNTERCLAIMS**
PAGE **19** of **28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1    would not exist had the Plaintiff not initiated this suit and I am leaving the prior matters to be
2    investigated administratively as I wish and am required to do.

3        However, given this suit interferes with my ability to exercise those rights due to its impact
4    upon potential outcomes of administrative remedies and the previously mentioned demand it
5    places upon my time, I request the court declare the f ling of this suit was in response to my
6    complaint of wrongful termination and should be considered part of Plaintiff's actions in relation
7    to my termination.

8        I believe that the facts contained in this f ling sufficiently support that conclusion. In order to
9    prevent this case from impacting my access to administrative remedies, I request the court also
10   declare these acts impact the timeframe for statute of limitations in relation to actions regarding
11   my termination. Specif cally, that the court declare the statute of limitations timeframe does not
12   begin until all matters in this case have been ruled upon and the case closed and that any
13   subsequent appeals or legal action shall be treated the same.

14   ### 3.  CONVENE A JURY TO DETERMINE DAMAGES

15       "Damages for emotional distress are inextricably related to the conduct causing that distress.
16   The more aggravated the conduct, the larger the award of damages is likely to be." Kardly v.
17   State Farm Mut. Auto. Ins., 255 Cal. Rptr. 40, 43 (Ct. App. 1989). For this reason, "[t]he amount
18   and severity of damages for emotional distress is a question of fact for the jury [or court] to
19   decide based on all the evidence before it." Id. Although "the amount of damages must be
20   reasonable," there "is no f xed or absolute standard by which to compute [them]." Plotnik v.
21   Meihaus, 146 Cal. Rptr. 3d 585, 596 (Ct. App. 2012) (quoting Hope v. Cal. Youth Auth., 36 Cal.
22   Rptr. 3d 154, 169 (Ct. App. 2005)).

23       Given the extreme nature of Plaintiff's actions in unlawfully bringing this litigation, the
24   profound impact it had, continues to have, and likely will continue to have upon my mental and
25   physical health, the impact upon my loved ones, and the challenges in separating my harm and
26   suf ering from theirs, as empathy means their suffering effects me also, I believe myself too
27   emotionally compromised to determine appropriate monetary damages. As such under Fed. R.
28   Civ. P. 38 I request a jury be convened for the purpose of determining appropriate damages.

The single recovery doctrine requires that the same damages are not recovered multiple times. As such, it is appropriate that emotional damages be awarded a single time regardless of the number of laws violated in which emotional damages are recovered. Punitive damages are intended to have a deterrent ef ect. Single recovery would further suggest that multiple violations of the one law should not result in multiple recovery of punitive damages under that law. The act of making punitive damages able in any given statute implicitly declares those damages just. In the case of multiple laws with punitive damages available being violated, treating them as a single award would undermine deterrence. This would be strong incentive for would be violators to treat an illegal act as an all-you-can-violate buffet. In order to balance the risk of excessive award against the need for punitive damages to be an effective deterrent, I request that the compensatory damages be determined holistically for all claims, and punitive damages be determined per law breached for which punitive damages are available.

The damages for which I seek to have the jury determine monetary award and any other such award they may justly grant for:

- Compensatory Damages for Pain and Suf ering (Abuse of Process, Intentional Inf iction of Emotional Distress, Harassment)

- Punitive Damages (Abuse of Process)

- Punitive Damages (Intentional Inf iction of Emotional Distress)

- Punitive Damages (Harassment)

- Punitive Damages (Bane Act)

- Treble Damages (Bane Act)

- Any other such damages as I may be justly entitled to based on the court's rulings

**4. STATEMENT WITH RELATION TO DEFENSE SCOPE**

The Senate stated that "[i]f private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." Senate Rpt. 94-1011, 1976 U.S.Code Cong. Admin.News 5908, 5910.

1    I am aware that Pro Se defendants are not allowed to recovery attorney fees for their time

2    spent defending themselves. See Trope v. Katz, 11 Cal.4th 274 (Cal. 1995) and many others.

3    I understand the reasoning for this and without looking at the broader issues of this case, it

4    seems to clash with the Senate's statement above. Just because the cost was non-financial, does

5    not mean it did not cost me to prepare this defense. However, should my claim of vexatious

6    litigation be granted, then I am entitled to compensation for the physical and emotional damage

7    incurred. The increased severity of those damages due to having to represent oneself provide

8    balance to what otherwise would seem to prevent a Pro Se defendant from recovering what it

9    cost them as the Senate intends.

10    In order to enable a jury to fairly evaluate the effort expended in preparing a defense such as

11    mine, I request the court either provide their opinion as to the scope and effort such a preparation

12    would involve, or appoint an expert the court considers appropriate for the purpose of providing

13    this. This would enable the jury to more impartially determine the physical and emotional

14    damages without relying solely on my testimony of the effort involved and subsequent physical

15    and emotional impact. Should the court not grant this, I request they provide criteria by which I

16    could determine who qualifies as an expert witness to such a matter so that I may procure an

17    affidavit which provides such an estimation to enter into evidence.

18    **5. DECLARE PLAINTIFF A VEXATIOUS LITIGANT**

19    Defendants move the court to sanction plaintiff under 28 U.S.C. § 1927. Def Mem (Doc #

20    11) at 17. "Any * * * person * * * who so multiplies the proceedings in any case unreasonably

21    and vexatiously may be required by the court to satisfy personally the excess costs, expenses,

22    and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Section

23    1927 sanctions require a bad faith showing." West Coast Theater Corp v. City of Portland, 897

24    F.2d 1519, 1526 (9th Cir 1990).

25    Given, as demonstrated in the ripeness argument and many others, this case could never have

26    met threshold issues, clearly all filings Plaintiff filed are vexatious. The arguments for Abuse of

27    Process demonstrate bad faith. Additionally, even if Plaintiff believed they could lawfully have

28    brought this case, I stated I had no intention of litigating the underlying matter and wished to

**MOTION TO DISMISS AND**
**COUNTERCLAIMS**
PAGE **22** of **28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

exhaust my administrative remedies in Dkt. No 21. Not only was Plaintiff served this document, and thus aware the case was undeniably moot, they even remarked upon this and sought to use it to coerce me into providing them the very remedy they unlawfully sought from the court by bringing this case. While clearly, due to time limits they needed to f le a response, they did so without f rst f ling a motion to dismiss; the only motion they could file which would have demonstrated their intention had not been vexatious throughout.

Rogers v. Fed. Home Loan Bank , No. 19-cv-01978-SI, at *10 (N.D. Cal. Nov. 25, 2019) ("Before imposing a pre-f ling order, the court must: (1) provide the litigant with notice and an opportunity to be heard; (2) set forth a record of the "cases and motions that support the conclusion that [the litigant's] f lings are so numerous or abusive that they should be enjoined"; (3) make "substantive findings as to the frivolous or harassing nature of the litigant's actions"; and (4) ensure that the order is "narrowly tailored to closely f t the specif c vice encountered." De Long v. Hennessey, 912 F.2d 1144, 1146-48 (9th Cir. 1990).")

The extreme abusiveness of this case I believe merits making such a declaration and the issuance of a pre-f ling order, which I request the court enter. In order to support the court in determining matters related to items (2) and (3), plus to help ensure the court is able to tailor any such order as narrowly as possible, I have conducted a search to f nd other cases involving Light Field Lab. Due to my inexperience, I am not certain how comprehensive my coverage was. There is Exhibit E in which Plaintiff and counsel appear again as Plaintiff and counsel where they sought a declaratory judgment in a contractual dispute. In Exhibit F, Plaintif  is defendant in a bankruptcy proceeding where the Trustee alleges "Despite the Debtor having provided the agreed upon legal services, the Defendant has failed to make payment to the Debtor for the amounts owed."

## 6.  PERMANENT INJUNCTION

Issue an injunction preventing interference with any wrongful termination investigation.

Issue an injunction preventing interference with any matters related to my rights under the agreements in Plaintiff's complaint, Dkt. No 1.

1   Mandate Plaintiff's cooperation with any and all investigations related to either the
2   underlying wrongful termination complaint or issues stemming from this case.

3       Should the court see f t to grant such an order then to help ensure Plaintiff fully complies I
4   further request that the court inform the Equal Employment Opportunity Commission, California
5   Civil Rights Department, the Department of Justice, and any other agencies or regulatory
6   authorities as the court deems relevant of such orders.

7   **7.  OTHER AND FURTHER JUST RELIEF**

8       I request any and all such other and further relief to which I may be justly entitled.

9                       **WITH RELATION TO LITIGOUSNESS**

10      Around November 16th, once it became apparent I would be unable to secure counsel, I
11  began researching the law in earnest in preparation to defend myself. Despite only doing so for
12  such a short time, I've covered a broad range of topics including the ADA, the Constitution, the
13  Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Northern District's Civil
14  Local Rules, the Securities Act, laws related to vexatious litigation and many, many more.

15      In that process I have come across many other potential claims I may have against Light
16  Field Lab. For example, despite being a shareholder since December 10th 2020 (Dkt. No 1,
17  Exhibit A, CS-13), I have never received any shareholder communications from Light Field Lab
18  beyond the agreements and certif cates in evidence. Nothing with relation to shareholder
19  meetings, voting, bylaws, certif cate of incorporation. Some of these are not necessarily required
20  to be disclosed, though without being so it is difficult to establish if shareholder rights have been
21  upheld. I have no idea what they are disclosing to the Delaware Secretary of State nor what
22  obligations they have remaining to me as they can be modif ed through some of those
23  documents. However, shareholder access to books and records does seem to be protected under
24  Delaware's General Corporation Law.

25      "The duty of loyalty includes a requirement to act in good faith . . . ." (Orchard, 88 A.3d at
26  32.) "To act in good faith, a director must act at all times with an honesty of purpose and in the
27  best interests and welfare of the corporation." (In re Walt Disney Co. Deriv. Litig., 907 A.2d
28  693, 755 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006).)

**MOTION TO DISMISS AND**
**COUNTERCLAIMS**
**PAGE 24 of 28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1

"A failure to act in good faith may be shown, for instance, where the f duciary intentionally

2

acts with a purpose other than that of advancing the best interests of the corporation . . . ." (Walt

3

Disney, 906 A.2d at 67.)

4

In a text conversion with Light Field Lab's CEO Jon Karaf n just prior to the collapse of

5

Silicon Valley Bank, I asked him about Light Field Lab's exposure to Silicon Valley Bank.

6

Toward the end of that conversation I asked "Is there any additional information I'm entitled or

7

required to be given access to as a shareholder?" During my research for this case I have also

8

learnt that under Delaware corporate law it is f rmly established that shareholders have a right to

9

inspect books and records, which is clearly relevant in the context of that conversation, and

10

failure to inform me of such could be considered a breach of f duciary duty.

11

Had I been provided that information then, I would have been aware I was entitled to such

12

and been able to access that information in order to make an informed decision as to whether it

13

was in my best interest to exercise the vested options prior to their expiry. His failure to inform

14

me of that caused me damages as I was unable to ascertain the value of exercising those options,

15

which is related to the underlying contracts at issue in this case, irrespective of whether the

16

termination was wrongful or not, and as such could be brought in as a related matter in this

17

proceeding.

18

On the subject of breach of fiduciary duty, engaging in unlawful conduct, such as the many

19

which I outline in this f ling, case law clearly establishes that for Delaware corporations, such

20

conduct constitutes a breach. Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.,

21

854 A.2d 121, 131 (Del. Ch. 2004) ("Under Delaware law, a f duciary may not choose to manage

22

an entity in an illegal fashion, even if the f duciary believes that the illegal activity will result in

23

profits for the entity."); Guttman, 823 A.2d at 506 n.34 ("[O]ne cannot act loyally as a corporate

24

director by causing the corporation to violate the positive laws it is obliged to obey.").

25

As I have never been provided with a copy of Light Field Lab's corporate charter, I cannot be

26

sure to what extent their f duciaries are shielded from personal liability, especially given it

27

appears that factors such as types of damages and exculpated vs non-exculpated claims come

28

into play and as I am not seeking to litigate these matters I've had no interest in gaining a deeper

1  understanding of the matter. However, the potential for harm to shareholders exists regardless of

2  any personal liability which may apply to f duciaries stemming from such conduct.

3      Furthermore, Plaintiff's bringing this case presents an opportunity for me to litigate the

4  underlying claims, which I could easily have done by providing an answer and specif c

5  counterclaims. However, as stated, I am not litigious and only wish to have just remedy, which

6  cannot be determined until I've had my administrative investigation which I'm both entitled to

7  and required to exhaust as part of my available administrative remedies. By bringing suit f rst,

8  Plaintiff has actually positioned me such that I may not be required to exhaust my administrative

9  remedies as I am not the one bringing suit. Timeliness is considered a factor in objections based

10  on failure to exhaust administrative remedies. Therefore, one could argue that since Plaintif

11  chose to initiate the suit and therefore the timing, that implicitly means they had ample time to

12  decide whether they wished to have matters addressed by administrative remedies and therefore

13  have both implicitly waived it and had ample time to do so.

14      Despite being fully aware of all the aforementioned potential claims, some of which could be

15  raised in this proceeding, others which would require their own, I have not attempted to do either

16  as I do not wish to be engaged in litigation. Had I such thirst as Plaintiff contends, I would have

17  already f led all relevant motions, sought to amend the parties, and initiated relevant complaints.

18      Having said that, my lack of desire to engage in litigation does not constitute a waiver in

19  relation to any particular issue, though I have no intention of litigating any of those issues both

20  for personal reasons and the inherent conf ict of interest I have as a shareholder in Light Field

21  Lab. Being involved in litigation distracts Light Field Lab from its core business and harms

22  shareholder value. As such, it should only be undertaken legally and when necessary to protect

23  the interests of shareholders.

24

25

26

27

28

MOTION TO DISMISS AND
COUNTERCLAIMS
PAGE **26** of **28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1

**CONCLUSION**

2      While I appreciate given the amount of effort clearly expended on preparing this defense that

3  it may be tempting to assume that I want to be involved in litigation. However, there are two

4  primary factors that have driven me to provide as comprehensive of a defense as I am capable.

5      The first is the damages that Plaintiff seeks are far beyond what I have in savings, would

6  wipe out my investments, and then still not be covered without selling or remortgaging my

7  residence. All this during a time when investments are heavily down, interest rates are up, and

8  just the act of ref nancing would over double my mortgage leaving me unable to make ends

9  meet. At my age, this would mean there is absolutely no possibility that I ever retire; as a

10  permanent wage slave life would likely not be worth living should I not prevail in this suit.

11      The second is that this has been all consuming. I get up, try focus at work but it's almost

12  impossible with the pressure of this case and the stakes I describe. Then, as soon as I'm able to

13  f nish for the day all my evenings and weekends until late into the night are spent wearing myself

14  out further with research and case preparation.

15      My blood pressure and pulse which have always been perfect prior to this are now almost

16  always extremely elevated. My wife suffers the same. My son has been physically ill as a result

17  of their needless harassment of us in our home. My daughter, who has not been to an in-person

18  school since the pandemic began, once again has her recurring nightmares of active shooter

19  lockdowns due to Plaintiff sending their armed process server trespassing and banging on our

20  windows. My family's trust in people has been completely eroded as has mine. We are all prone

21  to take on the burdens of our loved ones, and so I acutely feel much of their suffering as my own.

22  As if Plaintif 's suit, which it is impossible to ever have been justiciable, wasn't enough, they

23  intentionally, despite having no reason given a waiver had been offered, took the only safe space

24  on earth my family has had since the pandemic began and repeatedly violated it.

25      There is simply no aspect of our lives which has not been fundamentally altered by Plaintiff's

26  vile and egregious acts. We moved into our current home a little over ten years ago, not long

27  before my son's tenth birthday. It was his fourteenth move. Never before had we been able to

28  establish a house that felt like a home. That's been stolen. Nobody feels safe. Nobody feels at

**MOTION TO DISMISS AND
COUNTERCLAIMS
PAGE 27 of 28**

CASE NO.: 4:23-CV-05344-YGR
DEMAND FOR JURY TRIAL
[28 U.S.C. §§ 1332(a)(1), 2201(a)]

1   home. Everyone feels vulnerable and paranoid. Jumping when the door knocks. Viewing

2   passers-by with suspicion. I do not know how I will ever return to my family what Plaintif

3   severed from their lives, but I know this - I can only begin to try once this case is over.

4

5   Date: December 18th 2023                    Signature: _____

6                                                        Printed Name: Alan Jones

7                                                                          Pro Se

# EXHIBIT A

**Location** ✉ Inbox
noreply@eeoc.gov
to: alan@jones.how   ▾                                              ✉ Mon, Oct 30, 2023 • 16:21



Notice of Scheduled Interview / Aviso de Entrevista
Programada



**U.S. Equal Employment Opportunity Commission**

You are scheduled for an interview Phone with the Equal Employment Opportunity
Commission (EEOC) regarding your inquiry **551-2024-00586**. This email confirms your
appointment with an EEOC representative of the **San Jose** office for **01/18/2024 at 12:00
PM PST**.

At the time of your interview, please have the password for your EEOC Public Portal user
account with you.

Before your interview, please visit EEOC Public Portal as soon as possible to provide
additional information about your inquiry. Providing additional information is optional, but
can help make the interview more productive and efficient. You may add or edit the
additional information up until you have your interview with EEOC. The information you
provide is confidential and will not be disclosed to your employer during an investigation.

**ANSWERING THESE QUESTIONS IS NOT THE SAME AS FILING A CHARGE OF
DISCRIMINATION.**

A charge of discrimination is a signed statement asserting that an organization engaged in
employment discrimination. It requests EEOC to take remedial action. The laws enforced by
EEOC, except the Equal Pay Act, require you to file a charge before you can file a lawsuit
for unlawful discrimination. There are strict time limits for filing a charge.

# EXHIBIT B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

Light Field Lab,

             Plaintif ,

        v.

Alan Jones,

             Defendant.

Case No. 4:23-cv-05344

**RELEASE AND COVENANT NOT TO SUE**

In consideration of Light Field Lab's agreement to dismiss its declaratory judgment complaint, case number 4:23-cv-05344-YGR f led in the Northern District of California, Alan Jones ("Jones") agrees on behalf of himself and his successors, assigns, and anyone else who may claim on his behalf as follows:

1.     Representations and Warranties.  Alan Jones ("Jones) hereby represents and warrants that (1) he has the full right, power, and authority to enter this Release and Covenant Not to Sue, to grant the release contained herein, and to perform his obligations hereunder; (2) has entered into this Agreement without reliance upon any statement, warranty, promise, inducement, agreement or representation not contained in this Agreement of any other party hereto or any agent for Light Field Lab; (3) he expressly accepts and assumes the risk that the facts with respect to which this agreement is executed may be found hereafter to be different from the facts now believed to be true, and he acknowledges and agree that this agreement shall be and remain ef ective notwithstanding such dif erence in facts, if any and (4) he has read and understands this agreement and has entered into this agreement voluntarily and free of duress, undue inf uence or coercion.

2.     Release.  Jones on behalf of himself and his successors, assigns, and anyone who may claim on his behalf, hereby knowingly and voluntarily **releases and forever discharges** and covenants not to sue Light Field Lab for any and all charges, complaints, claims, liabilities,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

1

Case No. 4:23-cv-05344
STIPULATION FOR ALAN JONES

1   obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights,

2   demands, costs, losses, guarantees, debts, expenses, and/or causes of action of any nature

3   whatsoever, whether known or unknown, suspected or unsuspected, claimed or unclaimed,

4   asserted or unasserted, f xed or contingent, accrued or unaccrued, past or present, whether based in

5   law or equity, under U.S. federal or state law or any other law of any other jurisdiction, direct or

6   derivative, from the beginning of time to the date of full execution of this Agreement arising out

7   of, based upon, relating to or in connection with the Light Field Lab's 2017 Stock Incentive Plan

8   ("Plan") (attached hereto as Exhibit A).

9   3.      Covenant Not to Sue: Jones knowingly, intentionally, and voluntarily covenants and agrees

10  he will not now or in the future bring any action in law or equity in any court, forum, or arbitration

11  proceeding (whether by original process, counterclaim, cross-claim, third-party process,

12  impleader, claim for indemnity or contribution, or otherwise) against Light Field Lab with respect

13  to any claims relating to the Plan.

14  4.      Scope of Release and Covenant Includes All Claims and Damages Arising Under the Plan.

15  This Release and Covenant Not to Sue includes all causes of action, damages, costs, attorney's

16  fees, claims, liabilities, and any other demands arising from or related to the Plan, whether in law

17  or equity, including without limitation claims for breach of contract, detrimental reliance,

18  promissory estoppel, due process, negligence, inf iction of emotional distress, interference with

19  contract or prospective economic advantage, invasion of privacy, personal injury, and/or any other

20  cause of action in tort, contract, or any other theory (collectively, the "Claims") which Jones has,

21  now or in the future.

22  5.      Preservation of Employment Claims, but Not Plan Damages. This Release and Covenant

23  Not to Sue does not include employment claims that Jones may bring for Light Field Lab's

24  termination of his employment by  ("Employment Claims).  While Jones retains the right to

25  pursue Employment Claims, he nonetheless fully releases and discharges any claim for damages

26  arising under the Plan.  Jones expressly releases any damages based in any way on the Plan as

27  compensation in connection with his Employment Claims.  In no event shall any claim brought by

28  Jones include any damages arising from the Plan as Jones is voluntarily relinquishing any such

1    claim in this Release.

2    6.        Express Waiver of Waiver Of Civil Code Section 1542 And Common Law Rules.  Jones

3    expressly waives the benef ts of any statutory provision or common law rule that provides that a

4    release and waiver of liability does not extend to causes of action of which the Jones is unaware.

5    Accordingly, Jones and Light Field Lab knowingly and expressly waives all Plan rights and

6    benef ts af orded by Section 1542 of the Civil Code of the State of California ("Section 1542"),

7    and any analogous rule or principle of any other jurisdiction, and do so understanding the

8    signif cance of that waiver.  Section 1542 provides:

9                A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
              THAT THE CREDITOR OR RELEASING PARTY DOES NOT
10             KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
              THE TIME OF EXECUTING THE RELEASE AND THAT, IF
11             KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
              AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
12             OR RELEASED PARTY.

13   7.        Governing Law; Choice of Forum.  All disputes and litigation between Jones and Light

14   Field Lab arising out of or related to this Release and Covenant Not to Sue shall be governed by

15   the laws of the State of California, without regard to its conf icts of laws principles. Any such

16   disputes and litigation shall be litigated exclusively before a state or federal court located in Santa

17   Clara County, California, and Jones shall not bring any litigation related to the Plan in any other

18   forum. Jones waives any argument that the forum designated by this paragraph is not convenient.

19   8.        Legal Advice Concerning This Agreement.  Light Field Lab and Jones, each of them,

20   represent and warrant that they rely solely upon their own judgment, belief, and knowledge, and

21   upon the advice and recommendations of their own independently selected legal counsel with

22   respect to this Agreement, and that they have not been inf uenced to any extent whatsoever in

23   executing this Agreement by any of the parties hereto, or by any person representing them.  The

24   parties, and each of them, represent and warrant that they have been advised by, or had the

25   opportunity to consult with, legal counsel of their choice with respect to this Agreement, including

26   the waiver of Section 1542 and any similar law or statute, and that they understand and

27   acknowledge the significance and consequence of entering into this Agreement.

28   ///

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

3

Case No. 4:23-cv-05344
STIPULATION FOR ALAN JONES

1    9.    Entire Agreement. This Release and Covenant Not to Sue constitutes the sole and entire

2    agreement between Jones and Light Field Lab with respect to the subject matter contained herein

3    and supersedes all prior and contemporaneous understandings, agreements, representations, and

4    warranties, both written and oral, with respect to such subject matter. If any term or provision of

5    this Release and Covenant Not to Sue is invalid, illegal, or unenforceable in any jurisdiction, such

6    invalidity, illegality, or unenforceability shall not af ect any other term or provision of this Release

7    and Covenant Not to Sue or invalidate or render unenforceable such term or provision in any other

8    jurisdiction.

9

10   Dated:  December ___, 2023

11   State of                                          )

12   County of                                        )   ss.
                                                       )

13

14                                                              _____
                                                                Alan Jones

15

16   This instrument was acknowledged before me on _____, by _____

17

18                                                              _____
                                                                NOTARY PUBLIC FOR _____

19                                                              My Commission Expires: _____

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

4                                                              Case No. 4:23-cv-05344
                                                               STIPULATION FOR ALAN JONES

# EXHIBIT C

aberg@nwlink.com                                    📎 ✉ Thu, Oct 26 • 10:45

aberg@nwlink.com                                    📎 ✉ Thu, Oct 26 • 15:47

Alan Jones                                          📎 ⬈ Thu, Oct 26 • 16:39

Alan Jones
**Location** ⬈ Sent
alan@jones.how
to: ppeden@bwslaw.com  + 1 ⌃                        ⬈ Thu, Oct 26, 2023 • 17:07
**From**
Alan Jones <alan@jones.how>
**To**
Patricia L. <ppeden@bwslaw.com>
Alex Buerger <aberg@nwlink.com>

## FWD: Re: FW: Jones Service of Process

Dear Patty,

As I am uncertain what messaging Alex last provided to your or whether he has provided
my responses to your communications the past two days, please find the current situation
below. As I mention there, I am currently making efforts to provide you with a means to
provide service which respects my health condition and disability status; I, or that person,
will be in touch as soon as that has been arranged.

Regards,

Alan.

Date: Oct 26, 2023, 16:39
From: alan@jones.how

To: aberg@nwlink.com

Subject: Re: FW: Jones Service of Process

Thanks, Alex. Please inform them that I am not refusing service, and am happy to arrange an attorney to receive service, but they made no efforts to request or arrange that with me. Having an alternate individual at my residence does not reduce my risks and any further attempts to deliver in person will be considered harassment and a deliberate attempt to put my health at risk; I have never refused and this communication has clearly indicated that I am willing to have service received and am currently making efforts to arrange it in a manner that is safe for my health, which is extremely relevant to the heart of this disagreement.

Please inform them that I will contact them once that has been arranged, but that their expectation that be done immediately is unreasonable. We politely waited for multiple weeks as they delayed discussions repeatedly. They should be willing to provide similar cordiality and professionalism as they enjoyed from you during your representation of me.

Regards,

Alan.

Oct 26, 2023, 15:47 by aberg@nwlink.com:

FYI

The Law Office of Alex Buerger

318 6th Ave. S #126

Seattle, WA 98104

Phone: 206-405-4520

Fax: 206-405-3233

Email: aberg@nwlink.com

This email may contain confidential and privileged information for the sole use of the intended recipient(s).  If you are not the intended recipient, you are not authorized to review, use, distribute or disclose the information and are instructed to delete all copies of this communication.

---

**From:** Peden, Patricia L. <PPeden@bwslaw.com>
**Sent:** Thursday, October 26, 2023 3:10 PM
**To:** aberg@nwlink.com
**Cc:** Modarresi, Ghazaleh <GModarresi@bwslaw.com>; Easley, Catherine <CEasley@bwslaw.com>
**Subject:** RE: Jones Service of Process

Alex:

We asked you to accept service.  We never heard back.  If you had accepted service, there would be no need to deliver the documents to him in person.  Now that we have paid for a process server, he will be personally served.

Mr. Jones can have someone over 18 years old present at his home to accept service.  If he wants to give us a specific time tomorrow, we can work with our vendor to ensure a timed service.

If he refused to accept, we will seek our costs.  Mr. Jones can explain to the court why he would not (1) allow you to accept, (2) or work with us for a timed service.


Thanks,

Patty

---

**From:** aberg@nwlink.com <aberg@nwlink.com>
**Sent:** Thursday, October 26, 2023 2:29 PM
**To:** Peden, Patricia L. <PPeden@bwslaw.com>
**Cc:** Modarresi, Ghazaleh <GModarresi@bwslaw.com>; Easley, Catherine <CEasley@bwslaw.com>
**Subject:** RE: Jones Service of Process


[EXTERNAL]

---

Patty,


Considering that my client is immunocompromised, perhaps personal service is not the way to go here.


I suggest that you send him a waiver of service pursuant to FRCP 4(d).


Thank you,

Alex

The Law Office of Alex Buerger

318 6th Ave. S #126

Seattle, WA 98104

Phone: 206-405-4520

Fax: 206-405-3233

Email: aberg@nwlink.com

This email may contain confidential and privileged information for the sole use of the intended recipient(s).  If you are not the intended recipient, you are not authorized to review, use, distribute or disclose the information and are instructed to delete all copies of this communication.

---

**From:** Peden, Patricia L. <PPeden@bwslaw.com>
**Sent:** Thursday, October 26, 2023 9:49 AM
**To:** aberg@nwlink.com
**Cc:** Modarresi, Ghazaleh <GModarresi@bwslaw.com>; Easley, Catherine <CEasley@bwslaw.com>
**Subject:** Jones Service of Process
**Importance:** High

Hi Alex:

The process server is trying to perfect service on your client.  Service was attempted yesterday around 7:30 pm.  It appears that Mr. Jones was home, the lights were on, but he would not answer the door.  The process server will make another attempt today.  If your client evades service, we will seek to recover our costs, as well as the cost of bringing the motion.  Please advise him to accept the documents today to avoid paying costs.

Thanks,

Patty

**Patricia L. Peden | Partner**

1999 Harrison Street, Suite 1650 | Oakland, CA  94612-3520

d – 510.903.8805 | t – 510.273.8780 | f – 510.839.9104 | m – 510.693.3293

ppeden@bwslaw.com | vCard | bwslaw.com

The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

# EXHIBIT D





The night vision images above show one of the locations to which the process server trespassed on November 10th 2023. Please note the bulletproof vest and f rearm.

The arrow to the left shows the only path by which one can enter the property without going through the house or climbing the deck to arrive at the location where the process server is pictured above.



The arrow to the left shows the path from the front of the property to the front door, which is the only path for which process servers have a trespass exemption. That exemption only applies if they have a lawful purpose.

# EXHIBIT E



# Public Portal
Superior Court of California, County of Santa Clara

🏠 HOME   🔍 SEARCH   📅 CALENDARS   🚗 TRAFFIC PAYMENT   📹 REMOTE HEARINGS     👤 LOGIN

## 21CV381454

### LIGHT FIELD LAB, INC., a Delaware Corporation vs PRUDENTIAL OVERALL SUPPLY

CASE INFO   PARTIES   **EVENTS**   HEARINGS   PRINTABLE

## EVENTS

Show 25 ⌄ entries     Search: [                    ]

| ▾ File Date | File Type | Filed By | Comment | Documents |
|---|---|---|---|---|
| 6/15/2021 | Request: Dismissal | LIGHT FIELD LAB, INC., a Delaware Corporation, | | 📄 |
| 4/1/2021 | New Filed Case | | | |
| 4/1/2021 | Complaint (Unlimited) (Fee Applies) | LIGHT FIELD LAB, INC., a Delaware Corporation, | | 📄 |
| 4/1/2021 | Civil Case Cover Sheet | LIGHT FIELD LAB, INC., a Delaware Corporation, | | 📄 |
| 4/1/2021 | Summons: Issued/Filed | LIGHT FIELD LAB, INC., a Delaware Corporation, | | 📄 |

Showing 1 to 5 of 5 entries     Previous | **1** | Next

‹ Go Back

E-FILED
4/1/2021 12:00 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
21CV381454
Reviewed By: D Harris

Patricia L. Peden (SBN 206440)
E-mail: ppeden@bwslaw.com
Stephanie A. Vollmer (SBN 309407)
E-mail: svollmer@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1901 Harrison Street, Suite 900
Oakland, CA  94612
Tel: 510.273.8780    Fax: 510.839.9104

Attorneys for Plaintiff, LIGHT FIELD LAB, INC.

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SANTA CLARA

LIGHT FIELD LAB, INC., a Delaware
Corporation,

        Plaintiff,

    v.

PRUDENTIAL OVERALL SUPPLY, a
CALIFORNIA CORPORATION dba
PRUDENTIAL CLEANROOM
SERVICES, AND DOES 1 THROUGH
20, INCLUSIVE,

        Defendant(s).

Case No.    21CV381454

**COMPLAINT FOR DAMAGES**

### INTRODUCTION

    This action involves a rapacious third-party vendor who alleged that Plaintiff breached an agreement it never made; attempted a shakedown of Plaintiff; and when Plaintiff reasonably resisted the vendor's bullying, fraudulent tactics, the vendor attempted to use a collection agency to gain leverage – leaving Plaintiff no option but to seek a legal remedy.

### PARTIES, JURISDICTION, AND VENUE

    1.    Plaintiff Light Field Lab, Inc. ("Light Field Lab" or "Plaintiff") is, and all times relevant herein was, duly incorporated under the laws of the state of Delaware and authorized to

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

COMPLAINT FOR DAMAGES

conduct business in California. Light Field Lab maintains its principal place of business in San Jose, located within Santa Clara County.

2.    Light Field Lab is a Silicon Valley-based technology company and in its start-up phase of creating new-to-market, holographic displays. As part of its work, Light Field Lab uses a cleanroom that necessitate employees wearing special overall suits ("cleanroom suits") designed for use within antiseptic environments. Essentially, these suits prevent human hair or skin cells from shedding within a protected area by enrobing employees in antiseptic coverings, such as gowns, hoods, gloves, and/or shoe coverings, which employees wear over normal work attire. Light Field Lab employees then don and doff these special garment ensembles each time they enter and exit a cleanroom.

3.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendant Prudential Overall Supply was, and is, a California Corporation organized and existing under the laws of this state doing business as Prudential Cleanroom Services. Prudential Overall Supply has its headquarters in the City of Irvine with its entity address in Milpitas, located within Santa Clara County.

4.    Plaintiff is informed and believes, and thereon alleges, that Prudential Overall Supply Company operates a uniform-supply business, which includes the sale, leasing, delivery, and laundering of work uniforms. Its dba, Prudential Cleanroom Services, provides washable cleanroom apparel, including shoe covers and gowns, *et al*. As part of its services, Prudential Cleanroom Services commercially leases garments, which also includes picking up, delivering, and laundering the cleanroom attire.

5.    The true names and capacities of the defendants sued herein as Does 1 through 20, inclusive, are unknown to Plaintiff, which therefore sues said defendants by such fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff will amend this Complaint to state the true names and capacities of any fictitiously named defendant it has ascertained.

6.    Whenever reference is made in this Complaint to any act or omission of one or more of the Defendants, it shall be deemed to mean the act of each and every Defendant acting

individually, jointly, and severally, including Does 1 through 20.

7.      Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, each of the defendants was the agent and joint venturer of the other Defendants; and in doing the things hereinafter alleged, each Defendant acted within the course and scope of such agency, employment, and/or joint venture with the advance knowledge, acquiescence, or subsequent ratification of each and every other defendant.

8.      All parties have physical entities and business operations within the County of Santa Clara. Thus, venue within this jurisdiction is proper pursuant to California Code of Civil Procedure section 395(a).

## GENERAL ALLEGATIONS

9.      Plaintiff incorporates by this reference the allegations contained in paragraphs 1 through 8 of this Complaint as though fully set forth herein.

10.     On or about December of 2019, Light Field Lab decided to explore the possibility of procuring a cleanroom garment supplier. Its then-Lead Production Engineer, Jared Perez, knew a vendor that his previous employer used. That vendor was Defendant Prudential Overall Supply, Inc., dba Prudential Cleanroom Services ("Prudential"). Although Mr. Perez knew of Prudential, he did not procure Prudential's services at his former employer's site; rather, he merely used those services downstream – after Prudential entered into a contract with his former employer.

11.     On information and belief, on or about December of 2020, Mr. Perez contacted Prudential to gather information on its services for Light Field Lab management's review and consideration. On or about mid-January of 2020, Mr. Perez communicated via email with Prudential's sales representative, Account Executive Gary Metcalfe.

12.     On or about January 20, 2020, Light Field Lab Controller, Ms. Erin Doyle, signed a Prudential form authorizing the company to check Plaintiff's credit history as part of a credit application ("New Account Application."). On or about January 20th, Ms. Doyle signed a form acknowledging a cost estimate from Prudential's Price Structure for Light Field Lab's consideration. This form, which Prudential refers to as "Addendum 'A' " was not presented as a

part of a services agreement when Ms. Doyle signed it, nor did she intend it to be part of any such contract.

13.     On or about January 23, 2020, Mr. Perez copy-emailed Light Field Lab Chief Operating Officer, Mr. John Dohm, a set of forms that Plaintiff is informed and believes originated from Mr. Metcalfe. These documents included a "Merchandise Authorization Order Form," a "Safety Survey," a "Service Rental Agreement," a "Budget Protection Program Agreement," and a "Customer Inspection Requirements Instructions (Garments)." As was readily apparent from his job title, Mr. Perez was not an officer of Light Field Lab, and he did not have authority to bind Light Field Lab in a contract. Given this lack of authority, and as part of his email, Mr. Perez asked Mr. Dohm to review Prudential's forms. Mr. Dohm did not sign or otherwise take any steps to affirm the forms in the packet.

14.     Nearly a month passed, and then, on or about February 20, 2020, Prudential's Mr. Metcalfe emailed Mr. Perez and inquired about the "paperwork." On or about February 21, 2020, as Light Field Lab has since learned, Mr. Perez forwarded Mr. Metcalfe the documents, described in Paragraph 13 above, bearing the typewritten name of Mr. Perez, even though he had no actual or apparent authority to enter into contractual arrangements with vendors. Plaintiff is informed and believes that Prudential did not have reason to believe that Mr. Perez would have such authority given its past dealings with him. Mr. Perez himself did not believe he had, nor did he hold himself out as having, authority to bind Light Field Lab contractually, which is why he forwarded Mr. Metcalfe's "paperwork" to the company's management. Further, the Controller, Ms. Doyle, had signed the New Account Application; yet Plaintiff is informed and believes that Prudential never asked Mr. Perez if he had authority to enter into any agreement on behalf of Light Field Lab.

15.     On or about the fourth week in February of 2020, Mr. Perez left Light Field Lab to accept a position with another company. At this point, Plaintiff thought it was still deciding if it would choose Prudential as a potential vendor and had no reason to believe otherwise.

16.     Plaintiff is informed and believes that, on or about March 13, 2020, Josh Miller,

1   Prudential's General Manager, sent a letter addressed to a "Jared Diaz" at Light Field Lab. Light

2   Field Lab does not have any employee with that name. This correspondence, which Light Field

3   Lab first learned of though its subsequent interactions with Prudential, states that the company

4   had become Light Field Lab's "supplier." To this letter, Prudential attached the credit check

5   application and the credit report signed by Controller Ms. Doyle on or about January 20, 2020. As

6   noted, no one at Light Field Lab received this correspondence, nor did this correspondence

7   include a signed contract.

8          17.     Thus, as a practical matter, after January 20, 2020, Light Field Lab heard nothing

9   further from Prudential until mid-June of 2020 – approximately five months after Light Field Lab

10  first considered Prudential as a potential vendor. In mid-June, Prudential suddenly arrived on-site

11  at Light Field Lab's office in San Jose with a delivery of cleanroom suits. Light Field Lab was

12  mystified, to say the least. At that time, amid the surprise and confusion of an unordered delivery,

13  and on information and belief, Light Field Lab told Prudential it did not order the cleanroom

14  suits. After finding no internal records of a contract with Prudential, Light Field Lab instructed

15  Prudential not to return to its offices and not to deliver any additional products to it. Incidentally,

16  Light Field Lab has offered, and continues to be willing, to compensate Prudential for suits

17  already delivered because it kept the cleanroom suits at its offices while it investigated

18  Prudential's delivery error.

19         18.     At that time, Light Field Lab anticipated a quick and easy resolution and contacted

20  Defendant to inquire as to why Prudential sent Plaintiff cleanroom suits it had not ordered. On or

21  about June 16, 2020, Account Executive Mr. Metcalfe forwarded Mr. Dohm an email – to which

22  he attached the documents described above in paragraphs 13 and 14. It was at this point that Light

23  Field Lab first learned that Mr. Perez appeared to have sent Mr. Metcalfe the signed form

24  documents in late February of 2020.

25         19.     On or about June 22, 2020, Mr. Dohm emailed Mr. Metcalfe to explain that Mr.

26  Perez was not authorized to enter into such an agreement with Prudential. Thinking the matter

27  could be resolved respectfully and amicably, Mr. Dohm suggested the Parties "do something that

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

OAK #4851-1356-5923 v2                    - 5 -

COMPLAINT FOR DAMAGES

makes sense" in the absence of a contract and invited Mr. Metcalfe to have a dialogue about the matter. Mr. Metcalfe replied, thanking Mr. Dohm, and telling him he would forward the matter to "upper management."

20.     Almost two weeks later, on or about July 10, 2020, Mr. Metcalfe emailed Mr. Dohm to assert that Prudential determined the Parties had an alleged "contract" and a "valid and active agreement." Mr. Metcalfe offered Mr. Dohm the opportunity to cancel pursuant to the "cancellation costs" provision within the alleged "contract." Shortly thereafter, Prudential began sending Light Field Lab a series of invoices.

21.     On or about September 28, 2020, Gaurav Mathur, Esq. informed Prudential in writing that the company was "not bound by any agreement with Prudential" and reiterated that it did not want its services; had not contracted for them; and that Light Field Lab's former employee did not have the authority to enter into such agreements.

22.     Approximately one month later, on or about October 28, 2020, Light Field Lab received correspondence from Prudential's counsel, Rose Sorensen, Esq., making a demand for payment from Light Field Lab to Prudential in the amount of $35,065.25. Prudential then assigned Light Field Lab's alleged "account" to a collections agency. On or about February 15, 2021, Light Field Lab received correspondence from the Creditors Adjustment Bureau asserting that Plaintiff had a "debt" in the amount of $25,282.74.

23.     Light Field Lab now files the instant matter.

## FIRST CAUSE OF ACTION

## DECLARATORY JUDGMENT

### (Against All Defendants)

24.     Plaintiff incorporates by this reference the allegations contained in paragraphs 1 through 23 of this Complaint as though fully set forth herein.

25.     Light Field Lab employs Lead Production Engineers. Generally speaking, an individual in this position may create process work flows and evaluate the efficacy of engineering efforts. However, the position, including the employee holding it, has no executive management

or budgetary authority to enter into, approve, or otherwise amend Light Field Lab's contracts with third-parties, including outside vendors.

26.     Light Field Lab never authorized its Lead Production Engineer to act on its behalf in establishing Service Agreements, contracts, *et al.* Mr. Perez, who was the Lead Production Engineer at the time in question, did not have actual authority to act on Light Field Lab's behalf. Nor did Mr. Perez believe he had such authority. In fact, as noted above, when Mr. Metcalfe sent Prudential's document packet to Mr. Perez, he forwarded it to Light Field Lab's management. Mr. Perez never gave Prudential any reason to believe he had authority to bind Plaintiff contractually. He identified himself by his title, which in itself implied that he had no contractual authority. Further, Prudential had previous dealings with Mr. Perez, during which Prudential was aware, or should have been aware, that Mr. Perez had no authority to execute a contract for goods or services on behalf of his employer.

27.     However, Prudential asked Mr. Perez to sign a Services Agreement when it knew, or should have known, that he had no actual or apparent authority to enter into such a contract. A month before Prudential received documents purported to contain Mr. Perez's electronic signature, Light Field Lab's Controller signed two form documents, which illustrated Mr. Perez's lack of apparent authority. Yet, Prudential made no inquiry into who at the company had authority to enter into contracts on Light Field Lab's behalf. Instead, knowing full well that Mr. Perez did not have requisite authority, it attempted to leverage his signature to bind Light Field Lab to an agreement for cleanroom garments.

28.     Prudential exploited Mr. Perez's Lead Production Engineer position while knowing he did not have authority to enter into a contract, and it did so for the purpose of defrauding Light Field Lab by purportedly binding it to a seven-year agreement for garment services – after which the contract would renew automatically for another seven years. Prudential made no inquiry into which individual at Light Field Lab had the authority sign an outside vendor agreement; and it purposefully induced a non-management employee's signature on a document

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

whose draconian terms, drafted by Prudential, benefitted it substantially at Light Field Lab's expense.

29.     When, in June of 2020, Prudential wrongly and belatedly asserted it had a Services Agreement with Plaintiff, Light Field Lab informed Prudential that no contract existed; that Light Field Lab did not want Prudential's services or products; and it asked Prudential not to return to its office in the future.

30.     Because Mr. Perez did not have the actual or apparent authority to bind Light Field Lab contractually, no enforceable agreement exists, and thus Light Field Lab has no contractual relationship or obligation(s) to Prudential.

31.     An actual controversy has arisen between the Parties regarding the signed documents. Plaintiff disputes Prudential's allegation that it has a contract with Light Field Lab. Had Plaintiff entered into an agreement with Prudential, which it did not, that contract would be unenforceable as a matter of law because Prudential knew, or should have known, that Mr. Perez had no actual nor apparent authority to bind the company.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

#### (Against Defendant Prudential and DOES 1 through 20)

32.     Plaintiff incorporates by this reference the allegations contained in paragraphs 1 through 31 of this Complaint as though fully set forth herein.

33.     Even if a contract existed between Plaintiff and Prudential, which it does not, Prudential breached its contractual duties to Light Field Lab by failing to comply with the contract's terms by waiting four months to deliver any products, which directly caused the resulting damage.

34.     As a direct, legal, and proximate result of the breach of contract by Prudential and DOES 1 through 20, Light Field Lab incurred damages.

35.     As a matter of note, if there were an enforceable contract between the parties,

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

which there is not, and Defendant(s) breached their alleged contractual obligations, then Prudential has also breached its duty to act in good faith and to deal fairly because good faith and fair dealing, collectively, are an implied covenant within any contract.

### THIRD CAUSE OF ACTION

#### FRAUD: INTENTIONAL MISREPRESENTATION, CONCEALMENT, CONSTRUCTIVE FRAUD, AND FALSE PROMISE

#### (Against Defendant Prudential and DOES 1 through 20)

36.     Plaintiff incorporates by this reference the allegations contained in paragraphs 1 through 35 of this Complaint as though fully set forth herein.

37.     Prudential entered into an alleged contract with Plaintiff without any intention of fulfilling its obligations as evidenced by its failure to perform for nearly four months; affirmatively misrepresented its contractual intentions; made false promises to Light Field Lab; and intentionally concealed material facts. Prudential knew these misrepresentations were false when made; and it made these false statements with the intention of inducing Light Field Lab to rely on its misrepresentations and false promises. Light Field Lab relied on Prudential's misrepresentations and would not have acted as it did if it had known the truth.

38.     Prudential had an employee sign a seven-year contract when that individual had no authority to do so, as evidenced by his position title, which Prudential knew. As noted above, Light Field Lab did not imbue its Lead Production Engineer position, or grant to Mr. Perez specifically, any actual authority to act on its behalf. Mr. Perez did not hold himself out as having actual or apparent authority; and given Prudential's former dealings with Mr. Perez, and the Controller's signature on other documents, Prudential could not reasonably assume Mr. Perez had such authority.

39.     After its June 2020 delivery at Plaintiff's offices, Prudential informed Light Field Lab that it could cancel the alleged Services Agreement with Prudential if it paid 50% of the average weekly cost of items – across the lifespan of a seven-year "contract."

40.     In other words: Prudential had an unauthorized signature purportedly binding

Plaintiff. Prudential then took no action for nearly four months. Then, Prudential suddenly delivered garments to Plaintiff's office, and when Plaintiff said it did not have a contract with Prudential, the latter offered Light Field Lab the opportunity to cancel if it paid a percentage of an 84-week contract it never agreed to enter. In fact, Light Field Lab had just learned two weeks prior that any purported contract even existed.

41.     When Plaintiff refused to be strong-armed, Prudential acted outside the contract to make a false claim that Light Field Lab was in breach of contract. Prudential then tried to use a collection agency to leverage payment. In fact, in its "Lost Business Report" dated January 4, 2021, Prudential initially wrote that it received notice from Light Field Lab on June 22 ("06/22/"), and the terminal slash mark following the 22nd suggests a year would follow (e.g., 6/22/20). This date of June 22, 2020 tracks to the approximate timeframe of Prudential's erroneous delivery. However, in this Lost Business Report, Prudential then crossed out the June 22nd date ("06/22/") and replaced it with a date of October 12th ("10/12/20"). Prudential is thus fraudulently claiming Light Field Lab owes a debt through October. Importantly, during this entire course of events, Prudential knew that its alleged contract with Light Field Lab was – essentially and simply – a scam.

42.     As a direct and proximate result of Prudential's fraud and deceit as alleged, Light Field Lab has incurred economic damages to be proven at trial.

43.     Prudential was guilty of malice, oppression, and fraud; and therefore, Light Field Lab is entitled to recover punitive damages.

WHEREFORE, Light Field Lab prays for judgment in its favor and against Defendant(s) as follows:

## PRAYER FOR RELIEF

WHEREFORE, Light Field Lab, Inc. prays for judgment as follows:

1.     For compensatory damages according to proof;

2.     For general damages according to proof;

3.     For attorney's fees pursuant to contract and costs of suit;

1         4.     For punitive damages;

2         5.     For declaratory relief;

3         6.     For injunctive relief against all Defendants and their agents, including the

4 collection agency;

5         7.     For such other and further relief as the court may deem proper.

8 Dated: March 31, 2021                BURKE, WILLIAMS & SORENSEN, LLP

10                        By: _____

                            Stephanie A. Vollmer
                            Patricia L. Peden
                            Attorneys for Plaintiff
                            Light Field Lab, Inc.

# EXHIBIT F



# CourtListener

From Free Law Project, a 501(c)(3) non-profit.

Opinions ▾    RECAP Archive    Oral Arguments    Judges    Financial Disclosures    ♡ Donate

## Tavenner, Chapter 7 Trustee *v.* Light Field Lab, Inc. (20-03106)

### United States Bankruptcy Court, E.D. Virginia

🏳 Add Note    🏷 Tags ▾    🛡 Get Alerts ▾    ⧉ View on PACER ▾

**Last Updated:** Dec. 16, 2023, 12:36 a.m.
**Assigned To:** Kevin R. Huennekens
**Citation:** Tavenner, Chapter 7 Trustee v. Light Field Lab, Inc., 20-03106, (Bankr. E.D. Va.)
**Date Filed:** July 23, 2020
**Date of Last Known Filing:** Sept. 17, 2020

### ☰ DOCKET ENTRIES

| Document Number | Date Filed | Description | | | |
|---|---|---|---|---|---|
| 1 | Jul 23, 2020 | Main Document | Complaint (fee) | Download PDF ▾ | ⌱ |
| 2 | Jul 24, 2020 | Main Document | Summons and Notice; LeClairRyan PLLC, AP cases ONLY | Buy on PACER | ⌱ |
| | Jul 24, 2020 | none | | | ⌱ |
| | Jul 24, 2020 | | Receipt of Adversary/Miscellaneous Proceeding Filing Fee | | ⌱ |
| 5 | Jul 31, 2020 | Main Document | Certificate of Service | Buy on PACER | ⌱ |
| 6 | Sep 17, 2020 | Main Document | Withdrawal of Appearance (one pdf) | Download PDF ▾ | ⌱ |

**Newsletter**
Sign up to receive the Free Law Project newsletter with tips and announcements.

alan@jones.how    ⎙ Subscribe

About
Help & FAQ
Donate

Citation Lookup
Coverage
APIs and Bulk Data
Feeds & Podcasts ⚙
Jurisdictions

Blog & Newsletter
Contact
Data Services
Contribute

Terms & Privacy
Removal
Vulnerability Policies

**Donate**
to
Support our work

CourtListener is sponsored by the non-profit Free Law Project.

   

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:<br><br>    LeClairRyan PLLC,[1]<br><br>    Debtor | Case No.<br>19-34574-KRH<br><br>Chapter<br>7 |
| Lynn L. Tavenner, Chapter 7 Trustee,<br><br>    Plaintiff<br><br>                  v.<br>Light Field Lab, Inc.,<br><br>    Defendant | Adv. Proc. No. 20-0___ |

**COMPLAINT FOR TURNOVER AND
RECOVERY OF AMOUNTS OWED**

Plaintiff, Lynn L. Tavenner, Trustee, and not individually but solely in her capacity as the

Chapter 7 trustee (in such capacity, the "**Trustee**") of the bankruptcy estate (the "**Estate**") of

LeClairRyan PLLC ("**LeClairRyan**" and/or the "**Debtor**"), in the above-referenced Chapter 7

case (the "**Bankruptcy Case**" and/or the "**Case**") hereby by and through her undersigned counsel,

---

[1] The principal address of the Debtor as of the Petition Date was 4405 Cox Road, Glen Allen, Virginia 23060, and the last four digits of the Debtor's federal tax identification number are 2451.

Paula S. Beran, Esq. (Va. Bar No. 34679)
David N. Tabakin, Esq. (Va. Bar No. 82709)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178
Email:  pberan@tb-lawfirm.com
       dtabakin@tb-lawfirm.com

*Counsel to Lynn L. Tavenner, Chapter 7 Trustee*

for her Complaint (the "**Complaint**") against Light Field Lab, Inc. (the "**Defendant**"), alleges as follows:

## NATURE OF THE ACTION

1.      The Trustee brings this Complaint against Defendant to recover amounts due and owing from Defendant to the Estate, which amounts arise from the business relationship between the Debtor and Defendant.

## THE PARTIES

2.      Prior to the Petition Date (as defined below), the Debtor operated as a law firm and its related business. The Debtor operated its business from several states including Virginia, which was the location of its principal place of business. The Trustee is the duly appointed Chapter 7 trustee of the Debtor's Estate, and the Trustee has the sole authority to pursue claims of the Estate.

3.      Upon information and belief, Defendant is a corporation organized under the laws of the State of Delaware with a principal place of business of 699 East Brokaw Road, San Jose, California 95112. As part of the Debtor's on-going business activities, Defendant retained the Debtor to perform legal work on behalf of the Defendant.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984. Resolution of this matter by this Court is essential to the administration of this Estate. The Plaintiff confirms its consent, pursuant to Rule 7008 of the Bankruptcy Rules, to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      This is a core proceeding under 28 U.S.C. § 157(b) including but not limited to § 157(b)(2)(A), (E) and (O).

6.      Venue of this Chapter 7 Case and this adversary proceeding in this District and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

7.      This Court has personal jurisdiction over all necessary parties pursuant to Rule 7004(f) of the Bankruptcy Rules

8.      The statutory and legal predicates for the relief requested by the Complaint and 11 U.S.C. §§ 105, 541, and 542, and Bankruptcy Rule 7001.

**RELEVANT FACTS**

**A.      Case Background**

9.      On September 3, 2019 (the "**Petition Date**"), the Debtor filed for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). Pursuant to §§ 1007 and 1108 of the Bankruptcy Code, the Debtor operated as a debtor-in-possession.

10.      Per agreement between the Debtor, the United States Trustee, and ABL Alliance, LLLP (the "**Lender**"), the Debtor's Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code on October 4, 2019 (the "**Conversion Date**").

11.      Upon conversion, Lynn L. Tavenner was appointed interim trustee, and no trustee having been elected at the meeting of creditors, she continues to serve as Trustee. Consistent with

her duties of Estate administration, and pursuant to this Court's authority, the Trustee maintained
portions of the operations of the Debtor's business to collect the Debtor law firm's receivables.

12.    Prior to the Conversion Date, on the Petition Date, the Debtor had filed its *Motion
of LeClairRyan PLLC for Entry of Interim Orders Approving Settlement Procedures for
Compromising Accounts Receivable and Related Relief* (the "**Receivables Motion**"), ECF No. 8.
Pursuant to the Receivables Motion, the Debtor requested authority to continue its relationship
with On-Site Associates, LLC ("**On-Site**") to aid the Debtor in its collection of outstanding AR.
Pursuant to the *Interim Order Approving Settlement Procedures for Compromising Accounts
Receivable and Related Relief and Scheduling a Final Hearing* (the "**Interim Receivables Motion
Order**"), ECF No. 51, this Court granted the relief sought in the Receivables Motion on an interim
basis. Following the Conversation Date and her appointment, the Trustee, after consultation with
the Lender, requested certain modifications to the proposed final order at a hearing held on October
24, 2019. Thereafter this Court entered the *Final Order Approving Settlement Procedures for
Compromising Accounts Receivable and Related Relief* (with the Interim Receivables Motion
Order, the "**AR Settlement Orders**"), ECF No. 95.

13.    On February 11, 2020, the Trustee, through counsel, filed her *Motion for an Order
Establishing Procedures Regarding the Collection of Accounts Receivable and Memorandum in
Support Thereof* (the "**AR Procedures Motion**"). ECF No. 343. This Court subsequently approved
the AR Procedures Motion and entered the *Order Approving Procedures and Permitting Trustee
to Prosecute and Compromise AR Actions* (the "**AR Procedures Order**"), ECF No. 386.

14.    Pursuant to the authority granted her in §§ 105, 541, and 542 of the Bankruptcy
Code as well as the AR Procedures Order and the AR Settlement Orders, the Trustee, through

counsel, brings this Complaint against Defendant in order to collect amounts due and owing from the Defendant to the Estate.

**B.    Business Relationship Between the Debtor and the Defendant**

15.    Prior to the Petition Date, the Debtor was a law firm providing legal services to clients. All such legal services concluded before the Conversion Date.

16.    Prior to the Petition Date, Defendant retained the Debtor to provide legal services to the Defendant. The Debtor has invoiced Defendant for the fees and costs associated with the legal services provided; however, Defendant has not yet paid all amounts due and owing. Specifically, Defendant is liable to the Debtor for a total of $30,903.43 (the "**Obligation**") but, as of the date hereof, has refused to pay the Obligation. A break-down of the Obligation is attached hereto as **Exhibit A**.

**C.    The Trustee's Demand for Payment**

17.    In December of 2019, the Trustee sent a letter to Defendant demanding that Defendant remit the total amount of the Obligation to the Trustee (the "**Demand Letter**").

18.    Defendant did not remit payment or provide a satisfactory explanation as to why the amounts are not due and owing.

19.    The Trustee believes, based on her review of the Debtor's books and records (which are now under her custody and control), that the Obligation is mature, due and owing to the Estate, and Defendant should immediately pay such amounts.

## COUNT I
## <u>BREACH OF CONTRACT</u>

20.      The Trustee repeats and realleges each of the allegations set forth above as if fully

set forth herein.

21.      Defendant and the Debtor entered into an agreement whereby the Debtor agreed to

provide legal services to the Defendant in exchange for which the Defendant agreed to pay certain

sums to the Debtor.

22.      Despite the Debtor having provided the agreed upon legal services, the Defendant

has failed to make payment to the Debtor for the amounts owed.

23.      The Trustee made a demand for payment of the Obligation to Defendant; however,

Defendant has failed or refused to pay.

24.      The Estate has been damaged by the Defendant's refusal to pay for said legal

services in an amount not less than the Obligation.

25.      The Trustee, on behalf of the Estate, is entitled to judgment against the Defendant

in an amount not less than the Obligation plus attorney's fees and costs associated with collection

of the same.

## COUNT II
## TURNOVER OF PROPERTY OF
## <u>THE ESTATE PURSUANT TO 11 U.S.C. § 542</u>

26.      The Trustee repeats and realleges each of the allegations set forth above as if fully

set forth herein.

27.      The Obligation is an obligation owed to the Debtor, which constitutes property of

the Estate under § 541 of the Bankruptcy Code.

28.      The Obligation has matured and is payable on demand.

29.     The Trustee made a demand for payment of the Obligation to Defendant; however, Defendant has failed or refused to pay.

30.     Defendant knew or should have known that the Obligation was property belonging to the Debtor and now, the Estate, but failed to turn over such amounts as required by § 542 of the Bankruptcy Code.

31.     The Trustee is entitled to recover the full amount of the Obligation pursuant to § 542(b) of the Bankruptcy Code.

32.     The Court may determine the contractual liability and require the Defendant to turn over the funds represented by the Obligation.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee respectfully requests and prays that the Court:

A.     Award the Trustee, on behalf of the Estate, judgment against the Defendant in an amount not less than the Obligation plus attorneys' fees, costs, and interest associated with the same (the "**Judgment**");

B.     Compel Defendant to turnover to the Trustee for the benefit of the Estate the Obligation as well as other amounts included in the Judgment; and

C.     Grant such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

LYNN L. TAVENNER, CHAPTER 7 TRUSTEE

Dated: July 23, 2020          By: */s/ Paula S. Beran*
Richmond, Virginia            Paula S. Beran, Esquire (VSB No. 34679)
                              PBeran@TB-LawFirm.com
                              David N. Tabakin, Esquire (VSB No. 82709)
                              DTabakin@TB-LawFirm.com
                              Tavenner & Beran, PLC

20 North 8th Street
Richmond, Virginia 23219
Telephone: (804) 783-8300
Telecopier: (804) 783-0178

*Counsel for Lynn L. Tavenner, Chapter 7 Trustee*

# FROM CASE 20-03106-KRH NOT AN EXHIBIT HEADER IN 4:23-CV-05344-YGR

EXHIBIT A

| Matter No. | Matter Name | Invoice No. | Invoice Date | Total Billed | Balance |
|---|---|---|---|---|---|
| 0001 | General | 885864 | 8/15/2019 | $30,903.43 | $30,903.43 |
| | | | | | |
| | **Matter Totals** | | | **$30,903.43** | **$30,903.43** |