FRANK S. MOORE, SBN 158029
Law Offices of Frank S. Moore, APC
235 Montgomery Street, Suite 440
San Francisco, California 94104
Telephone:    (415) 292-6091
Facsimile:    (415) 292-6694
fsmoore@pacbell.net

Attorneys for Defendant Alan Jones

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIGHT FIELD LAB,<br><br>Plaintiff,<br><br>vs.<br><br>ALAN JONES,<br><br>Defendant. | No. 4:23-CV-05344-YGR<br><br>**DEFENDANT ALAN JONES'S NOTICE OF SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[Cal. Code of Civ.Proc., 425.16; Fed. R. Civ. Pro. 12(b)(6)]<br><br>Date:    February 13, 2024<br>Time:    2:00 p.m.<br>Place:    Courtroom 1 – 4th Floor<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**DEMAND FOR JURY TRIAL** |

TO: THE CLERK OF THE COURT AND PLAINTIFF LIGHT FIELD LAB.  PLEASE TAKE NOTICE THAT on February 13, 2024, at 2:00 p.m. or as soon thereafter as the matter may be heard in the Oakland Courthouse, Courtroom 1 – 4th Floor, 1301 Clay Street, Oakland, California, defendant ALAN JONES will seek an Order from the Court striking the Complaint, with prejudice and without leave to amend, pursuant to California Code of Civil Procedure section 425.16, on the grounds that the Complaint is a "reactive declaratory action" designed to chill defendant ALAN JONES' protected conduct covered by California Code of Civil Procedure section 425.16.

Dated: January 2, 2024                    Respectfully submitted,


                                          /s/ Frank S. Moore
                                          Frank S. Moore
                                          Attorney for defendant Alan Jones

FRANK S. MOORE, SBN 158029
Law Offices of Frank S. Moore, APC
235 Montgomery Street, Suite 440
San Francisco, California 94104
Telephone:    (415) 292-6091
Facsimile:    (415) 292-6694
fsmoore@pacbell.net

Attorneys for Defendant Alan Jones

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIGHT FIELD LAB, | No. C07-04723 MHP |
| Plaintiff, | **DEFENDANT ALAN JONES'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE** |
| vs. | |
| ALAN JONES, | |
| Defendant. | [Cal. Code of Civ.Proc., 425.16; Fed. R. Civ. Pro. 12(b)(6)] |
| | Date:   February 13, 2024 |
| | Time:   2:00 p.m. |
| | Place:  Courtroom 1 – 4th Floor |
| | Honorable Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION AND SUMMARY OF RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    California's Anti-SLAPP Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The Applicability of California's Anti-SLAPP Statute in Federal Court . . . . . . . . . . 5

        1.    California's Anti-SLAPP Statute Applies in Federal Cases . . . . . . . . . . . . . . 5

        2.    While California's Anti-SLAPP Motions to Strike Are Not Applicable to Purely Federal Law Causes of Action, Where the Gravamen of the Lawsuit is Governed by State Law, California's Anti-SLAPP Statute Applies to the Conduct Underlying the Gravamen of the Suit and Not Whether the Conduct Is Actionable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    California's Anti-SLAPP Statute Applies to Plaintiff's Claims Brought Pursuant to Diversity Jurisdiction Under the Declaratory Judgment Act . . . . . . . . . . . 7

        1.    Plaintiff's Purported "Contractual Dispute" Underlying Its Declaratory Judgment Act Cause of Action is Not a Federal Question and, Therefore, Does Not Afford This Court Federal Question Jurisdiction . . . . . . . . . . . . . . 8

        2.    There is No Federal Question or Right Alleged Underpinning the Purported "Contract Dispute" in the Complaint . . . . . . . . . . . . . . . . . . . . . 9

        3.    Only State Law is at Issue in Plaintiff's SLAPP Suit Making the Statute Directly Applicable to the Gravamen of the Complaint in Federal Court . . . 10

    D.    Plaintiff's Declaratory Relief Complaint Arises Under Defendant's First Amendment Conduct and Defendant Can Prove a *Prima Facie* Application of California's Anti-SLAPP Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    E.    Plaintiff is Actively Using Its Lawsuit to Retaliate Against JONES by Using it as a Cudgel to Forego Lost Stock Plan Benefits as a Damages Claim Arising From His Employment Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    F.    Plaintiff Cannot Prevail in Its Declaratory Judgment Act Complaint . . . . . . . . . . . 15

        1.    Defendant's Conduct Giving Rise to Plaintiff's Claim of "a Case or Controversy" is Absolutely Privileged . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        2.    Plaintiff's Sham Pleading Violates the *Noerr-Pennington* Doctrine . . . . . . . 18

        3.    Plaintiff Cannot Prove "a Case or Controversy" Without Relying on Inadmissible Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        4.    Plaintiff Cannot Establish "a Case or Controversy" for Purposes of the Declaratory Judgment Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

a    Plaintiff Fails to Allege a Cause of Action Under Federal Law . . . . . 22

b.    Plaintiff Has Not Suffered an Actual Loss, Damage or Injury, or Is Threatened with Impairment of its Own Interests. . . . . . . . . . . . . 23

i.    Defendant Cannot Allege an Injury "Traceable" to Defendant's Acts or Omissions to Establish a Case or Controversy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ii.    Defendant Cannot Allege a Substantial Likelihood for Redress to Establish a Case or Controversy . . . . . . . . . . . . . . 24

c.    Plaintiff Cannot Prove Its Claimed "Contract Dispute" is Ripe for Review Under the Declaratory Judgment Act . . . . . . . . . . . . . . . . . . 25

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*LIGHT FIELD LAB v. ALAN JONES,*                                                                 Case No.  4:23-CV-05344-YGR

DEFENDANT ALAN JONES'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT    ii

## **TABLE OF AUTHORITIES**

**Federal Cases:**

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Allen v. Wright*,
   468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Allstate Ins. Co. v. Philip Leasing Co.*,
   214 F.Supp. 273 (D. S.D. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Am. Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*American Civil Liberties Union of Nevada v. Lomax*,
   471 F.3d 1010 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Aspen American Insurance Co. v. TM Yachting Charter LLC*,
   2019 WL 13063503 (S.D. Fla. January 23, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bailey v. Lucent Technologies, Inc.*,
   2004 WL 2106557 (E.D. Penn. September 21, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Black Swan Management and Consulting v. Malbec Investments, LLC,*
   2019 WL 12294307 (M.D. Fla. March 29, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Boone v. Redevelopment Agency of City of San Jose,*
   841 F.2d 886 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Brillhart v. Excess Ins. Co. of America*,
   316 U.S. 491 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Brodheim v. Cry,*
   584 F.3d 1262 (9th Cir. 2009)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.,*
   867 F.Supp. 686 (N.D. IL 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Browne v. McCain,*
   611 F.Supp.2d 1062 (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bullfrog Films, Inc. v. Wick*,
   847 F.2d 502 (9th Cir.1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Burlington N. & Santa Fe Ry. Co. v. White,*
   548 U.S. 53 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Chambers v. NASCO, Inc.,*
   501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*LIGHT FIELD LAB v. ALAN JONES,*                                      Case No.  4:23-CV-05344-YGR

DEFENDANT ALAN JONES'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT    iii

*Cisco Systems, Inc. v. Beccela's Etc., LLC*
    403 F.Supp.3d 813 (N.D. Cal. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Clark v. City of Lakewood,*
    259 F.3d 996 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.,*
    944 F.2d 1525 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Compass Bank v. Morris Cerullo World Evangelism*,
    2015 WL 5039991 (S.D. Cal. August 26, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Compass Bank v. Petersen,*
    886 F.Supp.2d 1186 (C.D.Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Conerly v. Westinghouse Elec. Corp.,*
    623 F.2d 117 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*DaimlerChrysler Corp. v. Cuno*,
    __ U.S. __, 126 S.Ct. 1854 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Daniels–Hall v. Nat'l Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Davis v. United States,*
    499 F.3d 590 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*DeMartini v. DeMartini*,
    833 F. App'x 128 (9th Cir. 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Doe v. Univ. of Dayton,*
    766 F. App'x. 275 (6th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*EMC Corp. v. Norand Corp.,*
    89 F.3d 807 (Fed. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Empress LLC v. City & Cty. of San Francisco,*
    419 F.3d 1052 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Erie v. Tompkins,*
    304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Erie Insurance Property and Casualty Co. v. Moore,*
    2021 WL 3282133 (W.D. Kentucky, July 30, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Eureka Federal Sav. & Loan Ass'n of San Francisco v. Flynn*,
    534 F.Supp. 479 (N.D. Cal. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Flamand v. American Intern. Group, Inc.,*
    876 F.Supp. 356 (D. Puerto Rico 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Fletes-Mora v. Brownell*,
    231 F.2d 579 (9th Cir.1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*LIGHT FIELD LAB v. ALAN JONES,*                    Case No.  4:23-CV-05344-YGR

DEFENDANT ALAN JONES'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT   iv

*Freeman v. Lasky, Haas & Cohler,*
    410 F.3d 1180 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gautreau v. EnLink Midstream Operating GP, LLC,*
    2018 WL 6710036 (M.D. LA November 26, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Gladstone Realtors v. Village of Bellwood,*
    441 U.S. 91 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Golden v. Zwickler,*
    394 U.S. 103 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Greengrass v. Int'l Monetary Sys., Ltd.,*
    776 F.3d 481 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Heydon v. MediaOne of S.E. Mich., Inc.,*
    327 F.3d 466 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hourigan v. Redgrave LLP,*
    2022 WL 17082374 (N.D. Cal. November 18, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Intellectual Property Develop., Inc. v. TCI Cablevision of Calif., Inc.,*
    248 F.3d 1333 (DC Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Kottle v. Nw. Kidney Ctrs.,*
    146 F.3d 1056 (9th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23, 24

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Natividad v. Wells Fargo Bank, N.A.,*
    2013 WL 2299601 (N.D.Cal. May 24, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Nunag-Tanedo v. East Baton Rouge Parish School Bd.,*
    711 F.3d 1136 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*O'Connell v. Celonis, Inc.,*
    2022 WL 3591061 (N.D. Cal. Aug. 22, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Oatway v. American Intern. Group, Inc.,*
    325 F.3d 184 (3rd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Obduskey v. McCarthy & Holthus LLP,*
    586 U.S. ___, 139 S.Ct. 1029, 203 L.Ed.2d 390 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Oliver v. Microsoft Corporation,*
   2012 WL 12921328 (N.D. Cal. September 25, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Owen Equipment & Erection Co. v. Kroger,*
   437 U.S. 365, 98 S.Ct. 239, 657 L.Ed.2d 27 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Paramount Pictures Corp. v. Replay TV,*
   298 F.Supp.2d 921 (CD Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress,*
   890 F.3d 828 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pochiro v. Prudential Ins. Co. of Amer.,*
   827 F.2d 1246 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Powell v. Wells Fargo Home Mortgage,*
   2015 WL 4719660 (N.D. Cal. August 7, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Principal Life Ins. Co. v. Robinson,*
   394 F.3d 665 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
   508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Public Service Comm'n v. Wycoff Co.,*
   344 U.S. 237 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rich v. Shrader,*
   823 F.3d 1205 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Robinson v. Alameda County,*
   875 F. Supp. 2d 1029, (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Roe v. McKee Management Associates, Inc.,*
   2017 WL 690538 (E.D. Penn. February 21, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Scarfo v. Cabletron Systems, Inc.,*
   54 F.3d 931 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sears Roebuck & Co. v. American Mutual Liability Ins. Co.,*
   372 F.2d 435 (7th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC,*
   733 F.3d 1251 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Shell Oil Co. v. Frusetta,*
   290 F.2d 689 (9th Cir. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Shuffle Tech International, LLC v. Scientific Games Corporation,*
   2015 WL 5934834 (N.D. Ill. October 12, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Skelly Oil Co. v. Phillips Petroleum Co.,*
   339 U.S. 667 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*LIGHT FIELD LAB v. ALAN JONES,*                                          Case No.  4:23-CV-05344-YGR

DEFENDANT ALAN JONES'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT   vi

*Smith v. California Dept. of Corrections,*
    2006 WL 3518257 (E.D.Cal.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Smith v. Levine Leichtman Capital Partners, Inc.,*
    723 F.Supp.2d 1205 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sosa v. DIRECTV, Inc.,*
    437 F.3d 923 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*St. Paul Fire and Marine Ins. Co. v. Weiner,*
    606 F.2d 864 (9th Cir.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Summers v. Earth Island Institute,*
    129 S.Ct. 1142 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Taylor v. JP Morgan Chase,*
    2011 WL 13175902 (C.D. Cal. February 24, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Theme Promotions, Inc. v. News Am. Mktg. FSI,*
    546 F.3d 991 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Theofel v. Farey-Jones,*
    359 F.3d 1066  (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Thomas v. Fry's Electronics, Inc.,*
    400 F.3d 1206 (9th Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thomas v. Union Carbide Agric. Prod. Co.,*
    473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Toledo v. Jackson,*
    485 F.3d 836 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Torres v. Unum Life Ins. Co. of Am.,*
    2009 WL 69358 (N.D. Cal. Jan. 9, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*UNC Resources, Inc. v. Benally,* 5
    14 F.Supp. 358 (D. NM 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.,*
    190 F.3d 963 (9th Cir.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,*
    454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,*
    529 U.S. 765 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Welk Resort Group Inc. v. Reed Hein & Associates, LLC.,*
    2019 WL 1242446 (S.D. Cal. March 18, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*LIGHT FIELD LAB v. ALAN JONES,*                                      Case No.  4:23-CV-05344-YGR

DEFENDANT ALAN JONES'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT   vii

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**California Cases:**

*Adams v. Superior Court,*
2 Cal.App.4th 521 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
19 Cal.App.5th 525 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Blanchard v. DIRECTV, Inc.,*
123 Cal.App.4th 903 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bonni v. St. Joseph Health System,*
11 Cal.5th 995 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Braun v. Chronicle Publ'g Co.,*
52 Cal.App.4th 1036 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Briggs v. Eden Council for Hope & Opportunity,*
19 Cal.4th 1106 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*City of Cotati v. Cashman,*
29 Cal.4th 69 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cloud v. Casey,*
76 Cal.App.4th 895 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Coretronic Corp. v. Cozen O'Connor,*
192 Cal. App. 4th 1381 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*DuPont Merck Pharmaceutical Co. v. Superior Court,*
78 Cal.App.4th 562 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Equilon Enterprises v. Consumer Cause, Inc.,*
29 Cal.4th 53 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Evans v. Unkow,*
38 Cal.App.4th 1490 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Falkowski v. Imation Corp.,*
132 Cal.App.4th 499 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Feldman v. 1100 Park Lane Associates,*
160 Cal.App.4th 1467 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gilbert v. Sykes,*
147 Cal.App.4th 13 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Governor Gray Davis v. American Taxpayers Alliance,*
102 Cal.App.4th 449 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gov't Emps. Ins. Co. v. Dizol,*
133 F.3d 1220 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hakopian v. Mukasey,*
        551 F.3d 843 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Home Ins. Co. v. Zurich Ins. Co.,*
        96 Cal.App. 4th 17 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kyle v. Carmon,*
        71 Cal.App.4th 901 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.,*
        37 Cal.App.4th 855 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lunada Biomedical v. Nunez,*
        230 Cal.App.4th 459 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Malin v. Singer,*
        217 Cal.App.4th 1283 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mann v. Quality Old Time Service, Inc.,*
        120 Cal.App.4th 90 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mission Springs Water Dist. v. Verjil,*
        218 Cal.App.4th 892 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mycogen Corp. v. Monsanto Co.,*
        28 Cal.4th 888 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Navellier v. Sletten,*
        29 Cal.4th 82 (2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*Neville v. Chudacoff,*
        160 Cal.App.4th 1255 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pollock v. Superior Court,*
        229 Cal.App.3d 26 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rubin v. Green,*
        4 Cal.4th 1187 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rusheen v. Cohen,*
        37 Cal.4th 1048 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Silberg v. Anderson,*
        50 Cal.3d 205 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Simmons v. Allstate Ins. Co.,*
        92 Cal.App.4th 1068 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Wilcox v. Superior Court,*
        27 Cal.App.4th 809 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19, 20

**Statutes and Rules:**

        Declaratory Judgment Act

28 U.S.C. Section 1332(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
28 U.S.C. Section 2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 15, 20, 23

Federal Rules of Civil Procedure

Rule 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19
Rule 12(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Evidence

Rule 408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 19

Internal Revenue Code

26 U.S.C. Section 422(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
26 U.S.C. Section 421(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
26 U.S.C. Section 422(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States Constitution

Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 24

California Civil Code

Section 47(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Code of Civil Procedure

Section 425.16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Section 425.16(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Section 425.16(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7
Section 425.16(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 25
Section 425.16(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Section 425.16(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**INTRODUCTION AND SUMMARY OF RELIEF SOUGHT**

Plaintiff filed a one cause of action lawsuit under the Declaratory Judgment Act (28 U.S.C. § 2201) against defendant ALAN JONES ("JONES") concerning an alleged "case in controversy" over a purported "contractual dispute." (See Complaint, p. 1, ¶3 – Exhibit "A" to Request for Judicial Notice ["RJN"] filed concurrently herewith.)  This framing of the dispute between the parties is a sham (see *infra*).

As demonstrated below, the gravamen of plaintiff's Complaint (Exhibit "A" to RJN) arises out of a pre-litigation demand letter and subsequent settlement negotiations between plaintiff's counsel and JONES's former counsel. Because plaintiff has not alleged any federal question underpinning its Declaratory Judgment Act and since diversity jurisdiction is the only basis for this Court's jurisdiction, California state law creates and determines the substantive rights and duties that may be vindicated through declaratory relief under the Declaratory Judgment Act.  As such, plaintiff's lawsuit is subject to California's anti-SLAPP statute in federal court.  Further, because plaintiff's inability to articulate federal subject matter jurisdiction, overcome California's litigation privilege, present an exception to the evidentiary prohibition of Federal Rule of Evidence 408, application of the *Noerr-Pennington* doctrine and inability to meet the "case in controversy" standard for claims under the Declaratory Judgment Act ("DJA") for a myriad of reasons (see *infra*), plaintiff will be unable to meet its burden of demonstrating a probability of prevailing on the merits by showing that its DJA claim has at least minimal merit, this SLAPP suit should be dismissed under California's anti-SLAPP statute.

**STATEMENT OF RELEVANT FACTS**

Plaintiff's Complaint contains an incomplete, false and misleading statement of facts in its attempt to state a "case of actual controversy."  Plaintiff omitted from its pleading the undisputed fact that defendant JONES's prior counsel presented in good faith a settlement demand that plaintiff's lawyer and JONES's lawyer spent months negotiating before plaintiff filed the instant lawsuit. The Complaint avers that it is over a purported "contractual dispute" over a stock incentive plan. (Complaint, p. 1, ¶3 – Exhibit "A" to RJN.)  It avers that JONES made a "threat to sue" contained in 4 separate factual averments in the Complaint, to wit: "Jones *threatens to sue* to obtain the equity interest in these shares." (Complaint, p. 2, ¶4 – Exhibit "A" to RJN [emphasis added]); " Light Field Labs faces an impossible

choice: either give Jones what he demands and risk reneging on the commitments made to other current and prospective Plan participants *threats to sue*." (*Id.* [emphasis added]); "Light Field Lab needs the security in knowing that it has no obligation to Jones and will not continue to receive *further demands and threats from him*." (Complaint, p. 6, ¶30 – Exhibit "A" to RJN [emphasis added]); "As a startup company that must secure investment capital, threatened litigation is also harmful to Light Field Lab's financial interests in securing additional investments, made more difficult when *stock litigation* is pending." (*Id.,* at 6-7 [emphasis added].)

JONES never communicated directly with plaintiff or its counsel about his inchoate claims before plaintiff filed its lawsuit. He relied exclusively on his employment lawyer, Alex Buerger, Esq., of Washington who dropped him as a client after this suit was filed. (See Declaration of Alan Jones ["Jones Decl."] filed herewith.) Thus, there is only one source of a "threat to sue" that was ever received by planintiff on behalf of JONES and that is the letter Mr. Buerger sent to Mr. John Dohm, COO of Light Field Lab, Inc., on July 12, 2023, which contained ten (10) pages of factual assertions for "for defamation/false light, disability discrimination and retaliation." (July 12, 2023 Letter from Alex Buerger, Esq., to COO John Dohm ["July 12, 2023 Letter"] – Exhibit "B" to RJN.) The July 12, 2023 Letter contains a section A entitled "Factual Summary" (July 12, 2023 Letter pp. 2-4 - Exhibit "B" to RJN [Bates Nos. 002-004]), a section B entitle "Legal Liability" including subsections addressing the elements for "*Defamation/False Light*," "*Disability Discrimination*" and "*Retaliation*" (July 12, 2023 Letter pp. 4-8 - Exhibit "B" to RJN [Bates Nos. 004-008]), a section C entitled "Damages" (July 12, 2023 Letter pp. 8-9 - Exhibit "B" to RJN [Bates Nos. 008-009]) and demand of money in exchange for a full release of claims. (July 12, 2023 Letter p. 10 - Exhibit "B" to RJN [Bates No. 010].) These facts are ominously and flagrantly omitted in plaintiff's Complaint for an improper purpose.

The Complaint avers the following: "Jones asserts an entitlement to exercise both his vested and unvested stock options after the three-month exercise period set forth in the Plan Documents." (Complaint, p. 5, ¶23 – Exhibit "A" to RJN.)  Yet, the reality is that the July 12, 2023 Letter stated as follows: "To this end, Mr. Jones is willing to execute a full release of claims with confidentiality in exchange for payment of $750,000. Additionally, Mr. Jones would require an extension of the exercise date on his vested LFL stock options from three (3) months to five (5) years. Based upon LFL's liability

exposure, I believe that this is an extremely reasonable early settlement offer." (July 12, 2023 Letter p. 10 - Exhibit "B" to RJN [Bates No. 10].)

Indeed, throughout the settlement negotiations, it was plaintiff's counsel who raised the prospect of having JONES exercise a large number of vested options as part of the consideration to pay a settlement on September 15, 2023, but that from JONES's perspective, it was non-starter due to the tax consequences of such a resolution. (Exhibit "C" to RJN [Bates Nos. 043-046.)  It was the lost value of that equity as a damage that the parties were entertaining, including this statement from plaintiff's counsel: "Do you allege a breach of the Light Field Lab 2017 Stock Incentive Plan? To date, *I understand your position to be that the value of the stock options are part Alan's wages*. Please confirm." (Exhibit "C" to RJN [Bates No. 051.) In response, JONES's lawyer clarified: "You are correct that we are claiming equity loss as part of Alan's wages.[1]" (Exhibit "C" to RJN [Bates Nos. 053-054.) Thus, plaintiff conflates a settlement demand with an "entitlement to exercise both his vested and unvested stock options after the three-month exercise period set forth in the Plan Documents" to falsely

---

[1]        While lost stock options may not be considered wages by the Ninth Circuit in a particular context (*International Business Machines Corp. v. Bajorek* (9th Cir.1999) 191 F.3d 1033, 1039), no California court has adopted that characterization (see *Woods v. Fox Broadcasting Sub., Inc.,* 129 Cal.App.4th 344, 350 (2005) [questioning the breadth of the *Bajorek* holding and citing *Department of Industrial Relations v. UI Video Stores, Inc.* (1997) 55 Cal.App.4th 1084, 1091 [wages includes not just salary but also other benefits that are part of an employee's compensation]) and California courts are not bound by decisions of the Ninth Circuit on matters of California law. (*Bank of Italy Etc. Assn. v. Bentley* (1933) 217 Cal. 644, 653.) Regardless, stock options have been considered compensation and as a part of recoverable damages under Title VII. *Scarfo v. Cabletron Systems, Inc.,* 54 F.3d 931, 953 (1st Cir. 1995) (stock options as "other compensation."); *Bailey v. Lucent Technologies, Inc.,* 2004 WL 2106557 at *1, fn. 4 (E.D. Penn. September 21, 2004) (" we conclude that defendant has been placed on notice that plaintiff may seek damages for the whole period of alleged discrimination from August 2000 to December 2001 and that one of the items of damages claimed included stock options.")  Loss of stock options have been claimed in employment discrimination suits. See *Gautreau v. EnLink Midstream Operating GP, LLC,* 2018 WL 6710036, *2 (M.D. LA November 26, 2018) (loss of stock options as suffered damage under Louisiana's Employment Discrimination Law); *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.,* 867 F.Supp. 686, 690 (N.D. IL 1994) (damages issues in  age discrimination action included loss stock bonus plan benefits); *Flamand v. American Intern. Group, Inc.,* 876 F.Supp. 356 (D. Puerto Rico 1994) (loss of stock option plan in employment discrimination case); see also *Cloud v. Casey,* 76 Cal.App.4th 895, 901 (1999) ("The damages phase was tried to the court. The court awarded judgment to Ms. Cloud of . . . . and $276,131 in lost stock options" under FEHA); *Oliver v. Microsoft Corporation,* 2012 WL 12921328 at *1 (N.D. Cal. September 25, 2012) ("stock awards to which she was entitled . . . [are] items of financial loss represent a subset of the same damage categories Oliver alleges in her claims for relief based on purported discrimination, harassment, and retaliation" under FEHA)..

frame the dispute as a "contractual" one.[2]

From the initiation of the July 12, 2023 demand letter (Exhibit "B" to RJN), through October 12, 2023, when JONES's lawyer provided plaintiff's counsel a deadline: "If we do not receive a good faith counteroffer from your client by October 18, 2023, we will need to *proceed forward with our administrative filings*.[3]" (Exhibit "C" to RJN [Bates No. 056 – emphasis added].) The day after the deadline of 10/18/23 passed, plaintiff filed its Complaint. Dkt. #1 (10/19/23).

Throughout these negotiations, shares through the incentive stock plan were discussed, not as a basis for a contract claim as plaintiff seeks to re-frame the dispute as a "contractual dispute," but as a basis to claim damages arising out of the employment discrimination/retaliation claims JONES held inchoate and as a means for consideration should the parties reach a settlement.  Plaintiff's counsel successfully delayed these negotiations through a variety of measures until after JONES's options expired. After soliciting JONES's lawyer for a cash settlement offer, which was furnished, plaintiff ignored the demand and then filed this suit accusing JONES of threatening to sue over a contractual dispute, a false contention.

Indeed, there can be no doubt that the July 12, 2023 Letter and the settlement negotiations that followed as memorialized in emails (Exhibits "B" and "C" to RJN) is the focal point of plaintiff's Complaint given that, as recently as December 13, 2023, plaintiff's counsel, in response to JONES's motion for a more definitive statement pursuant to Federal Rule of Civil Procedure 12(e) (Dkt. #21), sent

---

[2]    Plaintiff's averment that "Jones's insistence that he alone is exempt from the Plan exposes Light Field Lab to real business risks" (Complaint, p. 6, ¶24 – Exhibit "A" to RJN) is a particularly blatant example of plaintiff misconstruing the assertions contained in the July 12, 2023 Letter (Exhibit "B" to RJN) as there is nothing remotely close to such characterization set forth therein or in the email correspondence that followed. (Exhibit "C" to RJN.)  Whether sanctions are appropriate under Rule 11 is up to the court's inherent authority (see *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)) given that JONES's substituted counsel will not request them and instead rely on Code of Civil Procedure section 425.16, subparagraph (c) to recover fees should he prevail on his Special Motion to Strike Under California's Anti-SLAPP Statute.

[3]    This reference to "administrative filings" meant the pre-litigation exhaustion of administrative remedies with both the Department of Fair Employment and Housing (California) and the Equal Employment Opportunity Commission [referred to in the July 12, 2023 demand letter as "the California Civil Rights Department and the Equal Employment Opportunity Commission." (Exhibit "B" to RJN [Bates No. 010].)  JONES made arrangements for an appointment with the EEOC but due to delay in processing with that agency, he opted to file his administrative complaint with the California Civil Rights Department on January 1, 2024. See Jones Decl., and Exhibits "D" and "H" thereto.

JONES the aforementioned trove of email correspondence along with this communication: "I write concerning your motion for a more definite statement. In response to statements made in your brief, we are providing you with copies of the emails your prior counsel set to us. Additionally, we attach a Release and Covenant Not to Sue for your consideration." (Exhibit "E" to RJN, enclosing Exhibits "C" and "F" to RJN.)  Indeed, plaintiff made clear it was the demand letter and the settlement negotiations that underlie the gravamen of its Complaint in its response to Federal Rule of Civil Procedure 12(e) motion. (See Dkt. #22 – Exhibit "G" to RJN.)  Moreover, both the lawsuit and the Release and Covenant Not to Sue is a form of retaliation under both Title VII and FEHA. (See *infra*.)

In short, there is and never was a stand-alone contractual claim for the lost stock options pursuant to the stock incentive plan that forms the basis for plaintiff's sham Complaint.  It is without dispute that the gravamen of the Complaint is over a protected demand letter and settlement negotiations protected by California's anti-SLAPP statute and the federal *Noerr-Pennington* doctrine.

## ARGUMENT

### A.    California's Anti-SLAPP Statute

"SLAPP" stands for Strategic Lawsuit Against Public Participation. *Governor Gray Davis v. American Taxpayers Alliance*, 102 Cal.App.4th 449, 454 n. 1 (2002).  "SLAPP litigation, generally, is litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants." *Id.* (quoting *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.,* 37 Cal.App.4th 855, 858 (1995), *superceded by statute on other grounds*).  The anti-SLAPP statute specifies that it should be "construed broadly" (Cal. Code Civ. Proc., § 425.16(a)), and allows a defendant to move to strike a plaintiff's complaint if the complaint stems "from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Code Civ. Proc., § 425.16(b)(1).

### B.    The Applicability of California's Anti-SLAPP Statute in Federal Court

#### 1.    California's anti-SLAPP Statute Applies in Federal Cases

California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court, and these provisions do not conflict with the Federal Rules of Civil Procedure. *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206, 1207 (9th Cir.2005); *United States ex rel.*

*Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9ᵗʰ Cir.1999).  When state statutes authorize fee awards to litigants in a particular class of cases such as California's anti-SLAPP statute, the statutes are substantive for purposes of *Erie v. Tompkins,* 304 U.S. 64 (1938) if there is no "direct collision" with the Federal Rules.

The more specific state anti-SLAPP procedure is treated as "substantive" for *Erie* purposes and thus recognized in diversity cases in federal court. *Batzel v. Smith,* 333 F.3d 1018, 1025-1026 (9ᵗʰ Cir. 2003).

> [A] SLAPP motion, like a summary judgment motion, pierces the pleadings and requires an evidentiary showing.  [T]he test applied to a SLAPP motion is similar to that of a motion for summary judgment. . . . [Citation.]  Evidence is considered, but not weighed. If the initial evidentiary burden is met by the moving party, the burden shifts to the party opposing the motion to avoid dismissal of the action. [Citation.]

*Simmons v. Allstate Ins. Co.*, 92 Cal.App.4th 1068, 1073 (2001).

**2.    While California's Anti-SLAPP Motions to Strike Are Not Applicable to Purely Federal Law Causes of Action, Where the Gravamen of the Lawsuit is Governed by State Law, California's Anti-SLAPP Statute Applies to the Conduct Underlying the Gravamen of the Suit and Not Whether the Conduct Is Actionable**

Although the anti-SLAPP statute applies to state law claims brought in federal court, it does not apply to federal question claims because such application would frustrate substantive federal rights. See *Smith v. California Dept. of Corrections,* 2006 WL 3518257 (E.D.Cal.2006) and cases cited therein. "[T]he anti-SLAPP statute does not apply to federal law causes of action." *Hilton v. Hallmark Cards,* 599 F.3d 894, 901 (9th Cir. 2010); see also *Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.,* 711 F.3d 1136, 1141 (9th Cir. 2013).  Here, despite plaintiff's attempt to drape the DJA as a basis for its sham Complaint, the DJA does not present a federal question at all because the underlying dispute plaintiff claims as a "case in controversy" involves nothing other than California contract law.

Federal courts considering special motions to strike under California's anti-SLAPP statute follow the test applied by California courts, namely, whether a defendant "has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (Citation omitted.) . . . . Courts examine the 'principal thrust or gravamen' of the claims at issue to determine whether they arise from protected activity. (Citation omitted.)" *Smith v. Levine Leichtman Capital Partners, Inc.,* 723 F.Supp.2d 1205, 1213 (N.D. Cal. 2010).

"Unlike demurrers or motions to strike, which are designed to eliminate sham or facially meritless allegations, at the pleading stage a SLAPP motion, like a summary judgment motion, pierces the pleadings and requires an evidentiary showing." *Simmons v. Allstate Ins. Co., supra,* 92 Cal.App.4th at 1074. The test applied to a SLAPP motion is similar to that of a motion for summary judgment, nonsuit, or directed verdict. *Kyle v. Carmon,* 71 Cal.App.4th 901, 907–908 (1999). Evidence is considered, but not weighed. If the initial evidentiary burden is met by the moving party, the burden shifts to the party opposing the motion to avoid dismissal of the action.

Because California's anti-SLAPP statute requires courts to look to the pleadings and the supporting and opposing declarations stating the acts upon which the liability is based in determining whether a cause of action is based on a defendant's protected free speech or petitioning activity (Cal. Code Civ. Proc., § 425.16, subd. (b); *Navellier v. Sletten,* 29 Cal.4th 82, 89 (2002); *Gilbert v. Sykes,* 147 Cal.App.4th 13, 26 (2007)), the mere labeling of a cause of action as a federal question does not satisfy the test under California law.

"Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the plaintiff's causes of action." *Coretronic Corp. v. Cozen O'Connor,* 192 Cal. App. 4th 1381, 1390, 1389 (2011); see also *City of Cotati v. Cashman,* 29 Cal.4th 69, 78 (2002) (the court must "focus ... on the substance of [the] lawsuit") (cited with approval in *Welk Resort Group Inc. v. Reed Hein & Associates, LLC.,* 2019 WL 1242446, *2 (S.D. Cal. March 18, 2019)). "'The court reviews the parties' pleadings, declarations and other supporting documents to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.' *Coretronic Corp.,* 192 Cal. App. 4th at 1389." *Welk.*

**C.     California's Anti-SLAPP Statute Applies to Plaintiff's Claim Brought Pursuant to Diversity Jurisdiction Under the Declaratory Judgment Act**

In applying California's anti-SLAPP statute to federal court, the Ninth Circuit has held that, on the one hand, when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. And, on the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in

such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court. *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress,* 890 F.3d 828, 834 (9th Cir. 2018).

Here, JONES challenges both the legal sufficiency of plaintiff's DJA claim (it is not a federal question, it does not invoke federal subject matter jurisdiction and because it is nothing more than a defense to JONES's inchoate claims, it is not legally sufficient under the DJA) and the factual sufficiency of plaintiff's DJA claim (the gravamen of plaintiff's DJA claim only concerns what it alleged JONES threatened to sue, but the only evidence (Exhibits "B" and "C" to RJN) demonstrates that JONES's attorney only threatened to sue for defamation/false light, disability discrimination and retaliation claims and not a contractual claim over plaintiff's stock incentive plan as it falsely contends in its Complaint).  It is JONES's position that regardless of the test that is applied, there is nothing by way of discovery that can cure plaintiff's Complaint to state an actual case in controversy.

**1.      Plaintiff's Purported "Contractual Dispute" Underlying Its Declaratory Judgment Act Cause of Action is Not a Federal Question and, Therefore, Does Not Afford This Court Federal Question Jurisdiction**

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." But Section 2201 does not create an independent cause of action. *Davis v. United States,* 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950))[4]. Accordingly, a federal court "must 'have jurisdiction already' under some other federal statute" before a plaintiff can "invok[e] the Act." *Toledo v. Jackson,* 485 F.3d 836, 839 (6th Cir. 2007) (quoting *Heydon v. MediaOne of S.E. Mich., Inc.,* 327 F.3d 466, 470 (6th Cir. 2003)). Put another way, "[t]he Declaratory Judgment Act is procedural in nature and 'does not create an independent cause of action' that can be invoked absent some showing of an articulated legal wrong." *Doe v. Univ. of Dayton,* 766 F. App'x. 275, 291 (6th Cir. 2019) (quoting *Davis v. United States,* 499 F.3d 590, 594 (6th Cir. 2007)).

The Act widened the "range of remedies available in federal courts but did not extend their jurisdiction." *Fletes-Mora v. Brownell, supra*, 231 F.2d at 581.  Accordingly, a dispute over a contractual

---

[4]      "The operation of the Declaratory Judgment Act is procedural only." *Skelly Oil Co, supra,* 339 U.S. at 671.

claim will create federal-question jurisdiction under the Declaratory Judgment Act only if the underlying contractual claim to be litigated raises a federal question. *Hourigan v. Redgrave LLP,* 2022 WL 17082374, *7 (N.D. Cal. November 18, 2022).

Plaintiff has not invoked federal question jurisdiction since the DJA does not provide it, but instead specifically alleged that jurisdiction was "by virtue of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1)." (Complaint, p. 2, ¶5 – Exhibit "A" to RJN.)  While plaintiff invokes the Declaratory Judgment Act by citing to 28 U.S.C. § 2201 as a basis for subject matter jurisdiction in the Complaint (Complaint, p. 2, ¶5 – Exhibit "A" to RJN), it is settled that the Declaratory Judgment Act does not afford an independent basis for federal jurisdiction. *Fletes-Mora, supra*, 231 F.2d at  581.

**2.    There is No Federal Question or Right Alleged Underpinning the Purported "Contract Dispute" in the Complaint**

Here, the purported "contractual dispute" (Complaint, p. 1, ¶3 – Exhibit "A" to RJN) is nothing other than a stock incentive plan, one that arises out of state contract law. *Hourigan, supra,* (citing *DeMartini v. DeMartini*, 833 F. App'x 128, 131 (9th Cir. 2020); *O'Connell v. Celonis, Inc.,* No. 22-cv-02320-WHO, 2022 WL 3591061, at *13 (N.D. Cal. Aug. 22, 2022) (evaluating breach-of-contract claim arising from alleged breach-of-offer letter under California law).  Plaintiff attached the contract at issue, entitled LIGHT FIELD LAB, INC., 2017 LIGHT FIELD LAB, INC.,  STOCK INCENTIVE PLAN, STOCK OPTION AGREEMENT ('LFL's SIP, SOA')," states in relevant part:

> This Option is intended to be an Incentive Stock Option as defined in Section 422 of the Code only to the extent o designated in the Notice, and to the extent it is not so designated or to the extent this Option does not qualify as an Incentive Stock Option, it is intended to be a Nonstatutory Stock Option.

(LFL's SIP, SOA, p. 1, ¶2, Exhibit A to Complaint – Exhibit "A" to RJN.)

An employer's stock incentive plan, whether it qualified as "incentive" or "statutory" stock option plan under the Internal Revenue Code (26 U.S.C. §§ 421(a)(1), 422(a)) or is a "nonstatutory" stock option plan (*i.e.,* those that do not satisfy the requirements of section 422(b)), are governed by the state's contract law in which the plan was established. See *Falkowski v. Imation Corp.,* 132 Cal.App.4th 499, 505-515 and fn. 16 (2005).

Furthermore, there is nothing in LFL's SIP, SOA that provides a basis to contend that the primary purpose of LFL's SIP, SOA is to provide deferred compensation or other retirement benefits that would

implicate Employee Retirement Income Security Act of 1974 (ERISA) to make the "case in controversy" a federal question. *Rich v. Shrader,* 823 F.3d 1205, (9th Cir. 2016) (stated main purpose of stock incentive plan was not to provide retirement or systematically deferred income and, therefore, not subject to ERISA); *Oatway v. American Intern. Group, Inc.,* 325 F.3d 184, 188 (3rd Cir. 2003) (ERISA does not apply to the Stock DRO because the Incentive Stock Options were not intended to be retirement income or benefits). Indeed, based on plaintiff's own judicial admission[5], the main purpose of LFL's SIP, SOA is stated in its first paragraph: "The purpose of the Plan is to attract and retain the best available personnel for positions of substantial responsibility, to provide an additional incentive to employees, and to promote the success of the Company's business. Exhibit A at 6." (Complaint, p. 3, ¶9 and LFL's SIP, SOA, p. 1, ¶1, Exhibit A to Complaint – Exhibit "A" to RJN.)

### 3. Only State Law is at Issue in Plaintiff's SLAPP Suit Making the Statute Directly Applicable to the Gravamen of the Complaint in Federal Court

There is no federal question underlying the gravamen of plaintiff's one cause of action for declaratory relief and is before this Court only because of diversity jurisdiction and an attempted pre-emptive strike against defendant's civil rights claims against it. (See *infra*.) Plaintiff's artful pleading is a sham and the sort of litigation tactic which cannot establish federal question jurisdiction. *Eureka Federal Sav. & Loan Ass'n of San Francisco v. Flynn*, 534 F.Supp. 479, 481 (N.D. Cal. 1982) (federal jurisdiction on the issue of preemption cannot be established by posing the issue in connection with resort to the federal Declaratory Judgment Act.) "Thus a claim of preemption cannot serve as a basis for subject matter jurisdiction, even if presented in the form of a request for declaratory relief. See *Public Service Comm'n v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). The Supreme Court has stated:

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction.

*Public Service Comm'n v. Wycoff Co.*, *supra,* 344 U.S. 237 (1952).

---

[5]    Allegations in a complaint are considered judicial admissions. See *Am. Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988); *Hakopian v. Mukasey,* 551 F.3d 843, 846 (9th Cir. 2008).

Where, as here, subject matter jurisdiction is solely based on diversity, federal law determines whether there is a controversy before the Court is within the purview of the Declaratory Judgment Act, 28 U.S.C. § 2201, and state law creates and determines the substantive rights and duties that may vindicated through declaratory relief. See *St. Paul Fire and Marine Ins. Co. v. Weiner,* 606 F.2d 864, 867 (9th Cir.1979); *Compass Bank v. Morris Cerullo World Evangelism*, 2015 WL 5039991, *10 (S.D. Cal. August 26, 2015) (*Morris Cerullo*); *Compass Bank v. Petersen,* 886 F.Supp.2d 1186, 1196 (C.D.Cal. 2012).  Because this Court's subject-matter jurisdiction over this case arises in diversity, the Court is to apply California law to determine the parties' rights in this case. *Morris Cerullo, supra,* 2015 WL 5039991, at 10.  Therefore, the ban against applying California's anti-SLAPP statute to federal question claims (*Smith v. California Dept. of Corrections, supra,* 2006 WL 3518257 and cases cited therein) does not apply to plaintiff's Complaint since under the authorities cited above, the substantive rights involve solely state claims.  The only "contractual dispute" issue plaintiff could possibly implicate is that of a non-ERISA stock incentive plan governed by California contract law and that is only if the Court is willing to indulge plaintiff's sham pleadings.

**D.      Plaintiff's Declaratory Relief Complaint Arises Under Defendant's First Amendment Conduct and Defendant Can Prove a *Prima Facie* Application of California's Anti-SLAPP Statute**

A defendant filing an anti-SLAPP motion to strike "must make an initial *prima facie* showing that the plaintiff's suit arises from an act in furtherance of defendant's right of petition or free speech." *Braun v. Chronicle Publ'g Co.*, 52 Cal.App.4th 1036, 1042-43 (1997).  "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)," *City of Cotati, supra,* 29 Cal.4th at 78, namely: "(1) any written or oral statement or writing made before a ... judicial proceeding ...; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in ... a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest[,]" Cal. Civ. Proc. Code § 425.16(e).

---

*LIGHT FIELD LAB v. ALAN JONES,*                                                                   Case No.  4:23-CV-05344-YGR
DEFENDANT ALAN JONES'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT    11

Here, plaintiff's Complaint asserts that a "controversy" arises out of defendant's purported "threat to sue" contained in 4 separate factual averments in the Complaint. (See "Statement of Facts," *supra*.)  As plaintiff is keenly aware, the "threat to sue" in the July 12, 2023 Letter (Exhibit "B" to RJN) or the settlement negotiation correspondence which followed (Exhibit "C" to RJN) cannot be construed as a "contractual dispute" or "stock litigation" as plaintiff does in its Complaint.  Indeed, the only mention of shares pertaining to the incentive stock plan (LFL's SIP, SOA) is in two places in the July 12, 2023 Letter.  The first is in the "Damages" section, to wit:

> In terms of his equity interest in LFL, Mr. Jones will suffer the loss of [redacted] LFL shares that are vested because he cannot afford to exercise those options due to tax liability and the 90-day expiry of his options. Additionally, Mr. Jones will suffer the loss of [redacted] unvested shares to which he would have been entitled had LFL not wrongfully terminated his employment. . . . ¶By our calculations, Mr. Jones will suffer a loss of equity of approximately $[redacted].

(July 12, 2023 Letter p. 8 - Exhibit "B" to RJN [Bates No. 008].)

The other mention of the options is in the demand at the end of the letter, to wit: "Additionally, Mr. Jones would require an extension of the exercise date on his vested LFL stock options from three (3) months to five (5) years." (July 12, 2023 Letter p. 10 - Exhibit "B" to RJN [Bates No. 010].)  Thus, plaintiff's attempt to frame JONES's "threat to sue" that would involve "stock litigation" as a "contractual dispute" is disingenuous.  The manner in which the incentive stock plan is framed by the incentive stock plan (LFL's SIP, SOA) is either as a damage (July 12, 2023 Letter p. 8 - Exhibit "B" to RJN [Bates No. 008]) or as consideration for a release and waiver of claims. (July 12, 2023 Letter p. 10 - Exhibit "B" to RJN [Bates No. 010].)[6]  While the Complaint takes great liberty to re-frame this purported "threat to sue" as a contractual dispute, a false factual contention, it is nevertheless clear that plaintiff's Complaint "arises from" this threat, the only source of which is the July 12, 2023 Letter and the settlement negotiations that followed. (Exhibits "B" and "C" to RJN.)

" ' "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." [Citation.]' " *Feldman v. 1100 Park Lane*

---

[6]    See *Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 19 Cal.App.5th 525, 535 (2018) (prelitigation settlement offer to resolve complaints against the company in return for payment of five years' salary and bonuses and the proceeds of stock plan).

*Associates,* 160 Cal.App.4th 1467, 1478 (2008).  As the Complaint squarely admits, it was due to the alleged JONES's "threat to sue" that purportedly caused plaintiff to request relief under the DJA.  The only "threat to sue" from JONES is contained in the July 12, 2023 Letter. (Exhibit "B" to RJN.)

Hence, plaintiff's one claim under the DJA arises out of JONES's inchoate and potential damages claim arising out of his discrimination/retaliation claims as articulated in JONES's lawyer's July 12, 2023 Letter (Exhibit "B to RJN). A demand letter sent in anticipation of litigation is a legitimate speech or petitioning activity that is protected under California's Code of Civil Procedure section 425.16. *Briggs v. Eden Council for Hope & Opportunity,* 19 Cal.4th 1106, 1115 (1999) ("'communications preparatory to or in anticipation of the bringing of an action or other official proceeding' " are protected by section 425.16); *Malin v. Singer,* 217 Cal.App.4th 1283 (2013) (same). In *Neville v. Chudacoff,* 160 Cal.App.4th 1255 (2008), the California Court of Appeal found that a statement made before the initiation of litigation can be considered to be "in connection with" litigation pursuant to section 425.16(e)(2) "if [the statement] relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." *Id.,* at 1266.  If a prelitigation statement is made "in anticipation of litigation contemplated in good faith and under serious consideration," it is protected. *Id.* at 1269.

**E.     Plaintiff is Actively Using Its Lawsuit to Retaliate Against JONES by Using it as a Cudgel to Forego Lost Stock Plan Benefits as a Damages Claim Arising From His Employment Claims**

In furtherance of the evidence of plaintiff's bad faith framing of the case in controversy between it and JONES, the caption of this very proceeding was used by plaintiff's counsel to draft a RELEASE AND COVENANT NOT TO SUE sent to JONES last month which states, in relevant part: "In consideration of Light Field Lab's agreement to dismiss its declaratory judgment complaint, case number 4:23-cv-05344-YGR filed in the Northern District of California, Alan Jones ("Jones") agrees on behalf of himself and his successors, assigns, and anyone else who may claim on his behalf as follows: . . . fully releases and discharges ***any claim for damages*** *arising under the Plan.* Jones expressly releases any damages based in any way on the Plan as compensation in connection with his Employment Claims." (RELEASE AND COVENANT NOT TO SUE – Exhibit "F" to RJN [Bates Nos. 058-061] (emphasis added).)  The very strong inference can be drawn from this document that plaintiff sought to use its Complaint under the DJA as leverage in the anticipated "defamation/false light, disability discrimination

and retaliation" claims outlined in the July 12, 2023 Letter to obtain a tactical advantage over JONES.

The Supreme Court of the United States has held that Title VII's anti-retaliation provision contemplates recovery for post-termination retaliatory acts that "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 64 (2006). Conditioning a dismissal of a sham lawsuit on a waiver of stock options as a damage under both federal and state anti-discrimination law is retaliatory under Title VII. *Roe v. McKee Management Associates, Inc.,* 2017 WL 690538 at * 1 (E.D. Penn. February 21, 2017) (Title VII retaliation claims based on post-termination conduct including contesting unemployment benefits, actionable.) Moreover, the Central District of California has ruled that similar conduct that plaintiff has engaged in here is retaliatory under both Title VII and California's Fair Employment and Housing Act ("FEHA") as held in *Taylor v. JP Morgan Chase,* 2011 WL 13175902 at *14 (C.D. Cal. February 24, 2011) ("Because Chase admittedly enforced the conditioning of severance benefits and post-employment vesting of stock options in response to plaintiff's protected activity, its actions constitute impermissible retaliation" and is actionable under *Burlington, supra*.)

This conduct includes plaintiff's sham lawsuit itself as well as conduct related thereto as recently as this week, describing JONES's employment-related claims as "conspiracy theories." (Dkt. #29, p. 9:1 of 19.) See *Greengrass v. Int'l Monetary Sys., Ltd.,* 776 F.3d 481, 485 (7th Cir. 2015) ("[L]isting [Plaintiff's] name in publicly available SEC filings (and referring to her complaint as 'meritless') constituted a materially adverse employment action. . . . [N]aming EEOC claimants in publicly available SEC filings could 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination' – the essence of a materially adverse employment action (quoting *Burlington, supra,* 548 U.S. at 68.)

Any claim by the plaintiff that filing a peremptory lawsuit in response to a demand letter is itself protected by California's litigation privilege has been rejected as it relates to Title VII retaliation claims. A state litigation privilege may not bar federal retaliation claims made pursuant to Title VII and the ADA. *Pardi v. Kaiser Foundation Hospitals,* 389 F.3d 840, 851 (9th Cir. 2004) (quoting *Steffes v. Stepan Co.,* 144 F.3d 1070, 1074 (7th Cir.1998), to wit: "[A] state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action.") Furthermore,

exceptions to the litigation privilege have been recognized under state statutes that (1) are "more specific" than the privilege, and (2) would be "significantly or wholly inoperable" if the privilege applied. *Komarova v. National Credit Acceptance, Inc.,* 175 Cal.App.4th 324, 339 (2009) (quoting *Action Apartment Assn., Inc. v. City of Santa Monica,* 41 Cal.4th 1232, 1241 (2007).)

**F.    Plaintiff Cannot Prevail in Its Declaratory Judgment Act Complaint**

If the trial court determines that the moving party has carried its burden, it considers the second component — whether the party bringing the suit has established that there is a probability it will prevail on its claim. Section 425.16, subd. (b)(1); *DuPont Merck Pharmaceutical Co. v. Superior Court*, 78 Cal.App.4th 562, 567-568 (2000).  The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. *Wilcox v. Superior Court,* 27 Cal.App.4th 809, 819 (1994).  On the second issue, the plaintiff has the burden to demonstrate a probability of prevailing on the merits by showing that his claims have " 'at least "minimal merit." ' " *Bonni v. St. Joseph Health System,* 11 Cal.5th 995, 1009 (2021).

" '[A]n anti-SLAPP motion may lie against a complaint for declaratory relief [citation]... .' [Citation.] Moreover, 'the mere existence of a controversy is insufficient to overcome an anti-SLAPP motion against a claim for declaratory relief. [¶] To defeat an anti-SLAPP motion, the plaintiff must also make a prima facie evidentiary showing to sustain a judgment in the plaintiff's favor. [Citation.] In other words, for a declaratory relief action to survive an anti-SLAPP motion, the plaintiff must introduce substantial evidence that would support a judgment of relief made in the plaintiff's favor.' [Citations.]" *Mission Springs Water Dist. v. Verjil*, 218 Cal.App.4th 892, 909 (2013).

The plaintiff need not prove the challenged claims. "Rather, the court considers whether the plaintiff has made a *prima facie* showing of facts based on competent admissible evidence that would, if proved, support a judgment in the plaintiff's favor." *Mann v. Quality Old Time Service, Inc.*, 120 Cal.App.4th 90, 105 (2004).  A plaintiff need only establish the challenged cause of action has "minimal merit." *Navellier v. Sletten*, *supra,* 29 Cal.4th at 94.

As set forth below, defendant is immune from suit under California's absolute privilege found in Civil Code section 47, subdivision (b).  Plaintiff is also barred by the *Noerr-Pennington* doctrine and cannot prove up a case in controversy without relying on the settlement negotiations (Exhibits "B"

through "C") that gave rise to the gravamen of its Complaint which are precluded under Federal Rule of Evidence 408.

In addition, plaintiff has not alleged any of the requisite elements to establish a "case of actual controversy" justiciable under Article III of the U.S. Constitution. Under Article III's standing requirement, a plaintiff seeking injunctive relief bears the burden of showing "that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Institute,* 129 S.Ct. 1142, 1149 (2009). When evaluating whether standing is present, courts look to the facts as they exist when the complaint was filed. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 570 n.4, 112 S.Ct. 2130, 2141 n.4 (1992) (standing); *American Civil Liberties Union of Nevada v. Lomax,* 471 F.3d 1010, 1015 (9th Cir. 2006) (standing requirements); *Clark v. City of Lakewood,* 259 F.3d 996, 1008–09 (9th Cir. 2001). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 153 (2010).

Plaintiff has not alleged, and has no basis to allege, a concrete harm necessary to invoke the Declaratory Judgment Act.  Nor can plaintiff cure this failure because nothing about defendant's protected conduct, when accurately characterized, would give rise to a case of actual controversy sufficient for this Court to exercise jurisdiction under the Declaratory Judgment Act (28 U.S.C. § 2201). Nor is what plaintiff claims to be a case in controversy ripe for review.

### 1.    Defendant's Conduct Giving Rise to Plaintiff's Claim of "a Case or Controversy" is Absolutely Privileged

California's litigation privilege is recognized in California Civil Code § 47(b). The purpose of the privilege is "to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson,* 50 Cal.3d 205, 213 (1990).  The key inquiry is "whether the injury allegedly resulted from an act that was communicative in its essential nature." *Rusheen v. Cohen,* 37 Cal.4th 1048, 1058 (2006); *Blanchard v. DIRECTV, Inc.,* 123 Cal.App.4th 903, 912 (2004) ("DIRECTV's demand letters were absolutely protected by the litigation privilege (Civ.Code, § 47, subd. (b)) because the letters were sent in good faith, serious contemplation of litigation"); *Malin v. Singer, supra,* 217 Cal.App.4th at 1294 ("Under the second step of the statutory

analysis, we conclude Singer's demand letter is protected by the litigation privilege (Civ.Code, § 47, subd. (b)), which precludes Malin from prevailing on his claim for extortion").

The privilege is absolute and renders both statements and omissions immune from liability. *Silberg, supra,* 50 Cal.3d at 213-214; *Pollock v. Superior Court*, 229 Cal.App.3d 26, 28 (1991). Indeed, "the only exception to [the] application of section 47(2) [now section 47(b)] to tort suits has been for malicious prosecution actions." *Rubin v. Green,* 4 Cal.4th 1187, 1194-1195 (1993). California courts have given "judicial proceeding" an expansive definition and have found that settlement negotiations fit within the litigation privilege. See, e.g., *Torres v. Unum Life Ins. Co. of Am.,* No. C 08–1940 MHP, 2009 WL 69358, at *12 (N.D. Cal. Jan. 9, 2009) (citing *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal.App. 4th 17, 23 (2002)).

The Northern District of California has dismissed a declaratory relief claim as barred by the litigation privilege. See *Powell v. Wells Fargo Home Mortgage,* 2015 WL 4719660, at *7 (N.D. Cal. August 7, 2015); *Natividad v. Wells Fargo Bank, N.A.,* 2013 WL 2299601, at *17 (N.D.Cal. May 24, 2013) (dismissing declaratory relief claim where the allegations against the trustee related to claims failing under California's litigation privilege), overruled on different grounds in *Obduskey v. McCarthy & Holthus LLP,* 586 U.S. ___, 139 S.Ct. 1029, 203 L.Ed.2d 390 (2019).  However, California's Second Appellate District, Division 5, held that because a complaint for declaratory relief did not seek to hold defendants liable for a tort based on the Consumer Legal Remedies Act Notice or any other prelawsuit communication and only sought a declaration regarding "the accuracy and legality" of plaintiff's advertising, the litigation privilege did not apply. See *Lunada Biomedical v. Nunez,* 230 Cal.App.4th 459, 479 (2014).

Here, the gravamen of plaintiff's DJA claim is, in effect, seeking to declare that JONES cannot claim stock options as a form of damages from his state tort claims under the guise of a "contract dispute" when his pre-litigation demand letter never sought any relief from plaintiff's incentive stock plan sounding in contract.  In short, plaintiff seeks to have this court decide the type of damages JONES may or may not recover under his inchoate employment discrimination and tort claims unlike the unrelated case in controversy set forth in *Lunada*.  "Any doubt as to whether the privilege applies is resolved in favor of applying it. [Citations.]" *Adams v. Superior Court,* 2 Cal.App.4th 521, 529 (1992).

### 2.      Plaintiff's Sham Pleading Violates the *Noerr-Pennington* Doctrine

In the Ninth Circuit, the *Noerr-Pennington* doctrine provides immunity from both federal and state statutory and common-law liability. *Theme Promotions, Inc. v. News Am. Mktg. FSI,* 546 F.3d 991, 1008 (9th Cir. 2008) (finding immunity from liability under California common law). *Noerr-Pennington* ostensibly protects a pre-suit demand letter. See *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929 (9th Cir. 2006). "[C]onduct incidental to a petition is protected by *Noerr-Pennington* if the petition itself is protected." *Theofel v. Farey-Jones,* 359 F.3d 1066, 1078 (9th Cir. 2004)). The doctrine bars claims based upon decisions to accept or reject a settlement. *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.,* 944 F.2d 1525, 1528 (9th Cir. 1991) ("A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit"), aff'd, 508 U.S. 49 (1993).

While this district has held that the *Noerr-Pennington* doctrine does not apply to claims brought under the DJA (*Cisco Systems, Inc. v. Beccela's Etc., LLC* (N.D. Cal. 2019) 403 F.Supp.3d 813), this authority is distinguishable given that in *Cisco*, the defendants' counter-claim under the DJA did not seek remedies (be it damages or otherwise) from Cisco and because Cisco had already filed its complaint such that the defendants' declaratory judgment claim did not burden Cisco's petitioning rights—Cisco has already exercised those rights by its suit, the contrary situation is present here. *Cisco*, at 824-825.

Here, plaintiff's sham pleadings were designed not only to forum shop[7], but to gang press JONES in pursuing his employment discrimination/retaliation and tort claims as a cross-complaint in this action, compulsory[8] or otherwise.  It is the very nature of plaintiff's sham DJA claim to seek an advisory opinion that his claims for lost benefits under its incentive stock plan is not recoverable as damages in his employment discrimination/retaliation and tort claims he has yet to act upon other than to make a pre-

---

[7]      "The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Gov't Emps. Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir. 1998).

[8]      Were this Court to determine plaintiff's tactics are sound, then JONES's employment-related claims would meet the "logical relationship test" applied to Rule 13 of the Federal of Rules of Civil Procedure compelling him to file a compulsory cross-claim. See *Pochiro v. Prudential Ins. Co. of Amer.,* 827 F.2d 1246. 1249 (9th Cir.1987). Plaintiff would then have succeeded in abusing process by exploiting California's "primary rights doctrine" recognized by the Ninth Circuit which prohibits a party from splitting causes of action involving the same primary right (damages for lost stock options) simply because plaintiff falsely claimed that JONES's "threat to sue" sounded in contract. See *Brodheim v. Cry,* 584 F.3d 1262, 1268 (9th Cir. 2009) (applying *Mycogen Corp. v. Monsanto Co.,* 28 Cal.4th 888, 904 (2002).)

litigation demand and exhaust an administrative remedy (see Exhibits "A" and "H" to RJN). *Noerr–Pennington* protection applies to citizens' use of the courts. See *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56–57 (1993).

Plaintiff's purported "contract dispute" has no meaning in a vacuum and without the extensive settlement negotiations (Exhibits "B" and "C" to RJN) to frame them in reality, there is simply no basis for the Complaint. "[C]ommunications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington* doctrine, so long as they are sufficiently related to petitioning activity." *Sosa,* 437 F.3d at 935, 942 (applying *Noerr-Pennington* doctrine to "a prelitigation demand to settle legal claims"). The *Noerr-Pennington* doctrine bars claims based upon decisions to accept or reject a settlement or settlement demands. See *Freeman v. Lasky, Haas & Cohler,* 410 F.3d 1180, 1184-85 (9th Cir. 2005); *Sosa,* 437 F.3d at 942; *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc., supra,* 944 F.2d at 1528 ("A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit"), aff'd, 508 U.S. 49 (1993).

Plaintiff's DJA claim, one not rooted in any federal case in controversy and designed to chill JONES's pre-litigation communications, to forum shop and to preview its defenses to JONES's employment-related inchoate claims is precisely what the *Noerr-Pennington* doctrine is designed to protect. *Noerr–Pennington* is a merits defense to liability, premised on an implied limitation as to the reach of the applicable law. See *Sosa,* 437 F.3d at 931; *Nunag-Tanedo v. East Baton Rouge Parish School Bd., supra,* 711 F.3d at 1139. *Noerr–Pennington* applies equally to federal and state claims. *Kottle v. Nw. Kidney Ctrs.,* 146 F.3d 1056, 1059 (9th Cir.1998).

In the Ninth Circuit, "the *Noerr–Pennington* doctrine is a rule of construction. So the result of its application is simply to circumscribe the reach of the cause of action, thereby determining whether there is liability. Given that function, the *Noerr–Pennington* doctrine is an interpretive doctrine that merges into the merits of the liability determination." *Nunag-Taned, supra,* 711 F.3d at 1139. If all facts necessary to an affirmative defense are clearly alleged on the face of the complaint and/or "matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," (*Daniels–Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010)) the defense may be raised by a motion to dismiss. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*

*PLC,* 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp.,* 623 F.2d 117, 119 (9th Cir. 1980)).  Furthermore, the Ninth Circuit has held that "a plaintiff's complaint [must] contain specific allegations demonstrating that the *Noerr–Pennington* protections do not apply." *Boone v. Redevelopment Agency of City of San Jose,* 841 F.2d 886, 894 (9th Cir. 1988) (affirming dismissal of claims pursuant to *Noerr-Pennington* where plaintiff failed to allege facts to support sham exception and claims were otherwise barred by doctrine); see also *Empress LLC v. City & Cty. of San Francisco,* 419 F.3d 1052, 1057 (9th Cir. 2005) (affirming dismissal under 12(b)(6) where plaintiffs failed to allege facts to establish sham exception and avoid *Noerr-Pennington* bar).  Should this Court apply the *Noerr–Pennington* doctrine to the DJA claim, there is no diversity jurisdiction claim left to adjudicate preventing plaintiff from prevailing on the merits.

**3.**     **Plaintiff Cannot Prove "a Case or Controversy" Without Relying on Inadmissible Evidence**

"An assessment of the probability of prevailing on the claim looks to trial, and the evidence that will be presented at that time. [Citation.] Such evidence must be admissible. [Citation.] As the court in *Wilcox [v. Superior Court* (1994) 27 Cal.App.4th 809, 830, 33 Cal.Rptr.2d 446, disapproved on other grounds in *Equilon [Enterprises v. Consumer Cause, Inc.,]* 29 Cal.4th [53,] 68, fn. 5 [(2002)] explained, the plaintiff's burden of establishing 'facts to sustain a favorable decision if the evidence submitted ... is credited' [citation] implies a requirement of admissibility, because 'otherwise there would be nothing for the trier of fact to credit.' [Citation.] At trial, 'the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter.' [Citation.] An averment on information and belief is inadmissible at trial, and thus cannot show a probability of prevailing on the claim." (*Evans v. Unkow,* 38 Cal.App.4th 1490, 1497–1498 (1995).)

The admissible evidence standard for anti-SLAPP is applied in federal court. See *Robinson v. Alameda County,* 875 F. Supp. 2d 1029, 1047 (N.D. Cal. 2012);  *Browne v. McCain,* 611 F.Supp.2d 1062, 1067-1068 (C.D. Cal. 2009). Federal Rule of Evidence 408 prohibits the introduction of settlement evidence when offered to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement. Fed. R. Evid. 408. The Court may admit evidence of settlement negotiations for other purposes, however. *Id.*

It is inconceivable that plaintiff can introduce anything other than settlement negotiations between its counsel and JONES's counsel (Exhibits "B" through "C" to RJN) that would provide an exception to prove the gravamen of their so-called declaratory relief claim as a case in controversy: "Jones asserts an entitlement to exercise both his vested and unvested stock options after the three-month exercise period set forth in the Plan Documents." In other words, there is no evidence that JONES ever articulated a contractual right to shares that were not already vested except for the context of attempting to obtain consideration for settlement purposes to avoid litigation over his employment discrimination/retaliation and tort claims found in the settlement negotitions between JONES's counsel and plaintiff's counsel (Exhibits "B" through "C" to RJN.)  Accordingly, plaintiff will not be able to show "minimal merit" in proving a probability of success on the merits under *Wilcox* and *Evans, supra.*

### 4.    Plaintiff Cannot Establish "a Case or Controversy" for Purposes of the Declaratory Judgment Act

The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "To fall within the Act's ambit, the 'case of actual controversy' must be 'definite and concrete, touching the legal relations of parties having adverse legal interests,' . . . 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *MedImmune, Inc. v. Genentech, Inc., supra,* 549 U.S. at 127 (*Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41 (1937)).

Put simply, plaintiff's sham pleading has not articulated an actionable case in controversy under the DJA. See *Aspen American Insurance Co. v. TM Yachting Charter LLC,* 2019 WL 13063503 at *8 (S.D. Fla. January 23, 2019) ("Any potential 'dispute' between the parties is simply too nascent and inchoate to justify the Court's declaration of the rights of the parties at this juncture" relating to a possible insurance policy and coverage dispute); *Shuffle Tech International, LLC v. Scientific Games Corporation,* 2015 WL 5934834 at *8 (N.D. Ill. October 12, 2015) ("this sort of inchoate 'adverse legal interest' is too speculative to give rise to an actual controversy within the meaning of the Declaratory Judgment Act. The Court therefore dismisses Count 1 for lack of jurisdiction" concerning possible

invalidity, unenforceability or misuse of two patents); *Erie Insurance Property and Casualty Co. v. Moore,* 2021 WL 3282133 at *1 and 7 (W.D. Kentucky, July 30, 2021) (insurer sought "an opinion advising what the law would be upon a hypothetical state of facts," which the court declined under the DJA – "The case is simply too inchoate and contingent for this Court's interpretation of the Moore policies to meaningfully clarify the legal rights and obligations of any among the lengthy cast of characters who continue to litigate in other forums"). Plaintiff has not and cannot state a case in controversy over the uncertain and inchoate "threat to sue" that it has misconstrued in its Complaint.

### a.    Plaintiff Fails to Allege a Cause of Action Under Federal Law

Because plaintiff falsely asserts that the "threat to sue" by JONES related to interpretation or enforcement of the contractual incentive stock plan when instead the "actual threat to sue" involved the benefits of that incentive stock plan as a claim of damages based on the torts of discrimination/retaliation claims as articulated in JONES's lawyer's July 12, 2023 Letter (Exhibit "B" to RJN), the claimed "case in controversy" is not what plaintiff states it is. It is instead an attempt to ask this court for an advisory opinion it might use to block a form of damages arising from state discrimination/retaliation claims which is not a valid purpose of the DJA. See *Golden v. Zwickler,* 394 U.S. 103, 959 (1969) ("Federal courts . . . do not render advisory opinions.); *Shell Oil Co. v. Frusetta,* 290 F.2d 689, 692 (9th Cir. 1961) ("It is not the purpose of the Declaratory Judgment Act to encourage a race to the courthouse for the purpose of transferring litigation to the federal courts from the state courts. . . . It is not the purpose of the Declaratory Judgment Act to allow disputes arising in the course of state court litigation to be argued in the federal courts instead."); *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 815 (Fed. Cir. 1996), *overruled in part on other grounds by MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) (where "the declaratory judgment complaint [were] a tactical measure filed in order to improve [a party's] posture in the ongoing negotiations – [it is] not a purpose that the Declaratory Judgment Act was designed to serve."); *Black Swan Management and Consulting v. Malbec Investments, LLC,* 2019 WL 12294307 (M.D. Fla. March 29, 2019) ("Black Swan's declaratory claim is merely a claim for equitable lien masquerading as a claim for declaratory relief, in that it requests that the Court impose a first-priority equitable lien in favor of Black Swan. That is not the purpose of a declaratory judgment."); *UNC Resources, Inc. v. Benally,* 514 F.Supp. 358 D. NM 1981) (it is not a purpose of declaratory

judgment acts to enable prospective negligence action defendant to obtain declaration of nonliability); *Allstate Ins. Co. v. Philip Leasing Co.,* 214 F.Supp. 273, 275 (D. S.D. 1963) (where all that a declaration would accomplish would be the testing of the validity of a defense asserted is not the purpose of the Declaratory Judgment Act).

"[I]n determining whether jurisdiction over a nonfederal claim exists, *the **context** in which the nonfederal claim is **asserted** is **crucial***." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 375-376 (1978) ([emphasis added.) "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995); *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942); *Sears Roebuck & Co. v. American Mutual Liability Ins. Co.,* 372 F.2d 435 (7th Cir. 1967) (Discretion must be exercised for a reason related to the purposes of the Act; it must relate to the clarification of legal issues and the settlement of controversies or to some overriding policy consideration such as abstention in state matters, inconvenience to parties, or improper use of the declaratory judgment action.)

### b.    Plaintiff Has Not Suffered an Actual Loss, Damage or Injury, or Is Threatened with Impairment of its Own Interests

The Declaratory Judgment Act requires a showing that plaintiff has suffered actual loss, damage or injury, or is threatened with impairment of his or her own interests. This tends to assure that plaintiff has a sufficient stake in the outcome of the suit to make it a real "case or controversy." *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100 (1979); *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 506 (9th Cir.1988). The "injury in fact" requirement must involve "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife, supra*, 504 U.S. at 559–560; *DaimlerChrysler Corp. v. Cuno*, __ U.S. __, 126 S.Ct. 1854, 1862 (2006).

Here, plaintiff has identified the following "harm" to its interests: (1) it "will face legal uncertainty and the risk of financial harm" and "needs the security in knowing that it has no obligation to Jones and will not continue to receive further demands and threats from him" and (2) securing investment capital when "threatened litigation" is present is "made more difficult when stock litigation is pending." (Complaint, p. 6, ¶30 – Exhibit "A" to RJN.) Plaintiff's interest in the litigation must

consist of obtaining compensation for, or preventing, the violation of a legally protected right. An interest unrelated to injury in fact does not give plaintiff standing to sue. *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 772 (2000).

Plaintiff's alleged harm is part of its sham pleading given that JONES has not made the contractual claim plaintiff avers he did, there was no "pending" "stock litigation" when the Complaint was filed as alleged and any harm securing investment capital has been self-inflicted due to plaintiff's ill-conceived lawsuit. Should plaintiff exercise candor with this Court and present the case-in-controversy in an honest manner by asking for an advisory opinion about whether the loss in value of stock options as a damage is recoverable in an employment discrimination/retaliation suit, it still would not be able to state an actual injury since no such litigation is pending. Cases already exist where stock options are claimed as damages (see *supra*) which establishes there is no controversy here other than one plaintiff sought to create. The Complaint does not state an "injury in fact" sufficient to state a claim under the Declaratory Judgment Act. (28 U.S.C. § 2201.)

### i.     Defendant Cannot Allege an Injury "Traceable" to Defendant's Acts or Omissions to Establish a Case or Controversy

In addition to an "injury in fact," there must be a causal connection between plaintiff's injury and the conduct complained of, *i.e.,* the injury must be "traceable" to defendant's acts or omissions. *Lujan v. Defenders of Wildlife*, *supra,* 504 U.S. at 559-560; *Allen v. Wright* , 468 U.S. 737, 757 (1984). Thus, the DJA claim fails because plaintiff has failed to allege that defendant has engaged in acts or omissions giving rise to an "injury in fact."

The party seeking declaratory relief must show an explicit threat of litigation or other action creating a reasonable apprehension that he or she will be subjected to liability. *Intellectual Property Develop., Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333, 1340 (DC Cir. 2001); *Paramount Pictures Corp. v. Replay TV,* 298 F.Supp.2d 921, 924 (CD Cal. 2004). Pre-litigation settlement negotiations over inchoate employment discrimination/retaliation and tort claims do not equate with a "contract dispute" as plaintiff has framed the case in controversy.

### ii.     Defendant Cannot Allege a Substantial Likelihood for Redress to Establish a Case or Controversy

There must be a substantial likelihood that the relief sought, if granted, will redress the injury.

*Lujan v. Defenders of Wildlife, supra,* 504 U.S. at 559-560; *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).  The relief must redress the "injury in fact" suffered by plaintiff.  Psychic satisfaction is not enough for Article III standing. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107, 118 (1998).  Here, the only redress plaintiff hopes to gain by this ill-conceived lawsuit is to forum shop for an advisory opinion about whether the loss in value of stock options as a damage is recoverable in an employment discrimination/retaliation suit.  Consequently, defendant respectfully submits that plaintiff cannot allege a substantial likelihood of obtaining redress to establish a "case or controversy" for purposes of the Declaratory Judgment Act.

> **c.      Plaintiff Cannot Prove Its Claimed "Contract Dispute" is Ripe for Review Under the Declaratory Judgment Act**

The Ninth Circuit has held that the appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard, namely, "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. (Citation)." *Principal Life Ins. Co. v. Robinson,* 394 F.3d 665, 671 (9th Cir. 2005).

The Supreme Court has consistently held that the ripeness doctrine aims "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prod. Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). Plaintiff's one claim under the DJA framed in its Complaint is not ripe for review for the simple reason is that there are no facts that support it: JONES has never made a contract claim under the stock incentive plan plaintiff has placed at issue in its Complaint.

<b><u>CONCLUSION</u></b>

For the reasons set forth herein, JONES submits that the gravamen of plaintiff's Complaint arises out of his petitioning conduct and plaintiff will not be able to show a probability of prevailing on the merits.  JONES will seek an award of attorneys' fees pursuant to Code of Civil Procedure section 425.16, subdivision (c), should he be found the prevailing party on this motion.

Dated: January 5, 2024                          Respectfully submitted,


                                                /s/ Frank S. Moore
                                                Frank S. Moore
                                                Attorney for defendant Alan Jones

## CERTIFICATE OF SERVICE

This is to certify that on the 5th day of January 2024, I electronically filed the foregoing DEFENDANT ALAN JONES' NOTICE OF SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT using the Court's CM/ECF filing system which sends notification of such filing to all parties and/or counsel of record.

Patricia L. Peden (SBN 206440)
E-mail: ppeden@bwslaw.com
Ghazaleh Modarresi (SBN 259662)
E-mail: gmodarresi@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1999 Harrison Street, Suite 1650
Oakland, California 94612-3520

Counsel for plaintiff LIGHT FIELD LAB

Dated: January 5, 2024                    Law Offices of Frank S. Moore


                                          /s/Frank S. Moore
                                          Frank S. Moore
                                          Attorney for defendant Alan Jones