Patricia L. Peden (SBN 206440)
E-mail: ppeden@bwslaw.com
Ghazaleh Modarresi (SBN 259662)
E-mail: gmodarresi@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1999 Harrison Street, Suite 1650
Oakland, California 94612-3520
Tel: 510.273.8780 Fax: 510.839.9104

Attorneys for Light Field Lab

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

Light Field Lab,

Plaintiff,

v.

Alan Jones,

Defendant.

Case No. 4:23-cv-05344-YGR

**PLAINTIFF LIGHT FIELD LAB'S OPPOSITION TO ALAN JONES'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

## TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTS ..... 2

A. Procedural Posture ..... 2

B. Relevant Facts ..... 3

III. LEGAL ARGUMENT ..... 4

A. Jones's Second Bite at a Motion to Dismiss Should be Denied In Its Entirety ..... 4

B. Jones's Second Rule 12(b)(1) Challenge Should be Denied ..... 5

C. Jones's Second Rule 12(b)(6) Challenge Should Also be Denied ..... 6

1. Plaintiff's Declaratory Judgment Claim Does Not Violate the *Noerr-Pennington* Doctrine ..... 6

2. California Civil Code § 47(b) is Inapplicable to Plaintiff's Declaratory Judgment Claim Because California's Choice of Law Rules Select Delaware Law ..... 8

(a) Delaware's Common Law Rule of Absolute Privilege is Inapplicable to Plaintiff's Request for Declaratory Judgment Relief ..... 10

(b) California's Litigation Privilege Does not Apply for Additional Reasons ..... 11

(c) Rule 408 is Inapplicable to a Motion to Dismiss, and Has Not Been Violated by Plaintiff, and Has Been Waived by Jones ..... 12

3. Jones's Employment Grievances Are Irrelevant To the Above-Captioned Case ..... 13

(a) Jones's Planned Employment Action Will Not Resolve His Right to Stock Options ..... 13

(b) The Disputed Stock Options Must Be Resolved in This Case ..... 14

4. Plaintiff's Complaint Includes All Elements Required to State a Claim ..... 15

5. Light Field Lab, as a Party to the Contract, Has Standing ..... 16

6. The Declaratory Judgment Act's Requirements are Satisfied ..... 16

7. The Parties' Dispute is Ripe ..... 19

8. Plaintiff's Complaint is not a Sham Pleading, nor is Plaintiff seeking an "Advisory Opinion" ....................19

D. Leave to Amend ....................20

IV. CONCLUSION ....................21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*3500 Sepulveda, LLC v. Macy's W. Stores, Inc.*,
980 F.3d 1317 (9th Cir. 2020) ..... 11

*ABM Indus., Inc. v. Zurich Am. Ins. Co*.,
237 F.R.D. 225 (N.D. Cal. 2006) ..... 12

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
300 U.S. 227 (1937) ..... 18

*AGC Networks, Inc. v. Relevante, Inc.*,
C.A. No. 14-308-LPS, 2015 WL 1517419 (D. Del. Mar. 31, 2015) ..... 11

*Allstate Ins. Co. v. Davis*,
430 F.Supp.2d 1112 (D. Haw. 2006) ..... 17

*Archer v. Kelly*,
271 F.Supp.2d 1320 (N.D. Okla. 2003) ..... 12

*Atencio v. TuneCore, Inc.*,
2016 WL 11518598 (C.D. Cal. Sept. 29, 2016) ..... 14

*Bitter v. Windsor Sec., LLC*,
2014 WL 1411219 (N.D. Cal. Apr. 11, 2014) ..... 17

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp*.,
622 F.3d 996 (9th Cir. 2010) ..... 8

*Brillhart v. Excess Ins. Co*.,
316 U.S. 491 (1942) ..... 17

*Cisco Sys., Inc. v. Beccela's Etc., LLC*,
403 F.Supp.3d 813 ..... 7, 8

*Clear Channel Outdoor, Inc. v. Bently Holdings California LP*,
No. C-11-2573 EMC, 2011 WL 6099394 (N.D. Cal. Dec. 7, 2011) ..... 15, 16, 19

*Copiers Typewriters Calculators, Inc. v. Toshiba Corp*.,
576 F. Supp. 312 (D. Md. 1983) ..... 16

*E. & J. Gallo Winery v. Andina Licores S.A*.,
No. CV F 05-0101 AWI LJO, 2006 WL 1817097 (E.D. Cal. June 30, 2006) ..... 11, 12

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ..... 20

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .......... 20

*Eisenberg v. University of New Mexico*,
936 F.2d 1131 (10th Cir. 1991) .......... 13

*Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*,
525 F. Supp. 3d 1145 (S.D. Cal. 2021) .......... 12

*Gov't Employees Ins. Co v. Dizol*,
133 F.3d 1220 (9th Cir. 1998) (*en banc*) .......... 18

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*.
896 F2d 1542 (9th Cir. 1989) .......... 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .......... 9

*Hourigan v. Redgrave LLP*,
2022 WL 17082374 .......... 6

*Int'l Bus. Machines Corp. v. Bajorek*,
191 F.3d 1033 (9th Cir. 1999) .......... 14

*IQVIA Inc. v. MedImpact Healthcare Sys., Inc*.,
No. 21-CV-2081-GPC-DEB, 2022 WL 6258369 (S.D. Cal. Oct. 7, 2022) .......... 10

*Kaul v. Mentor Graphics Corp.*,
No. 16-CV-02496-BLF, 2016 WL 6249024 (N.D. Cal. Oct. 26, 2016) .......... 9

*Molde-Duque v. HH Riverside Prop. LLC*,
2021 WL 2791612 (C.D. Cal. Apr. 2, 2021) .......... 18

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
210 F.3d 1112 (9th Cir. 2000) .......... 5

*Preiser v. Newkirk*,
422 U.S. 395 (1972) .......... 20

*Public Serv. Comm'n of Utah v. Wycoff Co.*,
344 U.S. 237 (1952) .......... 20

*Rojas v. Bosch Solar Energy Corp*.,
443 F. Supp. 3d 1060 (N.D. Cal. 2020) .......... 8, 9

*Schnieder v. Chertoff*,
450 F.3d 944 (9th Cir. 2006) .......... 20

*Skelly Oil v. Phillips Petroleum*,
339 U.S. 667 (1950) .......... 6

*Smith v. Cutler*,
504 F. Supp. 2d 1162 (D.N.M. 2007) .... 13

*Sony Electronics, Inc. v. Guardian Media Techs., Ltd.*,
497 F3d 1271 (Fed. Cir. 2007) .... 17

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) .... 6

*Staacke v. United States Secretary of Labor*,
841 F.2d 278 (9th Cir.1988) .... 5

*State Farm Mutual Automobile Insurance Company v. Delaware Diagnostic & Rehabilitation Center, P.A.*
2021 WL 1929365 (D. Del. May 13, 2021) .... 10

*In re Verisign, Inc., Derivative Litig.*,
531 F. Supp. 2d 1173 (N.D. Cal. 2007) .... 10

*Walter v. Adaptive Insights, Inc.*,
2019 WL 13201941 (N.D. Cal. May 23, 2019) .... 14

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) .... 5

**State Cases**

*Barker v. Huang*,
610 A.2d 1341 (Del. 1992) .... 10, 11

*Department of Industrial Relations v. UI Video Stores, Inc.*
(1997) 55 Cal.App.4th 1084 .... 14

*Feenix Payment Sys. LLC v. Blum*,
2022 WL 215026 (Del. Super. 2022) .... 11

*NACCO Indus., Inc. v. Applica Inc.*,
997 A.2d 1 (Del. Ch. 2009) .... 11

*Nedlloyd Lines B.V. v. Superior Court*,
3 Cal. 4th 459 (1992) .... 8, 9

*Rubin v. Green*,
4 Cal.4th 1187 (1993) .... 8

*Washington Mut. Bank, FA v. Superior Ct.*,
24 Cal. 4th 906 (2001) .... 8

*Wentland v. Wass*,
126 Cal.App 4th 1484 (2005) .... 12

**Federal Statutes**

28 U.S.C.
§ 1331 .......... 5
§ 1332(a) .......... 5

Declaratory Judgment Act, 28 U.S.C. § 2201(a) .......... *passim*

**State Statutes**

California Civil Code § 47(b) .......... 1, 8

Declaratory Judgment Act .......... 7

Lab. Code, § 200, subd. (a) .......... 14

**Other Authorities**

Fed. R. Civ. P.
Rule 12(b)(1) .......... 1, 2, 4, 5
Rule 12(b)(6) .......... 1, 2, 4
Rule 12(b)(6) .......... 3, 5, 6

Federal Rule of Evidence 408 .......... 1, 12, 13

Local Rule 12(b)(1) .......... 1, 3

Local Rule 12(b)(6) .......... 15

Local Rule 7-3(a)-(d) .......... 4

U.S. Const. art. III, § 2 .......... 5

## I. INTRODUCTION

This case arises out of the parties' disagreement about the scope of their rights under a private contract—Light Field Lab's 2017 Stock Incentive Plan (the "Plan"). Before Plaintiff Light Field Lab ("Plaintiff" or "Light Field Lab") filed this lawsuit, Alan Jones ("Jones") engaged counsel to threaten suit and attempted to recover stock options or their value arising from the Plan. The parties attempted to resolve their contract-related disputes in pre-filing negotiations but were unsuccessful. Thereafter, Light Field Lab filed suit seeking a judicial declaration that Jones has no post-termination rights under the Plan. The complaint pleads one cause of action sounding in contract.

On December 18, 2023, Jones filed a motion to dismiss pursuant to among other Federal Rules of Civil Procedure, Rules 12(b)(1) and 12(b)(6), which has been fully briefed. After reviewing Plaintiff's arguments, on January 5, 2024, Jones filed a second motion to dismiss again under Rules 12(b)(1) and 12(b)(6) – essentially taking another bite at the apple.

Jones's second motion to dismiss must be denied in its entirety. Allowing a litigant to reformat and refile a motion after reading their opponent's opposition papers is contrary to the Rules of Civil Procedure and the Local Rules, a waste of judicial resources, and sanctionable conduct. Jones has filed a frivolous second motion to dismiss, which serves only to unnecessarily multiply the proceedings given that a motion to dismiss was already filed, fully briefed, and set for hearing.

Jones's second motion to dismiss must also be denied on the merits as it makes a whole host of frivolous arguments. None of the *Noerr-Pennington* doctrine, California Civil Code § 47(b), Delaware's common law rule of absolute privilege, and Federal Rule of Evidence 408 are applicable to Plaintiff's declaratory judgment claim. Further, Plaintiff's complaint is not a "sham" pleading, nor is Plaintiff seeking an "advisory opinion" from this Court.

Facing Jones's unresolved stock option claim, Light Field Lab continues to suffer from material limitations to its business operations as a startup. Here, there is a real, immediate and substantial dispute between the parties ready for, and in need of, judicial resolution. The Declaratory Judgment Act does not require Light Field Lab to wait, particularly where, as here,

delay causes real harm.

Jones's purported planned employment action has no mitigating impact on this case. Jones's employment claims must be submitted to arbitration. The arbitration will not address the disputed options as they are outside the scope of the employment claims to be arbitrated. The options, as defined by the Plan, are not wages or compensation, and therefore outside the scope of any employment arbitration. To the extent Jones claims option value, that is likewise governed by the Plan and outside the scope of any purported employment claim as well. The Plan documents do not agree to arbitrate disputes arising from the Plan. Instead, the Plan expressly requires disputes be resolved via litigation in a California Court. Light Field Lab asked Jones to confirm his intent not to seek to recover options or values of the same for which he is not entitled by signing a covenant not to sue. Jones refused. The dispute remains live and in need of resolution.

The issue presented here is the parties' contractual rights under the Plan. Jones's employment with Light Field Lab has terminated. His rights under the Plan have expired. There are no future events that will change these facts. Jones continues to demand options and/or the value of the same to which he is not entitled, through demand letters, email threats to sue, and refusal to stipulate that he will not sue for stock options when he brings his separate employment claims to arbitration. Jones is free to pursue his employment claims but he is not entitled to stock options or any equivalent value under the Plan, and a judicial declaration to that effect is appropriate, needed, and within this Court's jurisdiction.

## II. FACTS

### A. Procedural Posture

On November 22, 2023, Jones filed a motion requesting that the Court extend his deadline to file a responsive pleading to January 21, 2024. *See* Dkt. No. 18. On November 27, 2023, this Court extended Jones's deadline to file a responsive pleading to January 19, 2024. *Id.*

On December 18, 2023, Jones filed a motion to dismiss pursuant to among other Federal Rules of Civil Procedure, Rules 12(b)(1) and 12(b)(6). *See* Dkt. No. 23. Plaintiff Light Field Lab's filed its opposition to Jones's motion to dismiss on January 2, 2024. *See* Dkt. No. 23. In its opposition, Plaintiff fully briefed arguments to Jones's motion to dismiss. *Id.*

After reviewing Plaintiff's arguments, on January 5, 2024, Jones filed s second motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).[1] *See* Dkt. No. 23. On January 8, 2024, Jones filed a reply to Plaintiff's opposition to Jones's first motion to dismiss. *See* Dkt. No. 38.

**B. Relevant Facts**

The relevant facts are set forth in Light Field Lab's Declaratory Judgment Complaint. *See* Dkt. No. 1.

Jones agreed to the terms of Light Field Lab's 2017 Stock Incentive Plan (the "Plan"). *See* Dkt. No. 1 at ¶¶ 9, 11.

In the Plan documents, Jones agreed that his participation in the Plan is voluntary, and options are "extraordinary items that do not constitute regular compensation for services rendered to the Company . . ." Dkt. No. 1 at ¶10, Exhibit A, Stock Option Agreement, at ¶11. Jones further agreed that options were "not intended to replace any pension rights or compensation and are not part of normal or expected salary or compensation for any purpose, including but not limited to calculating severance payments, if any, upon termination . . ." *See id.*

After he was separated from Light Field Lab, Jones did not exercise his options in the time required by the Plan. *See* Dkt. No. 1 at ¶¶16, 17, 22.

Jones made a demand that he be allocated options in an amount that exceeds $75,000.

Light Field Lab is an early-stage Silicon Valley technology company. Equity is the most important business currency for a startup. Like other startups, the ability for the company to offer attractive equity opportunities is the main tool to recruit top talent and is the mechanism for the financial returns that industry-leading investors seek. However, the number of stock options allocated for employees is limited. Mr. Jones's claim handcuffs the company's ability to meet its hiring needs, the very purpose of the Plan. *See* Dkt. No. 1 at ¶14.

Furthermore, Jones's unresolved claim to the options reduces the value Light Field Lab may offer for its equity in future financing, acquisition, or IPO events.

---

[1] Jones also filed a special motion to strike pursuant to California's Anti-SLAPP statute. *See* Dkt. No. 31.

Metrics for the success of large companies are measured in years whereas those metrics for startups are measured in months. A large company may not be materially impacted by unresolved equity claim like Jones's, but Light Field Lab does not have the luxury of time to resolve this dispute.

Jones continues to flip flop on whether he is entitled to stock options arising from his employment at Light Field Lab. In his first motion to dismiss he claims that he is entitled to stock options. *See* Dkt. No. 23. at 11, 13, 14. He now claims he should have their value. *See* Mot. at 3, 21. The Plan controls whether Jones is entitled to any stock options or their value – the Plan controls and sets all "value" emanating from options. *See* Dkt. No. 1, Ex. A, Stock Incentive Plan at ¶ 1 Definitions, sub.(s) and § 4(c)(i), (vii) (xi); Dkt. No. 1, Ex. A Stock Option Agreement at ¶ 11.

Light Field Lab presented Jones with a Release and Covenant Not to Sue directed to stock options that, if signed, would resolve the present dispute. Jones refused to sign.

There is no basis to allow this dispute to go unresolved. Jones's theories of wrongful discharge must be submitted to arbitration. *See* Dkt. 29, Yang Decl. Ex. A, attached thereto (Arbitration Agreement). The Plan, on the other hand, requires disputes be litigated in a California Court. *See* Dkt. No. 1, Ex. A (Option Agreement) at ¶13. This dispute is properly brought in this Court.

## III. <u>LEGAL ARGUMENT</u>

### A. Jones's Second Bite at a Motion to Dismiss Should be Denied In Its Entirety

On December 18, 2023, Jones filed a motion to dismiss pursuant to among other Federal Rules of Civil Procedure, Rules 12(b)(1) and 12(b)(6). *See* Dkt. No. 23. Plaintiff Light Field Lab's filed its opposition to Jones's motion to dismiss on January 2, 2024. *See* Dkt. No. 23. In its opposition, Plaintiff fully briefed arguments to Jones's motion to dismiss. *Id.*

The Local Rules provide that with respect to motion practice, once a motion has been filed, the only acceptable filings thereafter are: (a) Opposition; (b) Statement of Nonopposition; (c) Reply; and (d) Supplementary Material. *See* Local Rule 7-3(a)-(d). The Federal Rules of Civil Procedure and the Local Rules do not allow a second bite at a motion by filing the *same motion*

*again*. However, after reviewing Plaintiff's opposition and arguments, Jones filed yet another motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) on January 5, 2024.[2] *See* Dkt. No. 23.

Jones's second motion to dismiss must be denied in its entirety. Allowing a litigant to reformat and refile a motion after reading their opponent's opposition papers is contrary to the Rules of Civil Procedure and the Local Rules, and a waste of judicial resources. If Jones believed there was a good faith basis for refiling the same motion again, he must have identified the basis for this in his motion. The duty of good faith and candor requires as much, and frivolous motions which serve only to unnecessarily multiply the proceedings may subject the moving parties to sanctions. *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). Jones is not entitled to a gratuitous second bite at the apple at the expense of judicial resources and in disregard of the Rules of Civil Procedure and Local Rules. Jones's second motion to dismiss must be denied on this basis alone.

**B. Jones's Second Rule 12(b)(1) Challenge Should be Denied**

Jones frivolously argues in his improper second motion that although there is diversity jurisdiction, this Court does not have federal jurisdiction over this matter.

Federal courts have original jurisdiction over two kinds of civil actions: those which are founded on a claim or right arising under the Constitution, treaties or laws of the United States, and those where the matter in controversy exceeds $75,000 and is between citizens of different States. U.S. Const. art. III, § 2; 28 U.S.C. §§ 1331, 1332(a).

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a) permits a district court to grant declaratory judgments in appropriate cases and to refuse to entertain such actions under certain circumstances. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995). The DJA does not confer subject matter jurisdiction but rather there must be an independent basis for jurisdiction. *See Staacke v. United States Secretary of Labor*, 841 F.2d 278, 280 (9th Cir.1988). Therefore, any party asserting a claim under the DJA must also either establish federal subject matter jurisdiction

---

[2] Jones also filed a special motion to strike pursuant to California's Anti-SLAPP statute. *See* Dkt. No. 31.

arising under a federal question ***or*** diversity of citizenship. *See Skelly Oil v. Phillips Petroleum*, 339 U.S. 667, 671-72 (1950).

In the present action, subject matter jurisdiction is predicated on diversity of citizenship. See Compl. ¶ 5. Jones does not dispute that there is diversity of citizenship in this matter. In fact, he concedes there is diversity jurisdiction throughout his motion. Rather, he makes a convoluted argument that diversity of citizenship is not sufficient and there must *also* be a federal-question in order for this Court to have subject matter jurisdiction. Jones does not cite to any statute, rule, or case law to support this position, and there is none.

The one case Jones cites to, *Hourigan v. Redgrave LLP*, 2022 WL 17082374, clearly states that a court has subject matter jurisdiction in a DJA matter when there is diversity of citizenship. *Id.* at *1. In *Hourigan*, the court first analyzed whether there was diversity jurisdiction and determined there was no diversity jurisdiction because the plaintiff and defendant were both California citizens. *Id.* at *3-4. The court next looked at whether there was a federal-question jurisdiction and determined there was not because the plaintiff's claim under the DJA was not based on rights that could have been asserted under federal law. *Id.* at *7. The *Hourigan* court then granted the defendant's motion to dismiss on the grounds that there was no subject matter jurisdiction arising under a federal question ***or*** diversity of citizenship. *Id.* *Hourigan* is distinguishable from the case at bar because there is diversity of citizenship here and therefore this Court has subject matter jurisdiction.

### C. Jones's Second Rule 12(b)(6) Challenge Should Also be Denied

#### 1. Plaintiff's Declaratory Judgment Claim Does Not Violate the *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine stands for the proposition that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965)). "This doctrine arose in the context of antitrust law . . . but the Ninth Circuit has applied its 'equally in all contexts,' with limited

exceptions." *Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F.Supp.3d 813, 824 (citing *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000)). "Protected petitioning activity includes bringing a lawsuit, defending a lawsuit brought by another, and filing papers with a court." *Id.* (internal citations omitted). "[C]onduct incidental to a petition is protected by *Noerr-Pennington* if the petition itself is protected." *Id.* (internal quotation marks omitted) (quoting *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004)). *Noerr-Pennington* "immunizes a party from liability and not from an entire claim." *Id.* at 825 (citing *Shell Gulf of Mexico, Inc. v. Ctr. for Biological Diversity, Inc.*, No. 3:12-CV-0048-RRB, 2012 WL 12865419, at *9–*10 (D. Alaska 2012)).

Factually, Jones consented to jurisdiction in this court. See Dkt. No. at Ex. A (Option Agreement ¶13). He therefore has no grounds to challenge a venue he agreed to, and *Noerr-Pennington* is not to the contrary. Legally, the doctrine does not apply here, as Jones concedes. (Mot. at 18) ("While this district had held that the *Noerr-Pennington* doctrine does not apply to claims brought under the Declaratory Judgment Act . . ."), *citing Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F. Supp. 3d 813, 824-25 (N.D. Cal. 2019).

Here, Plaintiff's complaint is for a declaration that it has no contract obligations to Jones. The complaint is not seeking to hold *Jones* liable for any purpose, let alone for purported protected activity. On the contrary, Plaintiff seeks a declaration that Light Field Lab is not liable *to Jones*. Moreover, Plaintiff's request for declaratory relief does not burden Jones's rights—Jones's theories of wrongful discharge must be submitted to arbitration, and he may still exercise those rights by filing a demand for arbitration. *Id.*

The *Cisco* case is directly on point. In *Cisco*, the court explained that the *Noerr-Pennington* doctrine is a defense against claims based on the petitioning of public authorities, not claims based on the proponent's own constitutional rights. *See Cisco Sys., Inc.*, 403 F. Supp. 3d at 825. Just as the defendants' declaratory judgment claim in *Cisco* was not seeking to hold the plaintiff liable for its protected activity, here Light Field Labs is not seeking to hold Jones liable for any purported protected activity. Further, just as in *Cisco*, Plaintiff here is merely seeking a declaration that it is not liable to Jones under a contract. "Put another way, [Light Field Lab] do[es] not seek remedies (be it damages or otherwise) from [Jones] on this claim." *Id.* The claim

thus is outside the ambit of *Noerr-Pennington*. *Id.*

As such, the *Noerr-Pennington* doctrine does not bar Plaintiff's DJA claim here just as it did not in the *Cisco* case. Jones's motion must be denied.

**2. California Civil Code § 47(b) is Inapplicable to Plaintiff's Declaratory Judgment Claim Because California's Choice of Law Rules Select Delaware Law**

Jones contends that the communications which form the basis for Plaintiff's request under the DJA are privileged under the litigation privilege of California Civil Code § 47(b). Under California's litigation privilege, communications with "some relation to judicial proceedings have been absolutely immune from tort liability[.]" *Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993) (internal quotations omitted).

Jones's motion assumes California law applies because the court's subject matter jurisdiction is premised on diversity of citizenship. Jones's analysis is overly simplistic. When a federal court sits in diversity, it applies the forum state's ***choice of law rules*** (not the forum state's law by default). *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp*., 622 F.3d 996, 1002 (9th Cir. 2010).

The parties stipulated to application of Delaware law. Specifically, the parties agreed that "[t]he the validity, interpretation, construction and performance of this Agreement, *and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto* shall be governed, construed and interpreted in accordance with the laws of the State of Delaware, without giving effect to principles of conflicts of law." *See* Complaint Exhibit A [Stock Option Agreement] at §13. (emphasis added).

Contractual choice-of-law provision generally will be enforced as long as (1) "the chosen state has a substantial relationship to the parties or their transaction, <u>or</u> (2) [ ] there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992); *see also Washington Mut. Bank, FA v. Superior Ct*., 24 Cal. 4th 906, 914-15, 15 P.3d 1071, 1077 (2001).

The first *Nedlloyd* test is met. "A substantial relationship exists between a party and the state in which that party is domiciled, resides, or is incorporated." *Rojas v. Bosch Solar Energy*

*Corp*., 443 F. Supp. 3d 1060, 1073 (N.D. Cal. 2020) (internal citation omitted). Light Field Lab is incorporated in Delaware. Delaware law controls because the single dispute arises from the Plan.[3]

The second *Nedlloyd* test is also satisfied. There is a reasonable basis for applying Delaware law, as *Nedlloyd* illustrates. In *Nedlloyd*, the court had to determine whether the scope of the choice-of-law provision encompassed the plaintiff's breach of fiduciary duty cause of action. *Nedlloyd*, 3 Cal. 4th 459 at 468. In concluding that the choice-of-law clause governed the claim, the court found that the parties' shareholders' agreement expressly provides for the purchase of shares by defendant and creates the relationship between shareholder and corporation that gives rise to the cause of action. *Id*. The duties owed, if any, arose from and could only exist because of the shareholders' agreement pursuant to which stock was purchased. *Id*. Courts in this district apply the same analysis to shareholder-related claims. *See Kaul v. Mentor Graphics Corp.*, No. 16-CV-02496-BLF, 2016 WL 6249024, at *4 (N.D. Cal. Oct. 26, 2016) (claim derived from Defendant's relationship with Calypto, which arose from the acquisition of Calypto shares). The shareholder relationship of the Plan, and the parties' relationship to each other as corporation and shareholder or option holder here satisfies *Nedlloyd*'s reasonable basis test.

California's choice of law analysis typically includes consideration of California's fundamental policy, but that analysis is not required in this case. Here, the parties agreed that Delaware law should govern "without giving effect to principles of conflicts of law." Consequently, whether the fundamental policy of California is violated is not applicable and Delaware law controls. *See Kaul v. Mentor Graphics Corp.,* No. 16-CV-02496-BLF, 2016 WL 6249024, at *5 (N.D. Cal. Oct. 26, 2016).

The "internal affairs doctrine" provides a separate basis for the application of Delaware

[3] Jones's planned employment claims must be submitted to arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."). The agreement governing those claims—not at issue in this case—has a California choice of law provision. California law can be applied in the employment arbitration while, at the same time, Delaware law applies in this lawsuit. *See e.g., Rojas v. Bosch Solar Energy Corp*., 443 F. Supp. 3d 1060, 1073 (N.D. Cal. 2020) (applying Michigan law to disputes arising from the warranty/agreement and California law to claims falling outside the warranty).

law. That doctrine requires a court to apply the law of the state of incorporation to those matters concerning the internal affairs of a corporation," also applies. *See IQVIA Inc. v. MedImpact Healthcare Sys., Inc.*, No. 21-CV-2081-GPC-DEB, 2022 WL 6258369, at *13 (S.D. Cal. Oct. 7, 2022). "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Id.* Here, the dispute arises over Jones's claim as a shareholder and potential holder of additional share, and therefore falls under the internal affairs doctrine. *See id*; *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 121 (N.D. Cal. 2007) ("Internal corporate affairs involve those matters that are peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders.").

The parties to the Plan agreements selected Delaware law, which is to be applied uniformly to all disputes brought by any actual or potential shareholder. At issue are stock options offered by a Delaware corporation, under an agreement designating Delaware law, for which Delaware has the greater interest in enforcing its laws. The Plan is directed to persons who may or may not be in California. Jones himself is a resident of Washington. There is no reason under California's choice-of-law analysis to apply any law other than Delaware law.

**(a) Delaware's Common Law Rule of Absolute Privilege is Inapplicable to Plaintiff's Request for Declaratory Judgment Relief**

Delaware's common law rule of absolute privilege "protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements issued as part of a judicial proceeding and were relevant to the matter at issue in the case." *Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992). Delaware courts have held that although the absolute litigation privilege is not limited to defamation claims, claims subject to the absolute privilege generally bear some relation to defamation claims or involve issues of disparagement. *See State Farm Mutual Automobile Insurance Company v. Delaware Diagnostic & Rehabilitation Center, P.A.* 2021 WL 1929365, fn.

12 (D. Del. May 13, 2021); *see also Barker*, 610 A.2d at 1349; *AGC Networks, Inc. v. Relevante, Inc.*, C.A. No. 14-308-LPS, 2015 WL 1517419, at *3 (D. Del. Mar. 31, 2015) (applying absolute litigation privilege to dismiss tortious interference claim).

Here, Plaintiff's contract claim is not analogous to defamation claims for purposes of applying the absolute litigation privilege. Delaware courts have held that the state's absolute litigation privilege only applies to tort claims and not claims based on contractual obligations. *See Feenix Payment Sys. LLC v. Blum*, 2022 WL 215026, *7 (Del. Super. 2022). "Delaware upholds the freedom of contract and enforces as a matter of fundamental public policy the voluntary agreements of sophisticated parties." *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009) (internal citations omitted). Thus, Delaware's absolute litigation privilege is also inapplicable to the DJA procedure Plaintiff employed to bring its contract claim.

**(b) California's Litigation Privilege Does not Apply for Additional Reasons**

In the event this Court were to find California substantive law controlling, the California litigation privilege also does not apply here because the pleaded claim is for breach of contract, not tort. *See E. & J. Gallo Winery v. Andina Licores S.A.*, No. CV F 05-0101 AWI LJO, 2006 WL 1817097, at *7 (E.D. Cal. June 30, 2006) ("Because Gallo's breach of contract claim sounds in contract and not in tort, and because the claim does not impinge on Andina's right to resort to this or any other court, or in any other way contravene the policy reasons for the litigation privilege, this court finds the litigation privilege does not bar Gallo's breach of contract claim).

In California, "whether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege." *3500 Sepulveda, LLC v. Macy's W. Stores, Inc.*, 980 F.3d 1317, 1327 (9th Cir. 2020), citing *Wentland v. Wass,* 126 Cal.App 4th 1484, 1491 (2005) (collecting cases).[4] The availability of the privilege in contract claims turns on whether the policies underlying the privilege are promoted, include "ensur[ing] free access to the courts, promot[ing] complete and truthful testimony, encourag[ing] zealous

[4] Jones does not cite this controlling authority.

advocacy, giv[ing] finality to judgments, and avoid[ing] unending litigation." *Wentland v. Wass*, 126 Cal.App.4th at 1492.

Here, as in *Wentland*, the conduct alleged in the complaint is not simply a communication but is instead wrongful conduct or performance under the contract, and all policies weigh against application of the privilege. There are no weighty policy issues at plan in this case, only a private contract. The Plan documents expressly provide for litigation in a California court, and Jones invokes the privilege to block the contractual right and shift the costs of suit to his preferred venue. *See E. & J. Gallo Winery*, 2006 WL 1817097, at *7 (litigation privilege did not apply when it would interfere with a bargained-for right to litigate in and shift the costs of litigation).

Jones's reliance on the litigation privilege is misplaced for additional reasons. *First*, the privilege is intended to "immunize[] defendants from virtually any tort liability . . ." *Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1233 (S.D. Cal. 2021). Jones is not facing any liability in the instant case. *Second*, because the issue is contract interpretation, Light Fitness Lab can prove its contract claim without referring to any pre-filing statement made by Jones. Jones's commentary is not an element of the contract claims. Light Field Lab only need rely on the Plan documents. *Third*, Jones waived California's litigation privilege when he agreed to Delaware law. A plaintiff cannot claim a litigation privilege he has voluntarily released. *See, e.g., Wentland*, 126 Cal.App.4th at 1493 ("[j]ust as one who validly contracts not to speak waives the protection of the anti-SLAPP statute, so too has he waived the protection of the litigation privilege. . . [H]ere application of the privilege would frustrate the purpose of the [] agreement").

**(c) Rule 408 is Inapplicable to a Motion to Dismiss, and Has Not Been Violated by Plaintiff, and Has Been Waived by Jones**

Federal Rule of Evidence 408 excludes settlement evidence if offered to prove liability or to prove damages but does not require exclusion when evidence is offered for another purpose. *See ABM Indus., Inc. v. Zurich Am. Ins. Co*., 237 F.R.D. 225, 228 (N.D. Cal. 2006). One of the allowed purposes is to establish jurisdiction. *See Archer v. Kelly*, 271 F.Supp.2d 1320, 1323 (N.D. Okla. 2003), overruled on other grounds by *Dart Cherokee Basin Operating Company, LLC v. Owens*, 574 U.S. 81 (2014) (Defendant could use plaintiff's pre-suit demand letter to establish that

plaintiff's claim exceeded amount in controversy requirement for exercise of diversity jurisdiction); *Smith v. Cutler*, 504 F. Supp. 2d 1162, 1167 n. 3 (D.N.M. 2007) ("The Court agrees that the e-mail cannot be admitted to prove liability. It is relevant, however, to the personal jurisdiction issue as it is evidence of Defendant's contact with New Mexico."). Light Field Lab's reference to settlement discussions in its complaint is entirely appropriate, not disputed, and entitled to be taken at face value at the pleading stage.

Moreover, Jones waived any Rule 408 objections when he submitted the demand letter and emails to the Court in his Request for Judicial Notice in support of his Anti-SLAPP motion (Dkt. 33 and exhibits thereto), and placed the documents on the public docket. *See Eisenberg v. University of New Mexico*, 936 F.2d 1131, 1134 (10th Cir. 1991).

### 3. Jones's Employment Grievances Are Irrelevant To the Above-Captioned Case

Plaintiff's declaratory judgment complaint presents an entirely separate legal issue for this court to adjudicate, independent of Jones's employment grievances.

#### (a) Jones's Planned Employment Action Will Not Resolve His Right to Stock Options

Jones claims he was wrongfully terminated. Arbitration is required for Jones's employment claims, which are not the issue here. Jones agreed in an Agreement to Arbitrate All Claims, that his employment claims must be resolved outside of court, and in binding arbitration.[5] *See* Dkt. 29, Yang Decl. Ex. A, attached thereto (Arbitration Agreement).

Jones's planned employment litigation will not entitle him to value for his lapsed stock options, under any possible outcome, for at least two reasons.

*First*, as a matter of contract, Jones agreed that stock options would not be compensation for any purpose, including severance payments. *See* Dkt. No. 1 at ¶10; Exhibit A at 35 (Stock Option Agreement) at ¶11.

*Second*, Jones is not entitled to stock options or their value as a matter of law. Jones's

[5] The complaint in this case does not seek a judicial declaration about Jones's employment rights. There are no employment claims in the complaint or pending before this Court.

employment arbitration would be conducted in accordance with California law. *See* Dkt. 29, Yang Decl. Ex. A, attached thereto (Arbitration Agreement). The employment arbitration, if successful, will entitle Jones to recover lost wages—the permitted damages. But even success will not allow Jones to recover stock options. In California, "wages" include salary and other benefits that are part of an employee's compensation. Lab. Code, § 200, subd. (a); *Department of Industrial Relations v. UI Video Stores, Inc.* (1997) 55 Cal.App.4th 1084, 1091. Here, the Plan, which Jones agreed to, clearly states that the stock options are not to be compensation for any purpose, including severance payments. Thus, under California law—the law that applies to his arbitration proceeding—the stock options are not wages and would not be available to Jones in any event. Under such circumstances, courts have consistently held that stock options are not wages under California law. *See Int'l Bus. Machines Corp. v. Bajorek,* 191 F.3d 1033, 1039 (9th Cir. 1999) ("stock options are not 'wages'"); *Walter v. Adaptive Insights, Inc*., 2019 WL 13201941, at *1 (N.D. Cal. May 23, 2019) (same); *Atencio v. TuneCore, Inc.*, 2016 WL 11518598, at *8 (C.D. Cal. Sept. 29, 2016) ("the Court's response is simple: "[S]tock options are not 'wages'").

Here, the stock options will not be at issue if Jones initiates employment arbitration because California law governs the arbitration, and his options are not recoverable as "wages." The Plan documents preclude any contrary argument.

**(b) The Disputed Stock Options Must Be Resolved in This Case**

This case is directed to resolving a contract dispute under the Plan. Specifically, Jones's repeated demands that Light Field Lab grant him stock option benefits after his rights expired, or that it compensate him for their value. The 2017 Light Field Lab Stock Incentive Plan dictates the parties' obligations and rights. Jones does not dispute, and in fact admits that disputes arising from the Plan must be resolved in a California Court. *See* Dkt. No. 1 at ¶7 and Exhibit A at ¶13. It is unclear whether Jones will bring his purported wrongful termination claims, but he refuses to sign a Release and Covenant Not to Sue narrowly directed to the Plan at issue in this case. It is clear that a live dispute remains.

The Plan, to which Jones is a signatory, does not grant the rights to which he insists he is entitled. Indeed, the Plan clearly states that Jones's stock option awards are not wages. *See* Dkt.

No. 1, Ex. A, Stock Option Agreement at ¶11. The Plan also dictates the value of stock options, and specifically that there is no value to them once Jones was terminated and failed to exercise the options in a timely manner. *Id.*

Jones concedes he is not entitled to options but insists he can recover equivalent value as employment damages. Jones asserts, therefore, there is no dispute before this Court. The Plan controls all "value" emanating from options, whether parading as actual options or as substitute value. See Dkt. No. 1, Ex. A, Stock Incentive Plan at ¶ 1 Definitions, sub.(s) and ¶ 4(c)(i), (vii) (xi). All "value" is set by the Plan. It is to be determined based on Fair Market Value, as defined by the Plan, minus the exercise price, also determined by the Plan. *Id.* at ¶ 7(b)(i). As a condition to participating in the Plan, Jones agreed that all "the rights and obligations of the parties" to the Plan were to be submitted to a California court. See Dkt. No. 1, Ex. A Stock Option Agreement at ¶ 13(a). Under the Plan, Light Field Lab owes Jones no money for Plan options, substitute or otherwise. See Dkt. No. 1, Ex. A, Stock Option Agreement at ¶ 11 (In accepting options, Jones acknowledged that, among other limitations, the Plan does not grant any contractual or other right to receive future options, other Awards or benefits in lieu of Options, even if Option have been granted in the past). When Jones signed the Plan documents, he agreed that rights under the Plan were not to replace compensation and were not part of his wages for any purpose, "including but not limited to calculating severance payments, if any upon termination." Id. Jones's attempt to subvert the Plan by masquerading his claim as employment damages only reinforces Light Field Lab's need for declaratory relief.

The host of state and federal court doctrines raised in the motion, and premised on the same employment grievances, lack merit. Most are legally frivolous and are merely spurious accusations. None deprive this Court of subject-matter jurisdiction.

### 4. Plaintiff's Complaint Includes All Elements Required to State a Claim

In considering a Rule 12(b)(6) motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *See Clear Channel Outdoor*, 2011 WL 6099394, at *6, citing *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A complaint need not contain detailed factual allegations, but it must plead enough facts to

state a plausible claim to relief. *Id*. (internal citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id*. (internal citations omitted).

The complaint pleads all required elements of the single contract claim. *See* Dkt. No. 1 at ¶¶ 4, 9-19, 22-24.

**5. Light Field Lab, as a Party to the Contract, Has Standing**

"On a motion to dismiss for lack of standing, a district court must accept as true all material allegations in the complaint and must construe the complaint in the nonmovant's favor." *See Clear Channel Outdoor, Inc. v. Bently Holdings California LP*, No. C-11-2573 EMC, 2011 WL 6099394, at *3 (N.D. Cal. Dec. 7, 2011) (citation omitted). The Complaint alleges all fact necessary to establish standing.

As a party to the contract (Plan), Light Field Lab has standing to protect its contractual rights. "It is hornbook law that only the parties to a contract can enforce it and that they may enforce it against only the parties to the contract." *Copiers Typewriters Calculators, Inc. v. Toshiba Corp*., 576 F. Supp. 312, 322 (D. Md. 1983). Jones's failure to abide by the Plan's terms is a particular, concrete and present injury, the injury is traceable to Jones's conduct, and the injury to Light Field Lab can be redressed with a favorable ruling that it owes Jones no options under the Plan. All elements of standing are satisfied.

**6. The Declaratory Judgment Act's Requirements are Satisfied**

Pursuant to the Declaratory Judgment Act, federal courts may declare the rights and other legal relations of any interested party in a declaratory judgment action. *See* 28 U.S.C. § 2201(a). "Determination of jurisdiction is a two-part test: first the court must determine ripeness, and then the court must determine whether to exercise its discretion." *Clear Channel Outdoor*, 2011 WL 6099394, at *5.

This dispute is ripe. Jones does not dispute that he presently demands remuneration based on the Plan. Jones's threat of additional litigation, reinforced in his first motion to dismiss, is enough for jurisdiction. *See* Dkt. No. 23 at 2. That this dispute is ripe is evidenced by the parties' communications that Jones submitted to the Court. *See* Dkt. No. 33 and Exhibits thereto. That

Jones has not yet brought his claims, and claims he may not, does not preclude jurisdiction, it supports it. The Declaratory Judgment Act is "intended to fix the problem that arises when the other side does not sue." *Sony Electronics, Inc. v. Guardian Media Techs., Ltd*., 497 F3d 1271, 1284 (Fed. Cir. 2007), *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*. 896 F2d 1542, 1555 (9th Cir. 1989) (the Act relieves potential defendants from "Damoclean threat of impending litigation which a harassing adversary might brandish.").

*Bitter v. Windsor Sec., LLC*, 2014 WL 1411219 (N.D. Cal. Apr. 11, 2014) is directly on point. There, the Court considered and rejected the argument that settlement demands were insufficient for the issuance of a declaratory judgment. *Id*. at *4. The Court similarly rejected the same "must have present evidence" argument Jones advances, finding "[t]he need to develop facts does not mean that no case or controversy exists—that need is why discovery is allowed." *Id*. at *4. Finally, the Court rejected the defendant's argument that "uncertain or contingent future events that may not occur"—the same argument Jones makes here. *Id.* at *5. Windsor's and Jones's arguments to dismiss are the same, and Jones's arguments should meet the same fate as Windsor's; the motion to dismiss should be denied.

Jurisdiction is also appropriate. The *Brillhart* factors all favor the Court's exercise of jurisdiction. *See Brillhart v. Excess Ins. Co*., 316 U.S. 491 (1942).

*First*, this case does not involve a needless determination of state issues. This factor generally focuses on disputes concerning unsettled or novel issues of state law, as opposed to factual disputes. *See Allstate Ins. Co. v. Davis*, 430 F.Supp.2d 1112, 1120 (D. Haw. 2006). Declaring that Jones is not entitled to options under the Plan implicates a private contract, there is no parallel state court proceeding,[6] and this Court's diversity jurisdiction is undisputed. There is no novel issue here; the case is a simple contract case typical of cases this Court hears regularly. *See id.* ("On numerous occasions, the United States District Court in the District of Hawaii has interpreted insurance policies pursuant to Hawaii state law to determine the scope of an insurer's

[6] Even if Jones were to pursue employment claims, they must be submitted to arbitration. Therefore, there will be no future state court proceedings.

duties to an insured.").

*Second*, there is no indication of forum shopping. In the Plan, the parties agreed that any stock-related litigation shall be conducted in a California court, and also agreed that federal court was a suitable venue. *See* Dkt. No. 1 Exhibit A at ¶13.

*Third*, this case does not implicate duplicative litigation. As Jones's emphasizes in his first motion to dismiss, no other lawsuits have been filed. Jones's employment claims, which as explained above are irrelevant to this case, will not be resolved in litigation; they must be arbitrated. There is no present or potential duplicate state court litigation.

None of the procedural concerns evaluated for suitability apply here because the parties agreed to resolve Plan disputes in this forum. *See* Dkt. No. 1 Exhibit A at ¶13. There is no procedural fencing, "res judicata" advantage, or entanglement between the federal and state court systems presented in this case. *See Gov't Employees Ins. Co v. Dizol*, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998) (*en banc*). Convenience of the parties is not an adverse consideration for the same reason, the parties agreed to litigate in California.

On the other hand, consideration of the other factors, such as whether the suit will settle all aspects of the controversy and serve a useful purpose in clarifying legal relations at issue, weigh in favor of entertaining the suit. There is no question that the contract dispute between the parties is not an abstract or hypothetical disagreement. *See Molde-Duque v. HH Riverside Prop. LLC*, 2021 WL 2791612, at *4 (C.D. Cal. Apr. 2, 2021) (finding jurisdiction when contract dispute was concrete). Jones has demanded his options and has threatened legal proceedings. Jones's claims impact Light Field Lab's other Plan allocations, its ability to recruit and retain other employees, and ability to press forward with its business, as discussed above. Light Field Lab faces duplicate attorney's fees if Jones attempts to seek value for his options in arbitration, in violation of the Plan's contrary terms and venue provision. Dkt. No. 1 at ¶ 4. Maintaining this suit will settle the Plan controversy and serve a useful purpose in clarifying the parties' legal relations at issue, which weighs in favor of entertaining the suit. "[T]his is precisely the type of case for which declaratory relief is appropriate." *See Molde-Duque,* 2021 WL 2791612, at *4 (internal citation omitted); *see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937) (repeated claims

to rights under insurance contracts, no suit is brough, and DJ Plaintiff sought to dispel the cloud of the claim).

**7. The Parties' Dispute is Ripe**

Ripeness asks whether the harm asserted has matured sufficiently to warrant judicial intervention. *See Clear Channel Outdoor, Inc. v. Bently Holdings California LP*, 2011 WL 6099394, at *3 (N.D. Cal. Dec. 7, 2011) (internal citation omitted). For private party contract disputes, the traditional ripeness standard applies. *Id*. (internal citations omitted). "More specifically, '[t]he central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* Claims may be ripe for adjudication even where there is no immediately apparent damage. *Id.* at *4. In *Clear Channel*, like here, the declaratory judgment defendant argued lack of ripeness claiming that the parties' obligation would not arise until some future contingency had been met. The Court disagreed, finding the contract dispute ripe. There was "a dispute between the parties as to their respective rights and obligations under the [contract.]" *Id*. at *6. The same is true here.

Jones does not disagree that there is a live dispute about his stock options. (*See* Dkt. No. 23 at 7). Like his previous motion, Jones's ripeness argument in his second motion continues to be that he may or may not file employment claims at some future date. (*Id.*; Mot. at 23-24). As explained above, his potential employment claims are irrelevant to this action. Here, there are no future contingencies that will impact this case. All essential facts establishing the right to declaratory relief have already occurred. The Plan was agreed to by the parties, the terms upon which options are permitted are in the Plan and will remain unchanged, Jones is no longer employed at Light Field Lab and will not be in the future. There are no future events that will change the nature or scope of this case. The dispute is concrete and ripe for a judicial declaration of the rights and obligations of the parties under the Plan.

**8. Plaintiff's Complaint is not a Sham Pleading, nor is Plaintiff seeking an "Advisory Opinion"**

The Supreme Court has defined a "sham" petition as a petition that is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961). Here, for the reasons discussed above, Light Field Lab pleads all required elements of its contract claim and easily meets the objective requirement of realistic success on the merits. At the pleading stage, nothing more is required. The host of affirmative defenses Jones briefs do not apply and do not bar the pleaded claim. Plaintiff's complaint is therefore not a sham pleading.

Further, declaratory judgments that cannot "end the controversy" are to be avoided as unconstitutional advisory opinions. *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246 (1952); *see also Schnieder v. Chertoff*, 450 F.3d 944, 959 (9th Cir. 2006). A court's judgments "must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1972) (citation omitted). Again, for the reasons discussed above, there is no question that the contract dispute between the parties is not an abstract or hypothetical disagreement. Jones has demanded his options and/or value from his options in contradiction of the Plan. He has threatened legal proceedings. His claims impact Light Field Lab's ability to press forward with its business. The Plan requires uniform application, and Jones's claim to rights after Plan expiration impacts the whole of Light Field Lab's Plan administration. Light Field Lab faces duplicate attorney's fees if Jones attempts to seek his options in arbitration, in violation of the Plan's venue provision. Dkt. No. 1 at ¶ 4. Thus, Plaintiff is not seeking an advisory opinion, but rather is asking this Court to settle the Plan controversy and clarify the parties' legal relations at issue, which are currently ripe.

**D. Leave to Amend**

If a complaint is dismissed, "[the] district court should grant leave to amend even if no request to amend the pleading was made[.]" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016). If the Court finds a defect in the complaint as presently filed, Light Field Lab requests leave to amend.

///

///

///

## IV. CONCLUSION

For all the forgoing reasons, Light Field Lab respectfully submits that Jones's improper second motion to dismiss should be denied.

Dated: January 19, 2024

BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Ghazaleh Modarresi*
Ghazaleh Modarresi
Patricia L. Peden
Attorneys for Light Field Labs