1  Patricia L. Peden (SBN 206440)
   E-mail:  ppeden@bwslaw.com
2  Ghazaleh Modarresi (SBN 259662)
   E-mail:  gmodarresi@bwslaw.com
3  BURKE, WILLIAMS & SORENSEN, LLP
   1999 Harrison Street, Suite 1650
4  Oakland, California 94612-3520
   Tel:  510.273.8780    Fax:  510.839.9104
5
   Attorneys for Light Field Lab
6

7

8                    UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

10

11 Light Field Lab,                          | Case No. 4:23-cv-05344-YGR

12            Plaintiff,                      | **LIGHT FIELD LAB'S OPPOSITION TO
                                              | DEFENDANT ALAN JONES'S SPECIAL
13       v.                                   | MOTION TO STRIKE PLAINTIFF'S
                                              | COMPLAINT PURSUANT TO
14 Alan Jones,                                | CALIFORNIA'S ANTI-SLAPP STATUTE**

15            Defendant.                      | Filed concurrently with
                                              | *DECLARATION OF PATRICIA L. PEDEN IN
16                                            | SUPPORT OF LIGHT FIELD LAB'S
                                              | OPPOSITION TO ALAN JONES'S SPECIAL
17                                            | MOTION TO STRIKE PLAINTIFF'S
                                              | COMPLAINT PURSUANT TO
18                                            | CALIFORNIA'S ANTI-SLAPP STATUTE*

19                                            | *LIGHT FIELD LAB'S OBJECTIONS TO
                                              | DEFENDANT JONES'S REQUEST FOR
20                                            | JUDICIAL NOTICE IN SUPPORT OF
                                              | SPECIAL MOTION TO STRIKE
21                                            | PLAINTIFF'S COMPLAINT PURSUANT TO
                                              | CALIFORNIA'S ANTI-SLAPP STATUTE*
22
                                              | Judge:    Hon. Judge: Hon. Yvonne Gonzalez
23                                            | Rogers
                                              | Date:     February 13, 2024
24                                            | Time:     2:00 p.m.
                                              | Crtrm.:   Courtroom 1 – 4th Floor
25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION  PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY...................................2

LEGAL ARGUMENT .........................................................................................3

I.    DELAWARE LAW APPLIES.......................................................................3

      A.    California's Choice of Law Rules Select Delaware Law.......................3

      B.    Delaware's Anti-SLAPP Is Not Violated.........................................5

II.   THE COURT SHOULD DENY JONES'S CALIFORNIA ANTI-SLAPP MOTION..........6

      A.    The Anti-SLAPP Statute's Two-Step Analysis .................................6

      B.    Step One:  The Contract Claim Does Not Arise From Protected Activity..............6

            1.    Jones Fails to Identify a Violation, Thus Failing His Initial Burden ............7

            2.    Light Field Lab's Substantive Contract Claim Does Not "Arises
                  From" Protected Activity; It Arises From a Dispute About
                  Contractual Obligations........................................................7

            3.    The Complaints Reference to Triggering Events Is Not a Violation
                  of the Anti-SLAPP Statute ...................................................9

            4.    Facts Pleaded for Relief Under the Declaratory Judgment Act Do
                  Not Violate the Anti-SLAPP Statute..........................................12

            5.    Jones's Disparaging Allegations Do Not Meet His Step One Burden.........15

      C.    Step Two:  Light Field Lab's Contract Claim Has At Least "Minimal Merit"........16

            1.    The California Litigation Privilege Does Not Apply .........................18

            2.    The *Noerr-Pennington* Affirmative Defense Does Not Preclude
                  Light Field Lab's Contract Claim ............................................20

            3.    Federal Rule of Evidence 408 Does Not Preclude Light Field Lab's
                  Claim .............................................................................21

III.  LIGHT FIELD LAB IS ENTITLED TO RECOVER FEES .............................................21

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

i

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*3500 Sepulveda, LLC v. Macy's W. Stores, Inc.*,
   980 F.3d 1317 (9th Cir. 2020) ......................................................................... 18, 19, 23

*In re Adobe Sys., Inc. Priv. Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ........................................................................ 8

*Areias v. Applied Underwriters, Inc.*,
   2021 WL 9598132 (N.D. Cal. Oct. 19, 2021) ............................................................ 23

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
   622 F.3d 996 (9th Cir. 2010) ...................................................................................... 3

*Catlin Ins. Co., Inc. v. Meredith*,
   2021 WL 764042 (N.D. Cal. Feb. 26, 2021) ..................................................... 7, 11, 16

*Cisco Sys., Inc. v. Beccela's Etc., LLC*,
   403 F. Supp. 3d 813 (N.D. Cal. 2019) ...................................................................... 21

*E. & J. Gallo Winery v. Andina Licores S.A.*,
   2006 WL 1817097 (E.D. Cal. June 30, 2006) ....................................................... 18, 19

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ..................................................................................... 22

*Fourth Age Ltd. v. Warner Bros Ent., Inc.*,
   621 F. App'x 465 (9th Cir. 2015) ................................................................................ 1

*Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*,
   525 F. Supp. 3d 1145 (S.D. Cal. 2021) ..................................................................... 19

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ................................................................................................. 4

*Int'l Bus. Machines Corp. v. Bajorek*,
   191 F.3d 1033 (9th Cir. 1999) ................................................................................ 9, 17

*IQVIA Inc. v. MedImpact Healthcare Sys., Inc.*,
   2022 WL 6258369 (S.D. Cal. Oct. 7, 2022) ................................................................ 5

*Jordan-Benel v. Universal City Studios, Inc.*,
   859 F.3d 1184 (9th Cir. 2017) ............................................................................ 6, 7, 10

*Kailikole v. Palomar Cmty. Coll. Dist.*,
   2020 WL 6203097 (S.D. Cal. Oct. 22, 2020) ............................................................ 22

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

*Kaul v. Mentor Graphics Corp.*,
  2016 WL 6249024 (N.D. Cal. Oct. 26, 2016) ............................................................ 4

*Kearney v. Foley & Lardner, LLP*,
  590 F.3d 638 (9th Cir. 2009) ...................................................................................... 21

*Manzari v. Associated Newspapers Ltd.*,
  830 F.3d 881 (9th Cir. 2016) ...................................................................................... 17

*Nguyen v. Nguyen*,
  2023 WL 4186352 (N.D. Cal. June 25, 2023) ............................................................. 7

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
  711 F.3d 1136 (9th Cir. 2013) .................................................................................... 20

*OM Fin. Life Ins. Co. v. Keel*,
  2008 WL 220084 (N.D. Cal. 2008) ............................................................................ 16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ................................................................................. 6, 21

*Rhoades v. Avon Products*,
  504 F.3d 1151 (9th Cir. 2007) .............................................................................. 21, 23

*RLI Ins. Co. v. Langan Eng'g, Env't, Surveying & Landscape Architecture, D.P.C.*,
  2019 WL 6612241 (N.D. Cal. Dec. 5, 2019) ............................................................. 11

*Rojas v. Bosch Solar Energy Corp.*,
  443 F. Supp. 3d 1060 (N.D. Cal. 2020) ....................................................................... 4

*Select Portfolio Servicing v. Valentino*,
  875 F. Supp. 2d 975 ................................................................................................... 21

*Simpson v. Philip Morris Inc.*,
  2003 WL 23341207 (C.D. Cal. Nov. 6, 2003) ............................................................. 9

*United Food & Com. Workers Loc. Union Nos. 137, 324, 770, 899, 905, 1167,
  1222, 1428, & 1442 v. Food Emps. Council, Inc.*,
  827 F.2d 519 (9th Cir. 1987) ....................................................................................... 8

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-
  CIO*,
  31 F.3d 800 (9th Cir. 1994) ....................................................................................... 20

*In re Verisign, Inc., Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) ....................................................................... 5

*Walker v. Armco Steel Corp.*,
  446 U.S. 740 (1980) ...................................................................................................... 5

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ............................................................................ 20

*Yuga Labs, Inc. v. Ripps*,
    2023 WL 7123786 (9th Cir. 2023) ..................................................................... 10

**State Cases**

*Agar v. Judy*,
    151 A.3d 456 (Del. Ch. 2017) ........................................................................ 5, 6

*People ex rel. Allstate Ins. Co. v. Rubin*,
    66 Cal.App.5th 493 (2021) ................................................................................. 16

*Baral v. Schnitt*,
    1 Cal.5th 376 (2016) ............................................................................... 6, 7, 10

*C.W. Howe Partners Inc. v. Mooradian*,
    43 Cal.App.5th 688 (2019) ...................................................................... 7, 11, 16

*Central Valley Hospitalists v. Dignity Health*,
    19 Cal.App.5th 203 (2018) ................................................................................... 9

*City of Alhambra v. D'Ausilio*,
    193 Cal.App.4th 1301 (2011) ............................................................................. 14

*City of Cotati v. Cashman*,
    29 Cal. 4th 69 (2002) ............................................................................ 7, 12, 13, 15

*Copenbarger v. Morris Cerullo World Evangelism*,
    215 Cal.App.4th 1237 (2013) ............................................................................. 11

*Graffiti Protective Coatings, Inc. v. City of Pico Rivera*,
    181 Cal.App.4th 1207 (2010) ............................................................................. 11

*Episcopal Church Cases*, 45 Cal. 4th 467 (2009) .......................................................... 9

*Found. for Taxpayer & Consumer Rts. v. Garamendi Garamendi*,
    132 Cal.App.4th 1375 (2005) ............................................................................. 22

*Gotterba v. Travolta*,
    228 Cal.App.4th 35 (2014) ........................................................................... 13, 14

*Graffiti Protective Coatings, Inc. v. City of Pico Rivera*,
    181 Cal.App.4th 1207 (2010) ............................................................................. 11

*Hawran v. Hixson*,
    209 Cal.App.4th 256 (2012) ............................................................................... 18

*In State Farm General Ins. Co. v. Majorino*,
    99 Cal.App.4th 974 (2002) ................................................................................. 15

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

*Miller v. Zurich Am. Ins. Co.*,
    41 Cal.App.5th 247 (2019) .................................................................................. 10

*Mission Springs Water Dist. v. Verjil*,
    218 Cal.App.4th 892 (2013) ................................................................................. 13

*Monster Energy Co. v. Schechter*,
    7 Cal. 5th 781 (2019) ........................................................................................... 17

*Moore v. Shaw*,
    116 Cal.App.4th 182 (2004) ................................................................................. 22

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) ....................................................................................... 9, 17

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) ........................................................................................ 3, 4

*Nirschl v. Schiller*,
    91 Cal.App.5th 386 (2023) ................................................................................... 16

*Olive Properties, L.P. v. Coolwaters Enterprises, Inc.*,
    241 Cal.App.4th 1169 (2015) ............................................................................... 23

*Park v. Bd. of Trs. of Cal. State Univ.*,
    2 Cal. 5th 1057 (2017) ................................................................................. *passim*

*Park v. Nazari*,
    93 Cal.App.5th 1099 (2023) ................................................................................... 7

*Sprengel v. Zbylut*,
    241 Cal.App.4th 140 (2015) ................................................................................. 16

*Supershuttle Int'l, Inc. v. Lab. & Workforce Dev. Agency*,
    40 Cal.App.5th 1058 (2019) ................................................................................. 14

*Visher v. City of Malibu*,
    126 Cal.App.4th 364 (2005) ........................................................................... 21, 22

*Washington Mut. Bank, FA v. Superior Ct.*,
    24 Cal. 4th 906 (2001) ........................................................................................... 3

*Wentland v. Cass*,
    126 Cal.App 4th 1484 (2005) ............................................................................... 19

*Wilson v. Cable News Network, Inc.*,
    7 Cal. 5th 871 (2019) ............................................................................................. 7

*Woods v. Fox*,
    129 Cal.App.4th 344 (2005) ................................................................................... 9

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

*Zhang v. Jenevein*,
   31 Cal.App.5th 585 (2019) ................................................................... 15

### Federal Statutes

U.S.C. § 1927 ........................................................................................... 22

ADA ........................................................................................................... 9

### State Statutes

Cal. Civ. Proc. Code § 425.16(b) .............................................................. 6

California Code of Civil Procedure § 425.16 ....................................... 3, 15

California Code of Civil Procedure § 425.16(e) ........................................ 7

California Code of Civil Procedure § 425.16, subd. (c) .......................... 21

Declaratory Judgment Act ................................................................ *passim*

Del. Code Ann. tit. 10, §8136 ................................................................... 5

### Other Authorities

Federal Rule of Civil Procedure 12(b)(6) ................................................. 6

Federal Rule of Civil Procedure 56 .......................................................... 6

Federal Rule of Evidence 408 ............................................... 19, 21, 22, 23

Federal Rule of Civil Procedure 11 ........................................................ 16

Second Restatement of Conflict of Laws, Section 187 ............................. 3

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

1
2
3
4
5
6
7
8
9

### INTRODUCTION

This case arises out of the parties' disagreement about the scope of their rights under a private contract—Light Field Lab's 2017 Stock Equity Plan ("Plan"). The parties attempted to resolve their contract dispute but they could not. Thereafter, Light Field Lab filed a suit seeking a judicial declaration that it owes Jones no post-termination rights under the Plan, referencing the parties' discussions for context. The complaint pleads one cause of action sounding in contract. This lawsuit is a "routine contract dispute" and, in all respects, it lacks "the hallmark characteristics of SLAPP suits." *Fourth Age Ltd. v. Warner Bros Ent., Inc.*, 621 F. App'x 465 (9th Cir. 2015).

10
11
12
13
14
15
16

Jones's anti-SLAPP motion highjacks the case Light Field Lab pleaded. Jones claims he anticipates initiating an employment claim, but Jones's hypothetical action is not relevant to the anti-SLAPP analysis. An anti-SLAPP motion is directed to the claim as pleaded. The elements of the pleaded contract claim do not require the presence of protected speech. They also have merit: Jones signed the Plan documents; he consented to their fully-integrated terms; and he agreed the Plan is decisive as to all value he can claim. The Plan documents show Jones is not entitled to any post-termination value from the Plan.

17
18
19
20
21

Jones goes far afield from the pleaded claim, not considering its elements once in his motion. He chooses instead to bombard the court with accusations, one-sided perceptions of events, and legal doctrines that have no place in the anti-SLAPP analysis. This Court must focus on the substantive claim in Light Field Lab's complaint, not procedure or allegations Jones would have included in the complaint.

22
23

California's anti-SLAPP statute does not bar Light Field Lab's complaint for at least three reasons.

24
25

*First*, the contract at issue has a Delaware choice of law provision. Delaware's anti-SLAPP statute controls and is not violated.

26
27
28

*Second*, the gravamen of the complaint is contract. Jones's pre-filing demands do not give rise to the substantive contract claim but are merely context to inform the need for a judicial declaration. To the extent that Jones argues that his prefiling comments give rise to a declaratory

1

1   judgment action, California law is clear that the anti-SLAPP statute does not apply to the

2   declaratory judgment procedure.

3      *Third*, Light Field Lab easily passes the minimal merit test of California's anti-SLAPP

4   statute, which is designed to dismiss completely meritless claims. Light Field Lab pleads all

5   required elements of its contract claim. At the pleading stage, nothing more is required. The

6   documents Jones offers are irrelevant.[1] The host of affirmative defenses Jones briefs to not apply

7   and do not bar the pleaded claim.

8      Jones fails to cite controlling contrary authority. He fails to undertake the required anti-

9   SLAPP analysis. He briefs legal doctrines that do not apply. Jones resorts to arguments about his

10  separate allegations against Light Field Lab that are wholly irrelevant to the issue presented.

11  When the controlling law that Jones omits from his brief is applied to the claim as pleaded, it is

12  clear that his motion is frivolous. Light Field Lab is entitled to recover fees expended in

13  opposition.

14         **<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>**

15     All relevant facts giving rise to Light Field Lab's contract claim are set forth in the

16  Complaint. *See* Dkt. No. 1 and Ex. A.

17     Defendant Jones filed four motions directed to attacking the unamended complaint: (1) a

18  motion for a more definite statement; (2) a motion to dismiss, (3) a second motion to dismiss, and

19  (4) a special motion to strike under California's anti-SLAPP statute. All make overlapping

20  arguments directed to the process by which the parties' dispute arrived in this Court. Jones's

21  fourth motion—the anti-SLAPP motion—recycles many of the arguments briefed in his prior

22  motions. The anti-SLAPP motion, however, is brough under a California statute that does not

23  apply, is not violated, and for which Jones's latest efforts are frivolous.

24

25

26

27

28

---

[1] The documents Jones submits in his Request for Judicial Notice are irrelevant, and therefore insufficient to make a factual attack.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

**LEGAL ARGUMENT**

## I.    DELAWARE LAW APPLIES

Before addressing the merits of Defendant's anti-SLAPP motion, the Court must first address which law applies to the motion. California Code of Civil Procedure § 425.16 only applies to causes of action arising from an act in furtherance of free speech *under the federal or California constitution. See id.* Jones is adamant that no federal law is at issue in this case. (Mot. at 8:4-6). Therefore, California law must apply for Jones's motion to be considered.  It does not, and Jones's motion therefore fails.

### A.    California's Choice of Law Rules Select Delaware Law

The entire legal predicate of Jones's motion is wrong. Jones tells this Court that California law applies because, in this case, subject matter jurisdiction is premised on diversity of citizenship. Jones provides no analysis and does not address the contract's choice of law provision. His assumption that California law applies misstates the law. When a federal court sits in diversity, it applies the forum state's ***choice of law rules***, not the forum state's law by default. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). Here, California's choice of law rules select Delaware law.

The parties stipulated to Delaware law. Specifically, the parties agreed that "[t]he validity, interpretation, construction and performance of this Agreement, *and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto* shall be governed, construed and interpreted in accordance with the laws of the State of Delaware, without giving effect to principles of conflicts of law."  *See* Dkt. No. 1 [Complaint] at Ex. A [Stock Option Agreement] at §13 (emphasis added).

California follows section 187 of the Second Restatement of Conflict of Laws, which provides that a contractual choice-of-law provision generally will be enforced as long as (1) "the chosen state has a substantial relationship to the parties or their transaction, <u>or</u> (2) [] there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992); *see also Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 914-15 (2001).

Burke, Williams & Sorensen, LLP
Attorneys at Law
Oakland

1    The first *Nedlloyd* test is met. "A substantial relationship exists between a party and the

2    state in which that party is domiciled, resides, or is incorporated." *Rojas v. Bosch Solar Energy*

3    *Corp.*, 443 F. Supp. 3d 1060, 1073 (N.D. Cal. 2020). Light Field Lab is incorporated in Delaware,

4    and this dispute arises from a Plan controlled by Delaware law.[2]

5    The second *Nedlloyd* test is also satisfied. There is a reasonable basis for applying

6    Delaware law, as *Nedlloyd* illustrates. In *Nedlloyd*, the court had to determine whether the scope of

7    the choice-of-law provision encompassed the plaintiff's breach of fiduciary duty claim. 3 Cal. 4th

8    at 468. In concluding that the choice-of-law clause controlled, the court found that the shareholder

9    agreement expressly provided for the purchase of shares and created the relationship between

10   shareholder and corporation that gave rise to the cause of action. *Id*. The duties owed, if any, arose

11   from and could only exist because of the shareholders' agreement. *Id*. Courts in this district apply

12   the same analysis to shareholder-related claims. *See Kaul v. Mentor Graphics Corp.*, 2016 WL

13   6249024, at *4 (N.D. Cal. Oct. 26, 2016) (claim derived from Defendant's relationship with

14   Calypto, which arose from the acquisition of Calypto shares). Here, the parties' relationship to

15   each other as corporation and shareholder (or option holder) is created by and emanates from the

16   Plan, satisfying *Nedlloyd*'s reasonable basis test.

17   California's choice of law analysis often includes consideration of California's

18   fundamental policy, but that analysis is not required in this case. Here, the parties agreed that

19   Delaware law should govern "without giving effect to principles of conflicts of law."

20   Consequently, whether the fundamental policy of California is violated is not applicable and

21   Delaware law controls. *See Kaul*, 2016 WL 6249024, at *5.

22

23

_____

24   [2] Jones's employment dispute, if filed, is subject to an arbitration agreement. *Henry Schein, Inc. v.*
     *Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("arbitration is a matter of contract, and

25   courts must enforce arbitration contracts according to their terms."). The agreement governing
     those claims—not at issue in this case—has a California choice of law provision. *See* Yang Decl.

26   attached hereto. California law can be applied in Jones's employment arbitration, if noticed,
     while, at the same time, Delaware law applies in this lawsuit. *See e.g, Rojas*, 443 F. Supp. 3d at

27   1073 (applying Michigan law to disputes arising from the warranty/agreement and California law
     to claims falling outside the warranty).

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

4                          Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

1        The "internal affairs doctrine" provides a separate basis for the application of Delaware

2   law. That doctrine requires courts to apply the law of the state of incorporation to matters

3   concerning the internal affairs of a corporation. *See IQVIA Inc. v. MedImpact Healthcare Sys.,*

4   *Inc.*, 2022 WL 6258369, at *13 (S.D. Cal. Oct. 7, 2022). "The internal affairs doctrine is a conflict

5   of laws principle which recognizes that only one State should have the authority to regulate a

6   corporation's internal affairs—matters peculiar to the relationships among or between the

7   corporation and its current officers, directors, and *shareholders*—because otherwise a corporation

8   could be faced with conflicting demands." *Id.* (emphasis added). The dispute in this case arises

9   over Jones's claim as an option holder, and therefore falls under the internal affairs doctrine. *See*

10  *id.*; *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 121 (N.D. Cal. 2007)

11  ("Internal corporate affairs involve those matters that are peculiar to the relationships among or

12  between the corporation and its current officers, directors, and shareholders.").

13       The parties to the Plan selected Delaware law, which is to be applied uniformly to all

14  disputes brought by any actual or potential shareholder. At issue are stocks and options offered by

15  a Delaware corporation, under an agreement designating Delaware law, for which Delaware has

16  the greater interest in enforcing its laws. The Plan is directed to persons who may or may not be in

17  California. Jones himself is a resident of Washington. There is no reason under California's

18  choice-of-law analysis to apply any law other than Delaware law.

19       **B.    Delaware's Anti-SLAPP Is Not Violated**

20       Under *Erie*, federal courts exercising diversity jurisdiction apply the same rules that state

21  courts would apply to all substantive issues in the case. *See, e.g., Walker v. Armco Steel Corp.*,

22  446 U.S. 740, 750 (1980). Jones agrees that the anti-SLAPP statue is "substantive," also citing

23  *Erie.* (Mot. at 6:3-7).

24       Delaware's anti-SLAPP statute conflicts with the California statute. Delaware's anti-SLAPP

25  statute is much more restrictive; it may only be used by a "public applicant or permittee" or

26  someone who is connected to an entitlement. *See* Del. Code Ann. tit. 10, §8136. The statute

27  "defines 'public applicant or permittee' as 'any person who has applied for or obtained a permit,

28  zoning change, lease, license, certificate or other entitlement for use or permission to act from any

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

5

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

1 government body.'" *Agar v. Judy,* 151 A.3d 456, 472 (Del. Ch. 2017), citing § 8136(a)(4). Jones is

2 not a public applicant or permittee, and Light Field Lab's complaint is not within the narrow scope

3 of Delaware's anti-SLAPP statute.  Jones is not entitled to relief under the applicable law. *Id.* at

4 477.  Jones's motion can be denied on choice-of-law grounds alone.

5 **II.     THE COURT SHOULD DENY JONES'S CALIFORNIA ANTI-SLAPP MOTION**

6 If the Court were to apply California law, the motion still fails.

7 **A.     The Anti-SLAPP Statute's Two-Step Analysis**

8 The analysis of an anti-SLAPP motion proceeds in two steps. *Jordan-Benel v. Universal*

9 *City Studios, Inc.,* 859 F.3d 1184, 1188 (9th Cir. 2017). The first step requires the moving

10 defendant to make a *prima facie* showing that the plaintiff's suit arises from an act in furtherance

11 of the defendant's constitutional right to free speech. *Id.* If the Court finds the defendant's

12 threshold burden has been met, the burden shifts to the plaintiff to demonstrate that the challenged

13 claim is legally and factually sufficient. *Id.*

14 The court reviews anti-SLAPP motions under different dismissal standards. *See Planned*

15 *Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018).

16 "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district

17 court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a

18 claim is properly stated." *Id.* at 834. "[W]hen an anti-SLAPP motion to strike challenges the

19 factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Id.*

20 "The court, without resolving evidentiary conflicts, must determine whether the plaintiff's

21 showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment."

22 *Baral v. Schnitt,* 1 Cal.5th 376, 396 (2016). "[I]n such a case, discovery must be allowed, with

23 opportunities to supplement evidence based on the factual challenges, before any decision is made

24 by the court." *Planned Parenthood*, 890 F.3d at 834.

25 **B.     Step One:  The Contract Claim Does Not Arise From Protected Activity**

26 In the first step of the SLAPP analysis, the court examines whether the plaintiff's cause of

27 action "aris[es] from" an act in furtherance of the defendant's right of petition or free speech in

28 connection with a public issue. *See* Cal. Civ. Proc. Code § 425.16(b).  Here, it does not.

6

1

> **1.** **Jones Fails to Identify a Violation, Thus Failing His Initial Burden**

2

The moving defendant bears the burden of identifying all allegations of protected activity,

3

and the claims for relief supported by them. *Baral*, 1 Cal.5th at 396; *City of Cotati v. Cashman*, 29

4

Cal. 4th 69, (2002) ("A defendant meets [his] burden by demonstrating that the act underlying the

5

plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)").

6

Jones fails to identify any provision of the anti-SLAPP statute he claims to have been

7

violated, and further fails to specify averments in the complaint he contends violate any SLAPP

8

category.[3]  His motion should be denied for failure to meet his initial burden. *See Nguyen v.*

9

*Nguyen*, 2023 WL 4186352, at *4 (N.D. Cal. June 25, 2023) (defendants did not specify how the

10

defendants' actions or speech fall into any of the categories set forth in § 425.16(e) and thus failed

11

to make a prima facie showing at the first step) (internal citation omitted); *Park v. Nazari*, 93

12

Cal.App.5th 1099, 1109 (2023) (the trial court is not required to take on the burden of identifying

13

the allegations susceptible to a special motion to strike).

14

> **2.** **Light Field Lab's Substantive Contract Claim Does Not "Arises From" Protected Activity; It Arises From a Dispute About Contractual Obligations**

15

16

"At the outset, it is important to determine the precise claim at issue."  *Jordan-Benel*, 859

17

F.3d at 1189. "[C]ourts should consider the elements of the challenged claim and what actions by

18

the defendant supply those elements and consequently form the basis for liability." *Catlin Ins. Co.,*

19

*Inc. v. Meredith*, 2021 WL 764042, at *3 (N.D. Cal. Feb. 26, 2021).

20

A claim arises from protected activity only if the speech or petitioning activity *itself* is the

21

wrong being complained of in the complaint, and for which liability is sought. *Park v. Bd. of Trs.*

22

*of Cal. State Univ*., 2 Cal. 5th 1057, 1060 (2017). It is black-letter law that for the plaintiff's claim

23

to fall within a SLAPP, the defendant's activity must supply the elements of the claim. *Id*. at 1063;

24

*Wilson v. Cable News Network, Inc*., 7 Cal. 5th 871, 887 (2019) (defendant must demonstrate that

25

protected activity "supplies one or more elements of a plaintiff's claims."); *C.W. Howe Partners*

26

27

---

[3] To the extent Jones address the substance at all, he admits that the complaint raises a pure contract claim.  (Mot. at 9:11-12).

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

7

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

1   *Inc. v. Mooradian*, 43 Cal.App.5th 688, 700 (2019) ("Courts should only consider the elements of

2   the challenged cause of action as part of an analysis to determine what actions by the defendant

3   form the basis for liability.").

4           Here, the claim elements are directed to the Plan documents, and sound in contract. The

5   question presented is whether Light Field Lab has any ongoing contractual obligation to Jones.

6   Light Field Lab believes that it owns Jones nothing under the Plan—no options, no extension of

7   strike time, and no equivalent value—but it cannot be certain.[4]  It is concerned that if it releases

8   Jones's expired options to other employees, it may be found in breach of the Plan in light of

9   Jones's assertions. The Declaratory Judgment Act "was enacted to afford an added remedy to one

10  who is uncertain [of] his rights and who desires an early adjudication without having to wait until

11  he is sued by his adversary."  *United Food & Com. Workers Loc. Union Nos. 137, 324, 770, 899,*

12  *905, 1167, 1222, 1428, & 1442 v. Food Emps. Council, Inc.*, 827 F.2d 519, 523-24 (9th Cir. 1987)

13  (citation omitted). Light Field Lab's contract-based claim "requests precisely the type of relief that

14  the Declaratory Judgment Act is supposed to provide: a declaration that will prevent future harm

15  from ongoing and future violations before the harm occurs."  *See In re Adobe Sys., Inc. Priv.*

16  *Litig.*, 66 F. Supp. 3d 1197, 1222-23 (N.D. Cal. 2014) (internal citation omitted).

17          Jones is silent about the contract claim pleaded in the complaint. Consequently, he fails to

18  show protected activity supplies any element of the *substantive claim. See Park*, 2 Cal. 5th at 1063

19

20

21  _____

22  [4] Jones concedes he is not entitled to options but insists he can recover their value as employment
    damages.  The Plan controls *all* "value" emanating from options, whether claimed as options or
23  parading as substitute value.  *See* Dkt. No. 1, Ex. A (Stock Incentive Plan) at § 1 Definitions,
    sub.(s) and § 4(c)(i), (vii) (xi).  All "value" is set by the Plan.  *Id.* at § 7(b)(i).  Under the Plan,
24  Light Field Lab owes Jones no money for Plan options, substitute or otherwise.  *See* Dkt. No. 1,
    Ex. A Stock Option Agreement at § 11.  In accepting options, Jones acknowledged that, among
25  other limitations, the Plan does not grant any contractual or other right to receive future options,
    other Awards **or benefits in lieu of Options**, even if Option have been granted in the past.  Jones
26  agreed that rights under the Plan were not compensation and were not part of his wages for any
    purpose, "including but not limited to calculating severance payments, if any upon termination."
27  *Id.*  Jones's attempt to subvert the Plan by masquerading his claim as employment damages only
28  reinforces Light Field Lab's need for declaratory relief.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

(2017) (emphasis added). Jones does not even attempt such a showing.[5]  Instead, he seeks to rewrite the complaint into an employment dispute although employment claims are found nowhere in the pleading. His motion fails because an anti-SLAPP movant cannot reframe the allegations in a pleading to meet its prong one burden. *See Central Valley Hospitalists v. Dignity Health*, 19 Cal.App.5th 203, 218-219 (2018) (defendant could not recast what it claimed the plaintiff's causes of action were based on).

Jones diverts to arguments about the timing and procedure in connection with the complaint, assertions about his own grievances,[6] and to name-calling.  The arguments are frivolous.

### 3.  The Complaints Reference to Triggering Events Is Not a Violation of the Anti-SLAPP Statute

Jones's first diversion is to advance a timing argument. Jones contends that Light Field Lab filing suit after speaking with Jones's former counsel violates the statute. The argument has no merit.

"The mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002) (cited with approval in *Park*, 2 Cal. 5th at 1063); *see also Episcopal Church Cases*, 45 Cal. 4th 467, 477 (2009) ("[T]he mere fact that an action was filed after protected

---

[5] Although not relevant, Jones spotlights his employment claims, instead of the contract issue here. He string cites California cases and out-of-state cases for the proposition that California courts have not yet decided whether stock options are wages.  The cases are inapposite.  For example, in *Woods v. Fox*, the plaintiffs had a *guaranteed* contract and the case concerned on interference with those same contractual rights. 129 Cal.App.4th 344, 348 (2005). Here, Jones did not have an employment contract.  No court has cited *Woods* for the proposition that Jones advances, that options are "wages."  Jones also seeks to evade *Bajorek*, 191 F.3d 1033, by telling this Court that "California courts are not bound by decisions of the Ninth Circuit on matters of California law." (Mot. at 3, n.1).  But this is not a "California court," it is a federal court.  This Court is bound by the Ninth Circuit's interpretation of California law until the California Supreme Court resolves the issue in a contrary way.  *See Simpson v. Philip Morris Inc.*, 2003 WL 23341207, at *8 (C.D. Cal. Nov. 6, 2003).

[6] Jones goes on a tangent when he briefs Title VII, a claim not in the complaint.  According to Jones, a state litigation privilege may not bar federal retaliation claims made pursuant to Title VII and the ADA.  (Mot. at 14:25-26).  The argument is irrelevant; the pleading in this case do not include retaliation claims, and Light Field Lab is not the party asserting a state privilege.

activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such."). A SLAPP will not lie where the identified speech is directed to context, statements that inform, or procedural disputes that fall outside the elements of a substantive claim. *See Baral*, 1 Cal.5th at 394 ("[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute."). To the extent that the complaint refers to Jones's demands, it does so for context and to inform the need for declaratory relief. There has been no SLAPP violation.

The Ninth Circuit interprets California SLAPP law to require more than the presence of protected speech. *See Jordan-Benel*, 859 F.3d at 1190 ("[E]ven if a defendant engages in free speech activity that is relevant to a claim, that does not necessarily mean such activity is the basis for the claim."). *Jordan-Benel* rejects the "but for" argument Jones offers this Court. 859 F.3d at 1192. Like the hypothetical newspaper company and recording artist claims described in *Jordan-Benal*, the prefiling communications at issue here, even if protected, are not the substantive claim but rather inform and provide context for Light Field Lab's request for declaratory relief. *Id., see also Yuga Labs, Inc. v. Ripps*, 2023 WL 7123786, at *1 (9th Cir. 2023) ("While Ripps's broader artistic project may further his rights of free speech, it 'merely provide[s] context' for the alleged conduct underlying Yuga Labs' claims.").

A contract claim is traditionally a private dispute, not impacting public speech. When contract is the substantive claim, California courts routinely find no violation of the anti-SLAPP statute, even if some protected activity is involved.

In *Miller v. Zurich Am. Ins. Co.*, 41 Cal.App.5th 247 (2019), an implied contract case, the court found that counsels' communications did not concern the substantive issue of the Millers' liability but was instead directed to procedural matters. What gave rise to liability was not "the fact of counsels' communications," but rather that Zurich allegedly denied the Millers a benefit for which they were entitled. *Id. at* 258. The SLAPP motion was denied.

1    *C.W. Howe Partners* involved a contract for structural engineering services, and the

2    parties' subsquent dispute about the agreement's terms. 43 Cal.App.5th at 692-693. Plaintiff

3    homeowners filed a SLAPP motion against the cross-complaint, alleging it arose from its

4    protected activity of filing the initial lawsuit. The Court denied the motion finding that although

5    the initial lawsuit was protected activity, the alleged wrongful act that formed the basis for the

6    cross-complaint was the Howe's breach of the agreement. *Id.* at 701. Consequently, the SLAPP

7    motion could not pass step one of the anti-SLAPP test. *Id.*

8        In *Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal.App.4th 1237, 1248 (2013),

9    although the cause of action was triggered by commencement of unlawful detainer proceedings,

10   the action was based on alleged breach of lease, not on the notices themselves which were, at

11   most, evidence of an underlying dispute. There was no anti-SLAPP violation.

12       In *Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, "the prelitigation

13   communications between the City and others [were] helpful in establishing the events leading up

14   to the termination of GPCs contract," and in telling the story. 181 Cal.App.4th 1207, 1215 (2010).

15   But GPC's claims against the City were not "based on those communications." *Id*. The claim was

16   based on the contract. *Id.*  There was therefore no anti-SLAPP violation.

17       Federal courts likewise require more than the presence of protected speech before

18   affording SLAPP protection.

19       In *Catlin Ins. Co.*, the complaint referenced an underlying litigation and settlement

20   agreement, but the presence of those facts in the complaint "simply provide context" for the claim

21   and explained plaintiff's theory. 2021 WL 764042 at *3. The court found the Defendant failed to

22   establish that the causes of action *arise from* protected activity. *Id.* (emphasis added).

23       In *RLI Ins. Co. v. Langan Eng'g, Env't, Surveying & Landscape Architecture, D.P.C.*,

24   2019 WL 6612241, at *2 (N.D. Cal. Dec. 5, 2019), Langan's counterclaim arose from insurance

25   contracts and a dispute over whether RLI acted in bad faith. The dispute had been percolating

26   before the filing of RLI's complaint. *Id.* This Court held, and the Ninth Circuit agreed, that the

27   anti-SLAPP statute was inapplicable because the counterclaim was "based on an alleged

28   underlying course of bad faith conduct broader than [the] complaint alone, making reference to

11

[the] suit merely [as] 'evidence related to liability.'" *RLI*, 834 F. App'x at 362, 363 (9th Cir. 2021) (citation omitted).

Here, what gives rise to the substantive claim is not counsel's communications but rather whether Light Field Lab can be found to have denied Jones any rights under the Plan. Jones has not been sued for pursuing his own claims but rather so that Light Field Lab can obtain a declaration that it owes Jones nothing under the Plan. The dispute pleaded in the complaint concerns the parties' rights and duties under the Plan documents. The Plan existed long before Jones was terminated, before there was a disagreement, and before any pre-filing discussions. While communications with Jones provide procedural context and inform the complaint, they are not an element of the pleaded claim. As in *RLI Ins.*, the dispute between Light Field Lab and Jones has festered too long, and Light Field Lab sued to resolve the dispute. The claim Light Field Lab asks the Court to resolve is steeped in the Plan, not the parties' history about the Plan.

### 4. Facts Pleaded for Relief Under the Declaratory Judgment Act Do Not Violate the Anti-SLAPP Statute

Jones's second diversion is to attack procedure rather than substance. Jones has brought a SLAPP motion against the *declaratory judgment procedure*, although he acknowledges it is not substantive. *Compare* Mot. at 8:4-12, 10:12-14; 11:15, 12:1-3 [challenging declaratory judgment procedure] and 12:21 [conflicting "arises under" with threat to sue for declaratory judgment action]; at 15, heading F ["Plaintiff Cannot Prevail in its Declaratory Judgment Act Complaint—entire section directed to DJ procedure]; at 20:8-10 [seeking to apply *Noerr-Pennington* to DJ procedure, not substantive claim] *with* Mot. at 8, fn. 8 [acknowledging that DJA is procedural only].

The declaratory judgment *procedure* is not itself subject to a SLAPP motion. Jones's argument was long ago rejected by the California Supreme Court.[7] In *City of Cotati*, the court refused to let the use of a declaratory judgment procedure define the dispute for purpose of the anti-SLAPP statute. 29 Cal. 4th at 78. There, mobile home property owners filed a declaratory

---

[7] *City of Cotati* is well-established California law that continues to be cited with approval by the state's highest court, and routinely followed in California courts. *See Park*, 2 Cal. 5th at 1063.

1   relief action in federal court against the City after an unfavorable ordinance was passed. The City

2   then filed a state court suit for declaratory relief against the property owners, and the property

3   owners responded with an anti-SLAPP motion. The Court held that although the City's state

4   action was filed in response to the property owners' federal action, the actual controversy giving

5   rise to both actions, or "the fundamental basis of each request for declaratory relief," was the

6   ordinance; a separate substantive dispute that existed before and independent of the federal

7   declaratory judgment action. *Id.* at 73, 80. The federal court action informed the City that an

8   actual controversy existed, but it did not itself constitute the substance of the controversy. *Id.* at

9   79-80. The Court's reasoning and holding refutes the entire premise of Jones's motion:

10
11
12
13

> "[A] claim filed in response to, or in retaliation for, threatened or actual litigation is not
> subject to the anti-SLAPP statute simply because it may be viewed as an oppressive
> litigation tactic. (citation). That a cause of action arguably may have been triggered by
> protected activity does not entail that it is one arising from such. To focus on City's
> litigation tactics, rather than on the substance of City's lawsuit, risks allowing Owners to
> circumvent the showing expressly required by section 425.16, subdivision (b)(1) that an
> alleged SLAPP *arise from* protected speech or petitioning. (citation)."

14   *Id.* at 78 (internal citation omitted) (emphasis in original).

15       *Gotterba v. Travolta*, 228 Cal.App.4th 35, 52-53 (2014) is directly on point.[8] Gotterba

16   sought declaratory relief against his former employer that were directed to a termination

17   agreement, using the employer's cease and desist letter as evidence of an actual controversy. The

18   trial court denied the employer's anti-SLAPP motion, and the court of appeal affirmed. It reasoned

19   that the complaint was "not based upon [the employer's] sabre-rattling letters;" those letters "may

20   have triggered [plaintiff's] complaint and may be evidence in support of the complaint [but] they

21   are not *the basis of the complaint*." *Id.* at 41-42 (emphasis added). As the court explained,

22

---

23   [8] Jones cites *Mission Springs Water Dist. v. Verjil*, 218 Cal.App.4th 892, 899 (2013), but the
holding in the case is not as represented. (Mot. at 15). The *Mission Springs* court grappled with

24   the contours of standing for challenges to ballot initiatives. *Id.* at 906 ("why the proponent of an
initiative has standing to defend its validity"). The claim at issue was the constitutionality of the

25   proposed initiative, not the declaratory judgment procedure by which it reached the court. *Id.* at
908. The court did not find DJ procedures are proper targets of SLAPP motions; it stated that a

26   claim arising from protected speech presented via a declaratory judgment is not out of bounds—a
proposition that Plaintiff does not dispute. *Mission Springs* did not hold that a SLAPP lies *against*

27   *the DJ procedure itself.* There is simply no way to read the case as Jones posits.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

13

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

"[p]relitigation communications ... may provide evidentiary support for the complaint without being a basis of liability. An anti-SLAPP motion should be granted if liability is based on speech or petitioning activity itself.'" *Id*. at 42. "That protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a [contract] dispute into a SLAPP suit.'" *Id*. The *Gotterba* Court was concerned that "[a]cceptance of [the employer's] arguments would lead to the absurd result that a person receiving a demand letter threatening legal action for breach of contract would be precluded from seeking declaratory relief to determine the validity of the contract. Declaratory relief would be limited to situations where the parties have not communicated their disagreement regarding an asserted breach of contract." *Id*. The reasoning is sound. If the Declaratory Judgment Act is subject to a SLAPP motion simply because pre-filing discussions show a legal controversy, the Act would cease to function, at least in California.

Other cases illustrate the point. In *City of Alhambra v. D'Ausilio*, 193 Cal.App.4th 1301 (2011), the City alleged D'Ausilio was in breach of a settlement agreement. The City sued for breach and for declaratory relief. D'Ausilio filed an anti-SLAPP motion. The trial court denied the motion for failure to satisfy the first prong of the SLAPP test. Step one was not met because the City's suit "did not arise from [his] exercise of free speech or petitioning rights, but from 'the controversy over the validity and enforceability of Section 3.8 of the Settlement Agreement.'" *Id*. at 1305. The Court was clear that "the City's declaratory relief claim involves an actual dispute between the parties regarding the validity of a contract provision and the parties' rights and obligations under that contract provision. The declaratory relief claim arises from a contract dispute; it does not arise from actions taken by appellant in furtherance of his constitutional rights." *Id*. at 1309. The same is true here.

*Supershuttle Int'l, Inc. v. Lab. & Workforce Dev. Agency,* 40 Cal.App.5th 1058 (2019) also informs. There the court addressed "whether an employer can sue for declaratory relief to enforce a superior court judgment unfavorable to the Labor Commissioner without violating the anti-SLAPP statute." *Id*. at 1060. In holding that the declaratory judgment action did not violate the statute, the court found:  SuperShuttle "may well have filed this action in response to the wage

1    claims, but those claims, like the owners' lawsuit in *Cotati*, appear to have simply alerted the

2    Supershuttle entities to the existence of the (continuing) controversy over the drivers'

3    classification." *Id.* at 79. Here, the communications informed Light Field Lab of the controversy

4    about the Plan, but the Plan is the dispute to be resolved.

5        *In State Farm General Ins. Co. v. Majorino*, 99 Cal.App.4th 974, 977 (2002), a declaratory

6    action filed by an insurer against its insured was not a SLAPP because it "arose from the tender of

7    defense and the terms of an insurance policy issued well before the underlying litigation

8    commenced, not from the litigation process itself."). Here, the Plan predates the parties' dispute.

9        As was true in *City of Cotati, Gotterba*, *Alhambra*, *Supershuttle*, and *State Farm*, the

10   controversy giving rise to Light Field Lab's declaratory judgment action is the underlying dispute

11   as to the parties' rights and obligations under the Plan. A declaratory judgment is a procedure by

12   which a claim is submitted for resolution; it is not *the claim*.

13            **5.      Jones's Disparaging Allegations Do Not Meet His Step One Burden**

14       Jones's third diversion is to focus on his competing allegations and to cast dispersions.

15       Jones insists on rewriting history, claiming that he is not bound by statements made by his

16   former attorney and presumptive agent. Jones insists the single communication in which he

17   threatened to sue was directed to his own employment claims, which are subject to private

18   arbitration. (Mot. at 2:8-12, 13:4-6); *see also* Yang Decl. Taking Jones at his word, his claimed

19   protected speech falls outside the anti-SLAPP statute. *See Zhang v. Jenevein*, 31 Cal.App.5th 585,

20   593 (2019) (private contractual arbitration is not a judicial proceeding under section 425.16).

21       Jones asserts that at the time the demand letter was sent, he had no intent to bring claims.

22   *See* Dkt. No. 21 at 2:8-9 ("It was my impression that we were, and my intention and preference

23   remains, to resolve the matter without litigation."); Dkt. No. 24 at 4:19-20 ("I am not legally able

24   to sue until administrative remedies are exhausted, nor do I intend to, nor do I care to form any

25   intent until I am aware whether my termination was unlawful."); Dkt. No. 26 at 7:8-10 (describing

26   his potential claim as "a future event, which has multiple potential outcomes, may or may not

27   occur, and would still leave room for an employee to make a decision as to what they wish to do

28   after completion."). The fact that litigation was uncertain, as stated repeatedly and consistently by

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

Jones, cuts against any finding his communications are protected. According to Jones, at the time of his speech, there was no plan to bring his claims. The speech alleged in his motion is not protected for purposes of a SLAPP motion. *See Nirschl v. Schiller*, 91 Cal.App.5th 386, 404 (2023) (when parties negotiate to resolve a dispute that might ultimately result in litigation—but might also be resolved without litigation—statements made in a pre-litigation negotiation are not automatically protected under the anti-SLAPP law just because they relate to "settlement."); *People ex rel. Allstate Ins. Co. v. Rubin*, 66 Cal.App.5th 493, 501 (2021) ("even communications directly from attorneys were unprotected if they were attempts to resolve claims without filing suit.").

Finally, Jones resorts to inflammatory accusations that do nothing to shore up his defective motion. Jones accuses Light Field Lab of being "false and misleading" (Mot. at 1), seeking "delay" (Mot. at 4), violating Rule 11 (Mot. at 4, n.2), filing a "sham" complaint (Mot. at 11:14), retaliating (Mot. at 13, heading E), and forum shopping (Mot. at 18:17). The allegations are false; Light Field Lab filed suit for the purpose of having the dispute resolved.  But more importantly for the present motion, Jones's inflammatory rhetoric is irrelevant.  The focus of an anti-SLAPP motion is not on the "[plaintiff]'s "litigation tactics," but on the "substance of the [plaintiff]'s lawsuit."  *OM Fin. Life Ins. Co. v. Keel*, 2008 WL 220084, at *5 (N.D. Cal. 2008), citing *City of Cotati*, 29 Cal. 4th at 78; *see also Sprengel v. Zbylut*, 241 Cal.App.4th 140 (2015) (In deciding an anti-SLAPP motion, courts "do not consider the veracity of [the plaintiff's] allegations" or "[m]erits based arguments.").

### C.    Step Two:  Light Field Lab's Contract Claim Has At Least "Minimal Merit"

Because Jones cannot satisfy the threshold burden under the first prong of the SLAPP test, there is no basis for inquiry into the second stage. *See Catlin*, 2021 WL 764042, at *4 ("Because the Court finds that Defendant has failed to establish that Plaintiff's causes of action arise from protected activity, the Court need not address whether Plaintiff has established a probability of prevailing on the merits); *C.W. Howe Partners*, 43 Cal.App.5th at 698 ("If the moving party fails to demonstrate that any of the challenged claims for relief arise from protected activity, the court properly denies the motion to strike without addressing the second step (probability of success.").

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

1    Light Field Lab's second step burden is nominal. "California courts have repeatedly

2  emphasized that '[o]nly a cause of action that lacks even minimal merit constitutes a SLAPP.'"

3  *Manzari v. Associated Newspapers Ltd*., 830 F.3d 881, 887 (9th Cir. 2016) (internal citation

4  omitted). "A plaintiff is not required 'to *prove* the specified claim to the trial court's satisfaction;

5  rather, so as to not deprive the plaintiff of a jury trial, the appropriate inquiry is whether the

6  plaintiff has stated and substantiated a legally sufficient claim." *Id.* To determine whether a

7  plaintiff has substantiated a legally sufficient claim, courts "do not weigh credibility, nor do [they]

8  evaluate the weight of the evidence."  *Id.*; *Navellier*, 29 Cal.4th at 88.

9    In *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781, 795-796 (2019), Monster Energy

10  overcame an anti-SLAPP motion, in part, by demonstrating that its breach of contract claim

11  satisfied the "minimal merit" requirements of prong two based on language in the underlying

12  settlement agreement. Like *Monster Energy*, Light Field Lab can meet its minimal burden with the

13  pleaded Plan contracts. *See* Dkt. No. 1, Ex. A. The Plan documents are contracts, and the legal

14  principles that apply to contracts apply. Jones's claim to rights under the Plan hinges on whether

15  he is bound by the Plan, and whether the Plan terms allow him any options or monetary equivalent

16  post termination. Light Field Lab pleads, and the Plan documents show:

17    (1) Jones signed the documents and consented to their terms (Dkt. No. 1 at ¶¶ 9 and 11, Ex.

18  A at 2, 4-5).

19    (2) The contracts are integrated, barring any argument as to their terms (Dkt. No. 1 at ¶12,

20  Ex. A at 29, 35 (¶13(b) (Stock Option Agreement. at X), and

21    (3) Jones has no claim to options that he left unexercised and forfeited per the agreement.

22  (Dkt No. 1 at ¶¶18, 22 Ex. A at 7; *see Int'l Bus. Machines Corp. v. Bajorek,* 191 F.3d 1033, 1040

23  (9th Cir. 1999) (stock options not wages).

24    Moreover, Jones cannot circumvent the Plan to seek money instead of options, claiming a

25  right to past wages because the Plan clearly states that its benefits are not "wages." (Dkt. No. 1 at

26  ¶ 10; Ex. A at 35 (Stock Option Agreement ¶11, No Acquired Rights) and at 39 (Exercise

27  Agreement at ¶ 6, No Employment Rights).

28    Light Field Lab easily meets its second step burden. *See Monster Energy*, 7 Cal. 5th at 796

17

1    ("In light of the nature and extent of provisions in the agreement here purporting to bind counsel,

2    and the other properly submitted evidence, Monster Energy has met its burden of showing its

3    breach of contract claim has "minimal merit" sufficient to defeat an anti-SLAPP motion.")

4    (citation omitted).

5        As a fallback, Jones asserts that three legal doctrines prevent Light Field Lab from meeting

6    its burden. None do.

7                    **1.    The California Litigation Privilege Does Not Apply**

8        During the second prong of a court's anti-SLAPP analysis, a defendant bears the burden of

9    proving a privilege's applicability. *See Hawran v. Hixson*, 209 Cal.App.4th 256, 278 (2012).

10       The California litigation privilege does not apply here because the pleaded claim is for

11   breach of contract, not tort. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 2006 WL 1817097,

12   at *7 (E.D. Cal. June 30, 2006) ("Because Gallo's breach of contract claim sounds in contract and

13   not in tort, and because the claim does not impinge on Andina's right to resort to this or any other

14   court, or in any other way contravene the policy reasons for the litigation privilege, this court finds

15   the litigation privilege does not bar Gallo's breach of contract claim). Jones is free to bring his

16   tort claims to arbitration, but his potential tort case is not *this case*. This case is a contract dispute.

17   Jones's submissions illustrate that Light Field Lab has not sought to prevent him from bringing his

18   employment claims. *See* Dkt. No. 33, Jones's RJN, Ex. F at ¶ 5.

19       In California, "whether the litigation privilege applies to an action for breach of contract

20   turns on whether its application furthers the policies underlying the privilege." *3500 Sepulveda,*

21   *LLC v. Macy's W. Stores, Inc.*, 980 F.3d 1317, 1327 (9th Cir. 2020), *citing Wentland v. Cass,* 126

22   Cal.App 4th 1484, 1491 (2005) (collecting cases). The availability of the privilege in contract

23   claims turns on whether the policies underlying the privilege are promoted, include "ensur[ing]

24   free access to the courts, promot[ing] complete and truthful testimony, encourag[ing] zealous

25   advocacy, giv[ing] finality to judgments, and avoid[ing] unending litigation." *3500 Sepulveda,* 980

26   F.3d at 1327.

27       Here, as in *Wentland*, the conduct alleged in the complaint is not a communication but

28   instead is wrongful conduct or performance under a contract, and all relevant policies weigh

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

18

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

1   against application of the privilege. There are no weighty policy issues at issue in the Plan, only a

2   private contract. Jones invokes the privilege to block a contractual right to venue in this Court, and

3   to shift the costs of suit to his preferred venue. *See E. & J. Gallo Winery*, 2006 WL 1817097, at *7

4   (litigation privilege did not apply when it would interfere with a bargained-for right to litigate in

5   and shift the costs of litigation). The privilege is used by Jones to prevent full and truthful

6   testimony; Jones cherry-picks pre-filing communications, argues that he can decide which

7   communications are considered (only one letter, not emails) while at the same time invoking FRE

8   408 to preclude Light Field Lab from relying on the same communications, preventing zealous

9   advocacy on a complete record. Jones wields the privilege to avoid a streamlined approach to

10  declaring the parties' rights under the Plan in favor of endless litigation. *See* Dkt. No. 42 at 4:17-

11  21, 6:20-21, 8:14-19. Applying the litigation privilege to this case would undermine the

12  agreements made in the Plan and invite more litigation. There are no grounds for applying the

13  privilege here. *See 3500 Sepulveda*, 980 F.3d at 1327.

14  Jones's reliance on the litigation privilege is misplaced for additional reasons. *First*,

15  Delaware law applies. *Second*, Jones waived California's litigation privilege when he agreed to

16  Delaware law. A plaintiff cannot claim a litigation privilege he has voluntarily released. *See, e.g.,*

17  *Wentland*, 126 Cal.App.4th at 1493 ("[j]ust as one who validly contracts not to speak waives the

18  protection of the anti-SLAPP statute, so too has he waived the protection of the litigation

19  privilege. . . "). *Third*, the privilege is intended to "immunize[] defendants from virtually any tort

20  liability . . ." *Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1233

21  (S.D. Cal. 2021). Jones is not facing any liability in this case, let alone tort liability. *Fourth*,

22  because the issue here is interpretation of a pre-existing contract, Light Field Lab can prove its

23  case without resorting to any litigation statements, rending the privilege inapplicable. Here,

24  Jones's statements do not supply any element of the contract claim.

25  For purposes of the anti-SLAPP's second prong, the litigation privilege poses no bar to the

26  pleaded contract dispute.

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

19

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

### 2. The *Noerr-Pennington* Affirmative Defense Does Not Preclude Light Field Lab's Contract Claim

The *Noerr-Pennington* doctrine provides protection for those who "petition the government for a redress of grievances." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council*, *AFL-CIO*, 31 F.3d 800, 810 (9th Cir. 1994). The doctrine protects those that *file* lawsuits, here Light Field Lab. *See White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) ("The *Noerr-Pennington* doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved.").

Factually, Jones consented to jurisdiction in this court. See Dkt. No. at Ex. A (Option Agreement ¶13). He therefore has no grounds to challenge a venue he agreed to, and *Noerr-Pennington* is not to the contrary.

Legally, the doctrine does not apply here, as Jones concedes. (Mot. at 18) ("While this district had held that the *Noerr-Pennington* doctrine does not apply to claims brought under the Declaratory Judgment Act . . ."), *citing Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F. Supp. 3d 813, 824-25 (N.D. Cal. 2019). In *Cisco*, this Court evaluated the law and found the doctrine inapplicable where "a declaratory judgment claim is not seeking to hold [Plaintiff] liable for its protected activity of filing its complaint." The Court concluded that a claim that seeks a declaration of no liability is outside the ambit of *Noerr-Pennington*. *Id*. Like in *Cisco*, here Light Field Lab does not seek remedies from Jones. Moreover, the declaratory judgment claim does not burden Jones's petitioning rights—he has told the Court he is moving forward with his employment claims. *See* Dkt. No. 42 at 8:14-19.

Jones confuses the anti-SLAPP statute when he suggests *Noerr-Pennington* is grounds to dismiss this lawsuit. Unlike the anti-SLAPP statute, *Noerr-Pennington* is not a true immunity and "does not confer a right not to stand trial." *See Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1140 (9th Cir. 2013). The doctrine is an affirmative defense that Jones must plead and prove. *Id*. at 1141. The anti-SLAPP analysis—the issue presented here—focuses on Plaintiff's claim, as pleaded; it is not concerned with a hypothetical.

At the pleading stage, the facial question is whether Light Field Lab has sufficiently pleaded its claim, not whether it can prove the claim. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 647 (9th Cir. 2009) (reversing trial court for dismissing complaint for lack of support rather than taking pleaded allegations as true); *Planned Parenthood*, 890 F.3d at 835 (factual sufficiency cannot be decided at the pleading stage). If interpreted as a factual challenge, Light Field Lab must be permitted discovery before it is required to prove the defense does not apply. *See Planned Parenthood*, 890 F.3d at 834. No discovery has been taken. With discovery, Light Field Lab will prove that Jones's claim lacks merit. *Cisco Sys., Inc.*, 403 F. Supp. 3d at 824-25; *Select Portfolio Servicing v. Valentino*, 875 F. Supp. 2d 975, 987 (N.D. Cal. 2012 (*Noerr-Pennington* inapplicable because defendant's challenged conduct was based on a settlement agreement term unrelated to the petitioning activity in the underlying lawsuit).

### 3.    Federal Rule of Evidence 408 Does Not Preclude Light Field Lab's Claim

Federal Rule of Evidence 408 poses no obstacle to Light Field Lab's claim. The pleaded claim—contract—does not include proof of a dispute among its required elements. Jones's SLAPP motion is directed to the declaratory judgment procedure, for which FRE 408 is no bar. The Rule permits Rule 408 evidence to show the requirements of the Declaratory Judgment Act are met. *See Rhoades v. Avon Products,* 504 F.3d 1151, 1161 (9th Cir. 2007) (use of correspondence showing threat to sue to satisfy the jurisdiction requirements of an action for declaratory relief is "perfectly acceptable under Rule 408."). Finally, Jones waived his any FRE 408 objection when he submitted settlement-related emails to the Court in his Request for Judicial Notice, placing the documents in the public docket. *See* Dtk. No. 33 at Jones's RJN, Ex. C (emails).

## III.    LIGHT FIELD LAB IS ENTITLED TO RECOVER FEES

Jones's motion fails to meet the minimal standards expected in filings. His motion stands apart from other anti-SLAPP motions in several ways, each of which alone is sufficient to award fees to Light Field Lab. Cumulatively, they compel a frivolous finding, and resulting fees.

The anti-SLAPP statute allows a trial court in its discretion to award attorney's fees against a party that files a frivolous motion. *See* Code Civ. Proc., § 425.16, subd. (c); *Visher v. City of*

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

21

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

1  *Malibu*, 126 Cal.App.4th 364, 371 (2005). The statute does not permit harsh sanctions, but does

2  make mandatory the award of costs and reasonable attorney's fees.  *Id.*

3    If California law does not apply, the Court's sanctioning authority is found in 28. U.S.C. §

4  1927[9] and in the Court's inherent power.[10]  All support sanctions here.

5    Jones failed to meet the bare minimum requirements necessary to make his motion. At a

6  minimum, he had to address the elements of the contract claim. It would not have served him well,

7  so no effort was made. There is simply no justification for filing an anti-SLAPP against a contract

8  claim. Jones agreed to litigation for disputes arising from the Plan.  A dispute arose, and he now

9  finds himself exactly where he agreed to be. A SLAPP motion on these facts fails the straight-face

10  test. Any reasonable attorney would agree that an anti-SLAPP does not lie under these

11  circumstances. The instant motion was "totally devoid of merit." *Moore v. Shaw*, 116 Cal.App.4th

12  182, 200 (2004); *see also Found. for Taxpayer & Consumer Rts. v. Garamendi Garamendi*, 132

13  Cal.App.4th 1375, 1393 (2005) (finding frivolous a SLAPP motion not directed to the substantive

14  claim).

15    Jones omitted controlling authority from his brief; cases that were contrary to his positions.

16  He did so not just once or twice, but repeatedly. Jones omits the California Supreme Court's *Park*

17  opinion, which holds that a motion must be directed to the elements of a pleaded claim. Jones

18  failed to cite the Ninth Circuit's *Jordan-Benel* holding that, like *Park,* requires consideration of

19  the substantive claim. He failed to cite controlling Ninth Circuit authority that showed his FRE

20  408 argument, and others, meritless.  Had Jones cited and applied controlling authorities, he could

21  not have presented the side-show evidenced in his moving papers. *See e.g., Park*, 2 Cal.5th at

22

---

23  [9] Pursuant to 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case
24  unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,
   expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under §
25  1927 requires a finding of bad faith or recklessness.  "Bad faith is present where an attorney
   knowingly or recklessly raises a frivolous argument." An argument is frivolous if it is "wholly
   without merit" or "the result is obvious." *See Kailikole v. Palomar Cmty. Coll. Dist.*, 2020 WL
26  6203097, at *1 (S.D. Cal. Oct. 22, 2020) (internal citation omitted).

27  [10] District courts has the inherent authority to impose sanctions for bad faith, which includes a
   broad range of willful improper conduct when bad faith is present, including sanctioning for
28  reckless misstatements of law and fact.  *See Fink v. Gomez*, 239 F.3d 989, 992-993 (9th Cir.
   2001).

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

22                    Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

1  1063 ("courts should consider the elements of the challenged claim and what actions by the

2  defendant supply those elements and consequently form the basis for liability.").  In his motion,

3  Jones cites 124 cases to becloud the correct legal test.[11]  Consequently, his motion provides no

4  reasonable basis for his assertion that the complaint arose from protected activity.  *Areias v.*

5  *Applied Underwriters, Inc*., 2021 WL 9598132, at \*12 (N.D. Cal. Oct. 19, 2021); *see also Olive*

6  *Properties, L.P. v. Coolwaters Enterprises, Inc*., 241 Cal.App.4th 1169, 1177 (2015) (motion

7  found frivolous when "an ordinary review of established legal authorities would have disclosed

8  the inadequacies of the motion.").

9          Jones brought a SLAPP motion to sanction a procedural device incidental to the core

10  contract claim, and therefore beyond the reach of the anti-SLAPP statute. The California Supreme

11  Court's holding in *City of Cotati* is clear that a DJ action is not a *claim* for purposes of a SLAPP

12  motion. While Jones references *Cotati* in his motion, he does so for an unrelated point, and fails to

13  address its declaratory judgment holding.

14          Jones exasperated the problem, and sought to further confuse, by asserting that the

15  California litigation privilege applies to the DJ action, when this case sounds in contract. He failed

16  to cite *3500 Sepulveda*, 980 F.3d 1317, 1327, which is contrary authority. Jones took the same

17  approach to his FRE 408 argument despite controlling law—uncited in his brief—to the contrary.

18  *See Rhoades,* 504 F.3d at 1161.

19          In considering whether there is an excuse for Jones's lack of candor and frivolous

20  arguments, the Court should consider Jones's attorney's own words. In a sworn declaration

21  Jones's attorney, Frank S. Moore, submitted to a California court in *Lai v Wang*, he asserts he has

22  been licensed to practice law since 1992, and has extensive experience in filing SLAPP motions.

23  *See* Peden Ex. A at ¶¶ 8, 10.  Representing Wang, Moore filed a SLAPP directed to what he

24  labeled a "bare bones" contract claim. *Id*. at ¶ 3. Moore based his motion on similar allegations:

25  that the Plaintiff filed suit first, threatened to sue, and did so without meeting statutory

26

27  ───────────────────────────

28  [11] All but 14 of Jones's cases predate *Park*.  Many of the 14 that post-date Park are out-of-state or out-of-circuit, and not directed to SLAPP issues.  None set forth the required legal test.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

23          Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

1   requirements. *Id.* at ¶¶ 3-4. Moore negotiated a fee that compensated him for an anti-SLAPP

2   motion, which he would recover from motion's target rather than his client. *Id.* at ¶ 5. Here, Moore

3   follows the same playbook—allegations that a properly pleaded contract claim is insufficient,

4   complaining that Light Field Lab filed first, and disparaging his opponent. But in this case, he

5   advances his standard SLAPP arguments without citing controlling law or referencing the

6   complaint or the Plan. Given Moore's years of practice, and his expertise in anti-SLAPP

7   procedures, the Court can conclude that the omissions plaguing his brief were not inadvertent.

8       There is evidence that the motion was filed for purposes of delay and harassment. Jones's

9   Case Management Statement positions detail the delay he seeks, irrespective of the outcome of his

10  meritless motion. *See* Dkt. No. 42 at 7:25-28. While Jones cannot prevail on the merits, he can

11  stall, forcing Light Field Lab to await resolution on a matter pressing enough to merit request for

12  declaratory relief. Likewise, there is evidence of efforts to harass. Light Field Lab filed a single

13  complaint. Jones responded with multiple dismissal motions, presently at four, with more

14  promised. *See* Dkt. No. 42 at ¶ 4. Jones says he will seek to depose Light Field Lab's lead counsel,

15  further indicating an intent to harass. *See id.* at 7:1. Jones's planned course is clear, and the Court

16  should not condone his tactics. Jones invoked the anti-SLAPP statute as a weapon against Light

17  Field Lab, increasing its fees after filing three other duplicative motions. Jones's fourth motion

18  was entirely lacking in merit. He cannot be heard to complain when ordered to pay fees under the

19  statute he opted to insert into this case.

20      Light Field Lab is not a large company, and the fees spent on responding to Jones's motion

21  are meaningful to the company. Jones's motion was frivolous, and Light Field Lab should not pick

22  up the tab. To the extent that Jones presents any mitigating argument in Reply, the Court can

23  consider them when it determines the amount of fees.

24                          **<u>CONCLUSION</u>**

25      For the forgoing reasons, Light Field Lab respectfully requests an order denying Jones's

26  anti-SLAPP motion and finding the motion to be frivolous.

27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Oakland

Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

1   Dated:  January 19, 2024            BURKE, WILLIAMS & SORENSEN, LLP

2

3                            By:

4                                   Patricia L. Peden

5                                   Ghazaleh Modarresi
                                     Attorneys for Light Field Lab

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

25                        Case No. 4:23-cv-05344-YGR
LIGHT FIELD LAB'S OPPOSITION TO
JONES'S SPECIAL MOTION PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE

**CERTIFICATE OF SERVICE**

This is to certify that on the 19th day of January 2024, I electronically filed the foregoing LIGHT FIELD LAB'S OPPOSITION TO DEFENDANT ALAN JONES'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE using the Court's CM/ECF filing system which sends notification of such filing to all parties and/or counsel of record.

FRANK S. MOORE, SBN 158029
Law Offices of Frank S. Moore, APC
235 Montgomery Street, Suite 440
San Francisco, California 94104
Telephone: (415) 292-6091
Facsimile: (415) 292-6694
fsmoore@pacbell.net

Attorney for Defendant Alan Jones

Dated: January 19, 2024                    BURKE, WILLIAMS & SORENSEN, LLP

By: _____
                    Patricia L. Peden
                    Ghazaleh Modarresi
                    Attorneys for Light Field Lab