FRANK S. MOORE, SBN 158029
Law Offices of Frank S. Moore, APC
235 Montgomery Street, Suite 440
San Francisco, California 94104
Telephone:    (415) 292-6091
Facsimile:     (415) 292-6694
fsmoore@pacbell.net

Attorneys for Defendant Alan Jones

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIGHT FIELD LAB, <br><br> Plaintiff, <br><br> vs. <br><br> ALAN JONES, <br><br> Defendant. | No. 4:23-CV-05344-YGR <br><br> **DEFENDANT ALAN JONES'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE** <br><br> [Cal. Code of Civ.Proc., 425.16; <br> Fed. R. Civ. Pro. 12(b)(6)] <br><br> Date:  February 13, 2024 <br> Time:  2:00 p.m. <br> Place:  Courtroom 1 – 4th Floor <br><br> Honorable Yvonne Gonzalez Rogers <br><br> **DEMAND FOR JURY TRIAL** |

**INTRODUCTION AND SUMMARY OF REPLY**

Plaintiff's opposition to defendant's special motion to strike its Complaint under California's anti-SLAPP statute is almost as disingenuous as its Complaint is.  Plaintiff ignores the relevant California law governing such motions and claims, without analysis, that "the gravamen of the complaint is contract."  Defendant demonstrated otherwise in his moving papers, but plaintiff simply ignored it in their opposition. The opposition is so poorly conceived as to make a mockery of the process.

Plaintiff spends five pages of its opposition on a "choice of law" argument that has no bearing on the analysis of the gravamen of its Complaint.  This is done in furtherance of its canard that the gravamen of plaintiff's Complaint sounds in contract when defendant proved to the contrary.  In addition to dressing up its attack on JONES's primary rights in his employment-related claims in the false shroud of "contract," it now claims that its one cause of action implicates "internal affairs doctrine" of Delaware

law governing corporate bodies. The contention is without merit as it, again, ignores the "gravamen" test California applies procedurally to such mislabeling of claims.

Regardless, if this Court does not dismiss the Complaint for lack of subject matter jurisdiction based on defendant's competing motion to dismiss (Dkt. #32), plaintiff's failure to meet its burden of demonstrating "minimal merit" of its one cause of action under the Declaratory Judgment Act with actual evidence (plaintiff mistakenly relies solely on its Complaint in its attempt to meet this burden, a fundamentally fatal flaw) means that defendant's motion must be granted unless this Court decides the jurisdictional question against plaintiff and determines this special motion to strike is therefore moot.

**A.    Plaintiff's Choice of Law Argument is Fatally Flawed**

Plaintiff, without evidentiary support, merely contends in its opposition that "gravamen of the complaint is contract" without any analysis. Dkt. #46, p. 8:26. Based on this thin reed, plaintiff invokes its "choice of law" (Delaware) that is found in its stock option plan. This contention conveniently ignores the unrebutted evidence defendant put forth in his moving papers that the gravamen of plaintiff's complaint is based on a "threat to sue" and that the only "threat" ever made by his former counsel was over employment-related claims.

When a litigant invokes a foreign state's law, federal courts sitting in diversity apply the same choice of law rules that the forum state would. See *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Plaintiff concedes that its Complaint is based solely on diversity jurisdiction. Dkt. #46, p. 10:13-14. Federal courts sitting in diversity apply the procedural choice-of-law rules of the forum state. *Alaska Airlines, Inc. v. United Airlines, Inc.,* 902 F.2d 1400, 1402 (9th Cir.1990). California has adopted the governmental interest approach to interstate conflict of law problems. See *Reich v. Purcell,* 67 Cal.2d 551, 555 (1967).

Under the governmental interest approach, when a true conflict between the laws of two jurisdictions exists, the court must compare the extent to which each state's interest would be impaired by application of the other state's law, and then apply the law of the state whose policy would be most impaired. *Nelson v. International Paint Co.,* 716 F.2d 640, 644 (9th Cir.1983). Plaintiff claims that, because it falsely asserts a contractual dispute as the gravamen of its one cause of action under the Declaratory Judgment Act, that Delaware law ***must*** apply because plaintiff's stock options plan has a

2

Delaware choice of law provision in it. Dkt. #46, p. 10:15-16 ("Here, California's choice of law rules select Delaware law.") However, here no true conflict exists because the notion that the dispute between the parties "sounds in contract" is a lark.

In *Blatty v. New York Times Co.,* 42 Cal.3d 1033 (1986), the California Supreme Court rejected similar attempts as what LIGHT FIELD LAB is attempting in this case to avoid the rigorous First Amendment protections available to litigants by simply mislabeling the claims. *Id.,* at 1048. This California "gravamen" approach to fictitious choice of law claims *Blatty* requires has been applied in this district. See *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.,* 946 F.Supp.2d 957, 977 (N.D. Cal. 2013) (applying *Blatty*).

Delaware courts, like California courts, are free to look past the nomenclature and determine what the plaintiff's dispute with the other party is about. See *Sonne v. Sacks*, 314 A.2d 194 (Del.1973) (here, the Court found that the gravamen of the appellant's claim was action upon the checks, not the claim for wages); *Poole v. N.V. Deli Maatschappij*, 224 A.2d 260 (Del.1966) (here, the Court looked at the gravamen of the action); see also *Liborio II, L.P. v. Artesian Water Co., Inc.,* 593 A.2d 571, 574–55 (Del.Super.Ct.1990) (stating that "[t]he Court must look behind these contentions, examine the gravamen of plaintiffs' action").

The "gravamen" approach, whether applying Delaware law or California law, does not support plaintiff's assertion that the "threat" JONES's lawyer framed was one concerning plaintiff's stock options plan. In short, even Delaware courts would find plaintiff's Complaint to be about JONES's pre-litigation demands for redress for his employment-related claims, not the fanciful "sounding in contract" chimera plaintiff conjures. As demonstrated in JONES's moving papers, the entire gravamen of plaintiff's Complaint arises out of a pre-litigation demand letter and subsequent settlement negotiations between plaintiff's counsel and JONES's former counsel over his employment-related claims. Given that there is no actual conflict of the laws of both California and Delaware arising from plaintiff's sham contention, plaintiff's choice of law argument is unavailing. That should end the analysis.

Yet, if this Court needed to go beyond that and continue to entertain the fiction plaintiff dwells in, the plaintiff's stock options plan cannot be used as a vehicle to deprive a California-based employee from applying its choice of law contractual provision to deny JONES his primary rights in employment

or to chill his petitioning conduct in the form of a pre-litigation settlement demand. California courts have repeatedly held, as a matter of state law, that California's anti-SLAPP rule is "procedural" in nature and therefore applies in California courts regardless of which source of law governs a plaintiff's claim. See, e.g., *Bradbury v. Superior Court,* 49 Cal.App.4th 1108, 1118 (1996) ("Where the action is founded on a federal statute and brought in state court, state procedure controls unless the federal statute provides otherwise. The Legislature, in enacting section 425.16, recognized that all kinds of claims could achieve the objective of a SLAPP suit." (internal citations and quotation marks omitted)). Moreover, even if California state law required a "substantive" choice-of-law analysis using California's "governmental interest analysis" approach, *Sullivan v. Oracle Corp.,* 51 Cal.4th 1191, 1202 (2011), the anti-SLAPP rule would still apply. *Liberty Synergistics Inc. v. Microflo* Ltd., 718 F.3d 138, 155 (2nd Cir. 2013) .

Furthermore, federal district courts sitting in California have found a fundamental conflict between California and other states on the enforceability of various restrictive employment covenants. See *Stryker Sales Corp. v. Zimmer Biomet, Inc.,* 231 F. Supp. 3d 606, 621 (E.D. Cal. 2017); see also *Philo v. Giftango LLC*, No. 13CV0094 JM(BLM), 2013 WL 12097545, at *3 (S.D. Cal. Feb. 7, 2013). California Labor Code section 925 provides: "An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would ...: [¶] (1) Require the employee to adjudicate outside of California a claim arising in California." (Cal. Lab. Code § 925, subd. (a).) "Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute." (Cal. Lab. Code § 925, subd. (b).) "California Labor Code § 925 ("Section 925") makes voidable the choice of law provisions in the Agreements. . . ." *Eller v. Automatic Data Processing, Inc.,* 2023 WL 3829723 at *4 (S.D. Cal. June 5, 2023).  Delaware courts have ruled that California's law prevails: *Focus Financial Partners, LLC v. Holsopple,* 241 A.3d 784 (2020) (applying Delaware law "would offend a fundamental policy of the State of California on a matter where California has a materially greater interest"; the defendant employee was entitled to void the Delaware forum and Delaware law provisions under section 925). Thus, no matter how far the Court wants to indulge plaintiff, their choice of law argument falls flat.

**B.    Plaintiff Failed to Rebut That the Gravamen of Its Complaint Arises Out of Defendant's Petitioning Conduct**

"Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the plaintiff's causes of action." *Coretronic Corp. v. Cozen O'Connor,* 192 Cal. App. 4th 1381, 1390, 1389 (2011); see also *City of Cotati v. Cashman,* 29 Cal.4th 69, 78 (2002) (the court must "focus ... on the substance of [the] lawsuit") (cited with approval in *Welk Resort Group Inc. v. Reed Hein & Associates, LLC.,* 2019 WL 1242446, *2 (S.D. Cal. March 18, 2019)). "'The court reviews the parties' pleadings, declarations and other supporting documents to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.' *Coretronic Corp.,* 192 Cal. App. 4th at 1389." *Welk.*

Plaintiff has a penchant for avoidance in its oppositions to JONES's pleadings.  The tactic does not advance its cause. Continuing to re-frame the conduct it complained of in its Complaint as something it is not is unavailing. "Jones is silent about the contract claim pleaded in the complaint." Dkt. #46, p. 15:17.  Not true.  Defendant demonstrated factually that plaintiff's Complaint is based on, triggered by and arises out of its assertion of Defendant's "threat to sue" contained in 4 separate factual averments in the Complaint. Dkt. #1 (Complaint, p. 2, 6-7, ¶¶4, 30.) Dkt. #31, p. 13:7-17.

In its opposition, plaintiff makes further unsupported contentions; "Here, the claim elements are directed to the Plan documents, and sound in contract." Dkt. #46, p. 15:4.  Plaintiff's claim does not, it is directed toward JONES's "threat to sue." Dkt. #1 (Complaint, p. 2, 6-7, ¶¶4, 30.)  Indeed, if the dispute between the parties was solely about "the Plan documents," why did LIGHT FIELD LAB find it necessary for JONES to "fully release[] and discharge[] *any claim for damages* arising under the Plan" in an unsolicited "Release and Covenant Not to Sue" they sent to him while he was unrepresented by counsel if this was solely about a contract claim?  Counsel for LIGHT FIELD LAB revealed precisely what their client's lawsuit is designed to do: to foreclose a damages claim for lost stock options flowing from JONES's inchoate employment-related claims. (RELEASE AND COVENANT NOT TO SUE – Exhibit "F" to RJN [Bates Nos. 075-080 Dkt. ##33-6, 37; see also Dkt. #47-5].)

"The question presented is whether Light Field Lab has any ongoing contractual obligation to Jones. Light Field Lab believes that it owns Jones nothing under the Plan—no options, no extension of

*LIGHT FIELD LAB v. ALAN JONES,*                                                                                      Case No. 4:23-CV-05344-YGR

DEFENDANT ALAN JONES' NOTICE OF SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                                                      5

strike time, and no equivalent value—but it cannot be certain." Dkt. #46, p. 15:4-7. The actual dispute, what gave rise to it from JONES's "threat to sue," does not involve the "Plan." Plaintiff's continued insistence does not make it true – it is simply a ruse designed to feign concern over phantom investors purportedly aghast at the fact that plaintiff created a public forum to damage itself by falsifying claims against JONES. JONES proffered his declaration in support of his SLAPP motion in which he stated:

> At no time prior to plaintiff's Complaint filed on October 19, 2023, did I have any direct communications with plaintiff or its counsel related to any claims I intended to bring and relied entirely on Mr. Buerger to communicate them on my behalf. At no time did I authorize Mr. Buerger to make or articulate a claim for stock options under a contractual theory and to my knowledge he never did as reflected both in his letter (Exhibit "B" to RJN) and the email correspondence (Exhibit "C" to RJN.) My communications with plaintiff's counsel after the Complaint was filed did not involve the merits of the case but only matters concerning my responsibilities as a reluctant litigant as a named defendant in this action.

Dkt. #34, p. 2, ¶5 of 4.

In deciding whether the lawsuit arises from a protected act, courts are to look not only to the pleadings, but also to the underlying "gravamen or principal thrust" of the action. *Episcopal Church Cases,* 45 Cal.4th 467, 477 (2009); *Ojjeh v. Brown,* 43 Cal.App.5th 1027, 1038 (2019) ("In addition to the complaint's allegations, the parties' evidentiary submissions reinforce our conclusion that the lawsuit targets defendants' affirmative conduct."); *Wilson v. Cable News Network, Inc.,* 7 Cal.5th 871, 887 (2019) [courts must look beyond pleadings to consider any party evidentiary submissions at first step]; *Salma v. Capon,* 161 Cal.App.4th 1275, 1286 (2008) (looking to declaration in first prong analysis where conduct was "only vaguely described in the cross-complaint".)

The undisputed facts are that the "threat" or "wrong" plaintiff complains of in its Complaint could only have arisen out of the communications between JONES's former lawyer, Alex Buerger, Esq., and LIGHT FIELD LAB's lawyers, Patricia L. Peden, Esq., and Ghazaleh Modarresi, Esq., over the course of July 12, 2023, through October 12, 2023, as demonstrated through the correspondence submitted in support of defendant's motion, notably, Exhibits "B," "C and "F" to RJN. See also Dkt. ##47-1, 47-2 and 47-5. Mr. Buerger spoke through this correspondence for JONES. Ms. Peden and Mr. Modarresi spoke for their client, LIGHT FIELD LAB, over the purported "threats" that give rise to plaintiff's Complaint. There were no other individuals involved in communications over the dispute other than Alex Buerger, Esq., and Patricia L. Peden, Esq., and Ghazaleh Modarresi, Esq.

None of those communications involve a dispute over the contractual basis of a claim for loss stock options under LIGHT FIELD LAB's stock incentive plan. If there had been, it was incumbent upon Patricia L. Peden, Esq., and/or Ghazaleh Modarresi, Esq. to place that card on the table, rebut defendant's showing that the gravamen of plaintiff's claim over the harm it claims from JONES's "threats" related solely to a damages claim for employment-related discrimination and retaliation, and affirmatively demonstrate that their client's lawsuit did not involve a "threat to sue" over employment-related claims. They are the only witnesses advancing the "sounds in contract" narrative capable of doing so – they signed the plaintiff's Complaint – and they are now noticeably silent, choosing to remain on the sidelines now that their client's sham Complaint has been exposed based on its true gravamen.

Despite defendant's showing, plaintiff again engages in more gas-lighting, to wit: " Jones fails to identify any provision of the anti-SLAPP statute he claims to have been violated, and further fails to specify averments in the complaint he contends violate any SLAPP category." Dkt. #46, p. 14:6-8. Yet, it appears in black and white in JONES's moving papers:

> A demand letter sent in anticipation of litigation is a legitimate speech or petitioning activity that is protected under California's Code of Civil Procedure section 425.16. *Briggs v. Eden Council for Hope & Opportunity,* 19 Cal.4th 1106, 1115 (1999) ("'communications preparatory to or in anticipation of the bringing of an action or other official proceeding' " are protected by section 425.16); *Malin v. Singer,* 217 Cal.App.4th 1283 (2013) (same). In *Neville v. Chudacoff,* 160 Cal.App.4th 1255 (2008), the California Court of Appeal found that a statement made before the initiation of litigation can be considered to be "in connection with" litigation pursuant to section 425.16(e)(2) "if [the statement] relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." *Id.,* at 1266. If a prelitigation statement is made "in anticipation of litigation contemplated in good faith and under serious consideration," it is protected. *Id.* at 1269.

Dkt. #31, p. 25:6-17. JONES amply demonstrated that the "threat to sue" referred to four times in plaintiff's Complaint has its origin in the demand letter. Ignoring this contrary evidence leaves JONES's evidence unrebutted, which necessarily means that JONES made his "threshold or "initial *prima facie* showing that the plaintiff's suit arises from an act in furtherance of defendant's right of petition or free speech." *Braun v. Chronicle Publ'g Co.*, 52 Cal.App.4th 1036, 1042-43 (1997) (*prima facie*); *Smith v. Levine Leichtman Capital Partners, Inc.,* 723 F.Supp.2d 1205, 1213 (N.D. Cal. 2010) (threshold).

**C.      Plaintiff Failed to Show "Minimal Merit" of Its Cause of Action in Its Opposition and Fatally Relies Solely on the Averments of Its Complaint**

If the initial evidentiary burden is met by the moving party, as JONES did here, the burden shifts to the party opposing the motion to avoid dismissal of the action. *Simmons v. Allstate Ins. Co.*, 92 Cal.App.4th 1068, 1073 (2001); *Baral v. Schnitt,* 1 Cal.5th 376, 384 (2016); Code Civ.Proc., § 425.16(b).)  To demonstrate a probability of prevailing on the merits is by showing that its claim has "'at least "minimal merit." ' " *Bonni v. St. Joseph Health System,* 11 Cal.5th 995, 1009 (2021).  LIGHT FIELD LAB's burden at this second anti-SLAPP step is "a low one, requiring only a showing that a cause of action has at least 'minimal merit within the meaning of the anti-SLAPP statute' " *Monster Energy Co. v. Schechter,* 7 Cal.5th 781, 793 (2019).

Here, LIGHT FIELD LAB merely relies on its demonstrably false assertion that JONES's "threat to sue" over his employment-related claims "sound in contract" as pointed out above. Dkt. #46, p. 15:4. However, in meeting the "minimal merit" burden on the second prong of the SLAPP motion to strike, the plaintiff's proof must be made upon competent admissible evidence. *Oviedo v. Windsor Twelve Properties, LLC,* 212 Cal.App.4th 97, 109 (2012); *Language Line Services, Inc. v. Language Services Associates, LLC,* 2011 WL 5024281 at *5 (N.D. Cal. October 13, 2011). "An anti-SLAPP motion is an evidentiary motion . . . the court [must] rely on admissible evidence [in resolving the second prong], not merely allegations in the complaint or conclusory statements by counsel.*" Finton Constr., Inc. v. Bidna & Keys, APLC,* 238 Cal.App.4th 200, 213 (2015).

As noted above, the only witnesses who had any personal knowledge that could speak to the contention that JONES's proxy's "threat to sue" sounded in contract was Patricia L. Peden, Esq., and Ghazaleh Modarresi, Esq., and they remained silent except for engaging in the dubious tactic of digging out a declaration of JONES's current counsel (Frank S. Moore) in an unrelated SLAPP suit (*Lai v. Wang, et al.,* Santa Clara County Superior Court Case No. 17CV308093) to falsely contend that "Moore negotiated a fee that compensated him for an anti-SLAPP motion, which he would recover from motion's target rather than his client." Dkt. #46, p. 31:1-2.  Plaintiff relies on a declaration in support of an award of fees, not a "negotiation."  It is as if counsel for plaintiff doesn't read the sources from which they submit.

The truth of the matter is that, like here, a reckless member of the bar, Xiaoyong Lai, filed a baseless contract lawsuit (among other nonsense claims), was deemed by both the Santa Clara Superior Court and California's Sixth Appellate District[1] (2023 WL 3331306) to be a SLAPP lawsuit, resulted in an award of attorneys' fees and costs in the amount of approximately $180,000 to those that Frank S. Moore represented, forcing the hapless Xiaoyong Lai into bankruptcy court in this district on a Chapter 11 petition (*In re: Xiaoyong Lai*, Northern District Bankruptcy Court, Case No. 23-51382) for further proceedings involving Mr. Moore where he intends to prove Mr. Lai engaged in a "willful and malicious" meritless lawsuit undeserving of discharge in bankruptcy. There was no "negotiated fee" by Mr. Moore in the *Lai v. Wang, et al.,* case as plaintiff falsely represents given that Mr. Moore doesn't negotiate with bullies. Ask Mr. Lai.

## **CONCLUSION**

For the reasons set forth herein, JONES submits that plaintiff continues to mislead and misdirect this Court. Defendant demonstrated that the gravamen of plaintiff's Complaint arises out of his petitioning conduct and plaintiff did not show a probability of prevailing on the merits. If this Court retains jurisdiction and does not moot JONES's special motion to strike by dismissing the Complaint for lack of subject matter jurisdiction, JONES will seek an award of attorneys' fees pursuant to Code of Civil Procedure section 425.16, subdivision (c), should he be found the prevailing party on this motion. Otherwise, he will seek them as damages for retaliatory conduct in his employment-related claims.

Dated: January 22, 2024                    Respectfully submitted,


                                           /s/ Frank S. Moore
                                           Frank S. Moore
                                           Attorney for defendant Alan Jones

---

[1]    *X. Young Lai V. Wen Fang Wang et Al.*, Sixth District Court of Appeal Case No. H047118.

**CERTIFICATE OF SERVICE**

This is to certify that on the 22nd day of January 2024, I electronically filed the foregoing DEFENDANT ALAN JONES'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE using the Court's CM/ECF filing system which sends notification of such filing to all parties and/or counsel of record.

Patricia L. Peden (SBN 206440)
E-mail: ppeden@bwslaw.com
Ghazaleh Modarresi (SBN 259662)
E-mail: gmodarresi@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1999 Harrison Street, Suite 1650
Oakland, California 94612-3520

Counsel for plaintiff LIGHT FIELD LAB

Dated: January 22, 2024                     Law Offices of Frank S. Moore


                                            */s/Frank S. Moore*
                                            Frank S. Moore
                                            Attorney for defendant Alan Jones