FRANK S. MOORE, SBN 158029
Law Offices of Frank S. Moore, APC
235 Montgomery Street, Suite 440
San Francisco, California 94104
Telephone:    (415) 292-6091
Facsimile:    (415) 292-6694
fsmoore@pacbell.net

Attorneys for Defendant Alan Jones

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIGHT FIELD LAB, | No. 4:23-CV-05344-YGR |
| Plaintiff, | **DEFENDANT ALAN JONES'S REPLY TO PLAINTIFF'S OPPOSITION TO SECOND MOTION TO DISMISS** |
| vs. | [Fed. R. Civ. Pro. 12(b)(1) and/or 12(b)(6)] |
| ALAN JONES, | Date:    February 13, 2024 |
| Defendant. | Time:   2:00 p.m.<br>Place:   Courtroom 1 – 4th Floor |
| | Honorable Yvonne Gonzalez Rogers |

**DEMAND FOR JURY TRIAL**

**INTRODUCTION AND SUMMARY OF REPLY**

Plaintiff's opposition to defendant's Second Motion to Dismiss is long on irrelevant and bogus legal arguments (replete with a choice of law argument) none of which address the elephant in the room: Defendant made an evidentiary showing that the gravamen of plaintiff's Complaint has nothing to do with its stock incentive plan and everything to do with plaintiff's employment-related claims and, as so demonstrated, plaintiff cannot demonstrate an actual case in controversy sufficient to meet Article III subject matter jurisdiction even under diversity jurisdiction for which it has the burden of demonstrating.

Plaintiff chose not to engage in the factual dispute by demonstrating that evidence exists supporting its claim that the "threat" JONES engaged in solely through his former counsel involved a contractual interpretation of its stock option plan or that those employment-related claims sound solely in contract warranting this Court to wade into JONES's property rights in his chose of action by giving

---

plaintiff what it wants: a legal diktat that JONES may not obtain the lost value of expired stock options as a form of damages in his inchoate employment-related claims.

Whether the arguments advanced by the plaintiff are purely the consequence of ignorance of the law governing an aggrieved former employee's employment-related primary rights under California's primary rights doctrine, or as what it appears to be – the mean-spirited and retaliatory conduct of a former employer attempting to trample on its former employee's rights – is of no moment for the moment. Regardless of its cause, plaintiff's utter failure to engage the evidence results in an utter failure to establish "actual controversy" Article III subject matter jurisdiction which should result in dismissal.

## REPLY

**A.    Plaintiff Concedes There is No Federal Question for Its Claim Under the Declaratory Judgment Act and Failed to Rebut Defendant's Evidence That Plaintiff Falsely Framed the Dispute Between the Parties in Its Complaint**

"In the present action, subject matter jurisdiction is predicated on diversity of citizenship. See Compl. ¶ 5." Dkt. #45, p. 13:3-4 of 28. Plaintiff is under the misconception that diversity of citizenship, by itself, bestows "actual controversy" Article III subject matter jurisdiction under the Declaratory Judgment Act.[1] Not so.

Where a motion to dismiss is grounded entirely on the argument that a party has failed to satisfy the jurisdictional "case or controversy" requirement, the court must construe the motion under Federal Rule of Civil Procedure 12(b)(1). *Rhoades v. Avon Prods., Inc.,* 504 F.3d at 1151, 1157 n. 3 (9th Cir.2007) (quoting *Bland v. Fessler,* 88 F.3d 729, 732 n. 4 (9th Cir.1996)). In a Rule 12(b)(1) motion, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 369 (1988) (overruled on other grounds in *Albino v. Baca,* 747 F.3d 1162, 1171 (9th Cir. 2014) [exhaustion of remedies not reachable].)

---

[1]    The Declaratory Judgment Act provides that "in a case of actual controversy" a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This "actual controversy" requirement "is the same as the 'case or controversy' requirement of Article III of the United States Constitution." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.,* 655 F.2d 938, 942 (9th Cir.1981) (citations omitted). In an action for declaratory relief, the plaintiff must establish two basic requirements: (1) the court has federal subject matter jurisdiction over the claims and (2) an actual case or controversy exists. 28 U.S.C. § 2201; see also *Calderon v. Ashmus,* 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998).

Plaintiff's opposition is lacking in this regard.  State law creates and determines the substantive rights and duties that may be vindicated through declaratory relief under the Declaratory Judgment Act predicated on diversity jurisdiction. See *St. Paul Fire and Marine Ins. Co. v. Weiner,* 606 F.2d 864, 867 (9th Cir.1979); *Compass Bank v. Morris Cerullo World Evangelism*, 2015 WL 5039991, *10 (S.D. Cal. August 26, 2015) (*Morris Cerullo*); *Compass Bank v. Petersen,* 886 F.Supp.2d 1186, 1196 (C.D.Cal. 2012).  Because this Court's subject-matter jurisdiction over this case arises in diversity as plaintiff readily concedes in its opposition (Dkt. #45, p. 13:3-4 of 28), the Court is to apply California law to determine the parties' rights in this case. *Morris Cerullo, supra,* 2015 WL 5039991, at 10.

Plaintiff attempts to raise a choice of law issue in the subject matter jurisdiction question under the Declaratory Judgment Act by mislabeling the gravamen of its Complaint. Dkt. #45, p. 15:13-15. Yet, courts that have been presented with this sort of novel argument reject the notion that choice of law principles apply to that question. *Royal Indem. Co. v. Apex Oil Co.,* 511 F.3d 788, 797 (8th Cir.2008) (rejecting a party's attempt to invoke choice of law considerations in the court's analysis); *Axis Surplus Ins. Co. v. McCarthy/Kiewit,* CIV. 10–00595 LEK, 2012 WL 112544, at *4–5 (D.Haw. Jan. 12, 2012) (same); *Moore v. State Farm Mut. Auto. Ins. Co.,* (D. Haw. December 18, 2012) 2012 WL 6629567 at * 9 ("The Court rejects Plaintiffs' argument that an analysis of choice of law should be considered in determining whether to exercise jurisdiction under the Declaratory Judgment Act.")

Even if choice of law was an appropriate consideration, California rejects attempts to mislabel the gravamen of their claims to invoke choice of law fraudulently as plaintiff does here. See *Blatty v. New York Times Co.,* 42 Cal.3d 1033, 1048 (1986) (attempts to avoid the rigorous First Amendment protections available to litigants by simply mislabeling the gravamen of claims not condoned); see also *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.,* 946 F.Supp.2d 957, 977 (N.D. Cal. 2013) (applying *Blatty*'s "gravamen" approach to fictitious choice of law claims in this district.)[2]

As Defendant demonstrated in his moving papers, plaintiff's Complaint is based on, triggered by and arises out of its assertion of Defendant's "threat to sue" contained in 4 separate factual averments

---

[2]    Defendant indulges plaintiff's bogus choice of law assertion more fulsomely in the accompanying Defendant Alan Jones's Reply to Plaintiff's Opposition to  Special Motion to Strike Plaintiff's Complaint Pursuant to California's Anti-slapp Statute (Dkt. 47, pp. 2-4) and refers the Court to this brief in order to avoid redundant arguments in both.

in the Complaint. Dkt. #1 (Complaint, p. 2, 6-7, ¶¶4, 30.) Dkt. #32, p. 14:7-17 of 38. Defendant also demonstrated that the only evidence of the purported "threats" that is the "wrong" plaintiff complains of involved his employment-related claims resulting from a July 12, 2023 pre-litigation demand letter and resulting email correspondence all of which was attached as Exhibits "B," "C and "F" to Defendant's Request for Judicial Notice ("|RJN"). Dkt. #32, 32-2, 32-3 and 32-6. See also Dkt. ##47-1, 47-2 and 47-5. Defendant does not dispute the authenticity of these documents,[3] but instead claims they are "irrelevant." Dkt. No. 46.3.[4]

Yet, in response to JONES's motion for a more definitive statement pursuant to Federal Rule of Civil Procedure 12(e) (Dkt. #21), plaintiff sent JONES the aforementioned trove of email correspondence (it now considers irrelevant) along with this communication: "I write concerning your motion for a more definite statement. In response to statements made in your brief, we are providing you with copies of the emails your prior counsel set to us. Additionally, we attach a Release and Covenant Not to Sue for your consideration." (Exhibit "E" to RJN, enclosing Exhibits "C" and "F" to RJN.) Dkt. ##47-1, 47-2 and 47-5. Indeed, plaintiff made clear it was the demand letter and the settlement negotiations that underlie the gravamen of its Complaint in its response to Federal Rule of Civil Procedure 12(e) motion. (See Dkt. #22 – Exhibit "G" to RJN; Dkt. #47-6.) Thus, there is no dispute between the parties that the JONES "threat" that triggered plaintiff to file its ill-conceived lawsuit arises out of the "threat" underlying his employment-related claims his former lawyer brought to plaintiff's attention through the latter's counsel.

Plaintiff simply ignore these admissions in its opposition. When presented with an argument under Rule 12(b)(1), "the district court is ordinarily free to hear evidence regarding jurisdiction and to

---

[3]    See *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."). The only source for the alleged "threat" referenced in the Complaint (Dkt. #1) are these documents and, as demonstrated, the "threat" is central to plaintiff's claim – indeed, it is the gravamen of the wrong alleged in the Complaint.

[4]    Plaintiff made them relevant and if they are not the proper subject of a request for judicial notice, they still constitute evidence and they were authenticated by JONES in his declaration in support of his moving papers. Dkt. #34. Those exhibits are now also attached thereto. See Dkt. ##47, 47-1, 47-2, 47-3, 47-4, 47-5 and 47-6.

rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983). Where such evidence is considered for this purpose, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

As Defendant demonstrated in his moving papers, the burden of proof in a 12(b)(1) motion is on the party asserting jurisdiction, and the court will presume a lack of jurisdiction until the pleader proves otherwise. See *Kokkonen v. Guardian Life Ins. Co. of Amer.,* 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir. 1989). On a Rule 12(b)(1) motion to dismiss, the plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Dkt. #32, pp. 17:24-18:2 of 38. In his moving papers, JONES proffered his own declaration in which he stated:

> At no time prior to plaintiff's Complaint filed on October 19, 2023, did I have any direct communications with plaintiff or its counsel related to any claims I intended to bring and relied entirely on Mr. Buerger to communicate them on my behalf. At no time did I authorize Mr. Buerger to make or articulate a claim for stock options under a contractual theory and to my knowledge he never did as reflected both in his letter (Exhibit "B" to RJN) and the email correspondence (Exhibit "C" to RJN.) My communications with plaintiff's counsel after the Complaint was filed did not involve the merits of the case but only matters concerning my responsibilities as a reluctant litigant as a named defendant in this action.

Dkt. #34, p. 2, ¶5 of 4.

This evidence has gone unrebutted. The undisputed facts are that the "threat" or "wrong" plaintiff complains of in its Complaint could only have arisen out of the communications between JONES's former lawyer, Alex Buerger, Esq., and LIGHT FIELD LAB's lawyers, Patricia L. Peden, Esq., and Ghazaleh Modarresi, Esq., over the course of July 12, 2023, through October 12, 2023, as demonstrated through the correspondence submitted in support of defendant's motion, notably, Exhibits "B," "C and "F" to RJN. Dkt. ##47-1, 47-2 and 47-5. Mr. Buerger spoke through this correspondence for JONES. Ms. Peden and Mr. Modarresi spoke for their client, LIGHT FIELD LAB, over the purported "threats" that give rise to plaintiff's Complaint. There were no other individuals involved in communications over the dispute other than Alex Buerger, Esq., Patricia L. Peden, Esq., and Ghazaleh Modarresi, Esq.

None of those communications involve a dispute over the contractual basis of a claim for loss stock options under LIGHT FIELD LAB's stock incentive plan.  If there had been, it was incumbent upon Patricia L. Peden, Esq., and/or Ghazaleh Modarresi, Esq. to place that card on the table, rebut defendant's showing that the gravamen of plaintiff's claim over the harm it claims from JONES's "threats" related solely to a damages claim for employment-related discrimination and retaliation, and affirmatively demonstrate that their client's lawsuit did not involve a "threat to sue" over employment-related claims.  They are the only witnesses advancing the "sounds in contract" narrative  capable of doing so – they signed the plaintiff's Complaint – and they are now noticeably silent, choosing to remain on the sidelines now that their client's sham Complaint has been exposed based on its true gravamen.

"The purpose underlying the availability of declaratory relief in the federal courts is to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." *Societe de Conditionnement v. Hunter Eng'g Co.,* 655 F.2d 938, 943 (9th Cir.1981).  Yet, JONES has established, factually, that his counsel never made a "threat" to force a sale of expired stock options under LIGHT FIELD LAB's stock incentive plan and that any damages claim he might assert arising out of his inchoate employment-related claims would and could only be based on the lost value of those options.

Plaintiff's failure to rebut JONES's declaration and the correspondence engaged in, plaintiff has not met its burden in establishing the Court's Article III jurisdiction under Rule 12(b)(1). See *Viasat, Inc. v. Certain Underwriters at Lloyd's, London,* 2023 WL 5985516 at *4  (S.D.Cal. September 14, 2023).  A dismissal for want of jurisdiction is appropriate where the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

**B.    Plaintiff's Opposition Admits That It is Seeking to Curtail Defendant's Property Rights in the Form of Damages in His Chose of Action in His Inchoate Employment-related Claims**

Incredibly, plaintiff concedes in its opposition that it is using its lawsuit in attempt to prevent defendant's recovery as a damage the loss of stock options in his employment-related claims that he has yet to formally act upon by filing suit.  "Light Field Lab presented Jones with a Release and Covenant Not to Sue directed to stock options that, if signed, would resolve the present dispute." Dkt. #45, p.

11:12-13 of 28. "Jones's theories of wrongful discharge must be submitted to arbitration." *Id.,* p. 11:14-15. "The employment arbitration, if successful, will entitle Jones to recover lost wages—the *permitted damages.* But even success will not allow Jones to recover stock options." *Id.,* p. 21:2-3; "Light Field Lab faces duplicate attorney's fees if Jones attempts to seek his options in arbitration, in violation of the Plan's venue provision." Dkt. #45, p. 27:17-18 of 28.

Perhaps it is beyond their experience, but wrongful termination cases where the loss of stock options as a damage is asserted are handled by proof of loss of the value of those options and not based on exercising stock options that have expired. See *Van Asdale v. International Game, Technology,* 2011 WL 2118637 at *18 (D. Nev. May 24, 2011) ("damages were primarily comprised of their lost value of unvested stock options . . . . While the amount of actual damages awarded to Shawn Van Asdale appears to reflect the amount offered by Plaintiffs' expert at trial for his unvested stock options . . . ."); *Castelluccio v. Intern. Business Machines Corp.,* (D. Conn. November 6, 2012) 2012 WL 5408420 at *5 ("Gary M. Crakes, Ph.D. has been designated as the plaintiff's expert on the issue of 'economic loss of earning capacity' resulting from the plaintiff's termination at IBM." . . . " Dr. Crakes further calculated a 'future discounted economic loss' of $924,990, consisting of $573,073 in future discounted loss of salary, $132,495 in future discounted loss of incentive compensation, and $219,422 *in future discounted **loss of the value** of the exercise of stock options* [emphasis added]). This concept appears to be incomprehensible to plaintiff – again, either feigned or real.

Plaintiff's assertion that "Jones's planned employment litigation will not entitle him to value for his lapsed stock options, under any possible outcome . . . ." (Dkt. #45, p. 20:20-21) is simply wrong on the law.  Defendant cited a number of cases where lost stock options as a damage in employment cases are recoverable. Dkt. #32, p. 15, fn. 3.[5]  Plaintiff did not address these authorities in its opposition. Plaintiff's continued insistence that stock options are not wages as a technical legal proposition lends

---

[5]    Lost stock options considered compensation and as a part of recoverable damages under Title VII (*Scarfo v. Cabletron Systems, Inc.,* 54 F.3d 931, 953 (1st Cir. 1995)) discrimination laws of other states and territories (*Bailey v. Lucent Technologies, Inc.,* 2004 WL 2106557 at *1, fn. 4 (E.D. Penn. September 21, 2004, *Gautreau v. EnLink Midstream Operating GP, LLC,* 2018 WL 6710036, *2 (M.D. LA November 26, 2018), *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.,* 867 F.Supp. 686, 690 (N.D. IL 1994), *Flamand v. American Intern. Group, Inc.,* 876 F.Supp. 356 (D. Puerto Rico 1994) as well as California' FEHA (*Cloud v. Casey,* 76 Cal.App.4th 895, 901 (1999), *Oliver v. Microsoft Corporation,* 2012 WL 12921328 at *1 (N.D. Cal. September 25, 2012)). Plaintiff failed to acknowledge these authorities in its opposition.

nothing to their argument that defendant's potential damages claim for wrongful termination may not recover the value of those lost option and, in fact, just demonstrates more unfamiliarity on the subject.[6] An expert may consult plaintiff's stock option plan to calculate the loss of value of the options, but that does not convert a wrongful termination plaintiff's tort claims into one sounding in contract.

Yet, ignorance of counsel, feigned or real, does not create a case in controversy for subject matter jurisdiction under Title III.  Nor does it furnish plaintiff, as JONES's former employer, to have a federal district court provide it with an advisory opinion that JONES, who seeks lost value of stock options, cannot exercise those stock options after they have expired, a factual proposition that is not in controversy.

Here, plaintiff tried desperately to make out JONES's "threat" of employment-related claims he has yet to file into a  claim sounding in contract for purposes of the Declaratory Judgment Act, but there is no truth to that contention as demonstrated by defendant in his successive motions to dismiss.  Instead, plaintiff attempts to foist onto JONES a theory he has no interest in pursuing nor has he threatened to pursue it as plaintiff falsely claims in all of its pleadings to date.

As a putative party for his employment related claims, JONES is the master over those claims and he may file a Title VII charge with the United States Equal Employment Opportunity Commission and then choose not to file a Title VII claim in court (*Rains v. Criterion Systems, Inc.,* 80 F.3d 339, 344 (9th Cir. 1996); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)); he can avoid federal jurisdiction by exclusive reliance on state law (*Easton v. Crossland Mortgage Corp.,* 114 F.3d 979, 982 (9th Cir. 1997)); and  JONES may challenge LIGHT FIELD LAB's right to arbitration after its attempt to drag him into federal court on a trumped up case in controversy. *Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1712, 1714 (2022) (Party demonstrating waiver of an arbitration agreement need not demonstrate any

---

[6]    Further demonstration of this lack of knowledge is this statement in plaintiff's opposition: "Here, the stock options will not be at issue if Jones initiates employment arbitration because California law governs the arbitration, and his options are not recoverable as 'wages.' The Plan documents *preclude* any contrary argument." Dkt. #45, p. 21:15-17 (emphasis added).  If this is plaintiff's actual position, it of course would run afoul of California's Supreme Court's decision in *Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal.4th 83 (2000), which recognized the principle that an arbitration agreement may not limit statutorily imposed remedies. *Id.,* at 103. LIGHT FIELD LAB's should seriously consider whether digging deeper holes and providing JONES fodder for challenging its arbitration agreement is in its best interests.

prejudice.  Instead, waiver merely requires a showing that the waiving party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right.")

What plaintiff cannot do, however, is pretend JONES made a "threat" involving a contractual interpretation of the stock option agreement in a lame attempt to force a case in controversy where none exists in a bid to restrict JONES's form of recovery in his employment-related claims. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241 (1937) (explaining that a controversy must not be "an advisory opinion advising what the law would be upon a hypothetical state of facts"). Plaintiff's charade in claiming a dispute over a stock incentive plan where none exists violates JONES's property interest in his chose in action,[7] another reason for this Court abstain from LIGHT FIELD LAB's invitation to adjudicate its contours (Dkt. #32, p. 37) and another proposition plaintiff ignored in its opposition.[8]

**C.      Plaintiff Failed to Address the Authorities Cited in Defendant's Second Motion to Dismiss That Successive Motions to Dismiss are Allowable Where Designed to Shorten the Improper Lawsuit Where the Plaintiff Fails to Demonstrate Article III Jurisdiction**

In his moving papers, defendant pointed out that successive motions to dismiss may be proper for expediency. Dkt. #32, p. 19 (citing *Doe v. White,* No. 08–1287, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010); *In re Apple iPhone Antitrust Litigation,* 846 F.3d 313, 319 (9th Cir. 2017); "*Moore's Federal Practice* endorses this approach. See 2–12 *Moore's Federal Practice—Civil* § 12.23.  Plaintiff ignored these authorities in its opposition but argued vociferously to the contra.

<u>CONCLUSION</u>

For the reasons set forth herein and in his moving papers defendant respectfully requests this Court dismiss plaintiff's Complaint without leave to amend.

Dated: January 22, 2024

                                                    /s/ Frank S. Moore
                                                    Frank S. Moore
                                                    Attorney for defendant ALAN JONES

---

[7]      California attaches property rights to a chose in action. *U.S. v. Stonehill,* 83 F.3d 1156, 1159 (9th Cir. 1996).  See also Cal. Civil Code §§ 654 and 663; *Parker v. Walker,* 5 Cal.App.4th 1173, 1174 (1992) ("A cause of action to recover money in damages, as well as money recovered in damages, is a chose in action and therefore a form of personal property.").

[8]      The "Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.' " *Gov't Emp. Ins. Co. v. Dizol,* 133 F.3d 1220, 1223 (9th Cir. 1998) (*en banc*) (internal citation omitted). "The Court is not required to hear every declaratory judgment case. It may decline to exercise jurisdiction over a declaratory judgment action even when the facts show a live controversy." *FN Cellars,* 2015 WL 5138173 at *2. This decision is entrusted to the Court's sound discretion. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995).

**CERTIFICATE OF SERVICE**

This is to certify that on the 22ND day of January 2024, I electronically filed the foregoing DEFENDANT ALAN JONES'S REPLY TO PLAINTIFF'S OPPOSITION TO SECOND MOTION TO DISMISS using the Court's CM/ECF filing system which sends notification of such filing to all parties and/or counsel of record.

Patricia L. Peden (SBN 206440)
E-mail: ppeden@bwslaw.com
Ghazaleh Modarresi (SBN 259662)
E-mail: gmodarresi@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1999 Harrison Street, Suite 1650
Oakland, California 94612-3520

Counsel for plaintiff LIGHT FIELD LAB

Dated: January 22, 2024                    Law Offices of Frank S. Moore

                                           */s/Frank S. Moore*
                                           Frank S. Moore
                                           Attorney for defendant Alan Jones

*LIGHT FIELD LAB v. ALAN JONES,*                          Case No.  4:23-CV-05344-YGR
DEFENDANT ALAN JONES'S REPLY TO PLAINTIFF'S OPPOSITION TO SECOND MOTION TO DISMISS          10