1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

9

**LIGHT FIELD LAB,**

10                        Plaintiff,

11              vs.

12

13      **ALAN JONES,**

14                        Defendant.

15

CASE NO.  4:23-cv-05344-YGR

**ORDER
DENYING MOTIONS TO DISMISS AS MOOT;
TENTATIVELY GRANTING MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION**

Re: Dkt. Nos. 21, 23, 31, 32

16          Pending before the Court are several motions to dismiss.  *See* Docket Nos. 21, 23, 31, 32.

17   In one of the motions, defendant argues that the Court lacks subject matter jurisdiction over the

18   single claim asserted in the complaint, which is for a declaratory judgment under the Declaratory

19   Judgment Act.  Plaintiff Light Field Lab opposes the motions.  Having carefully considered the

20   pleadings and the parties' briefs, and for the reasons set forth below, the Court **TENTATIVELY**

21   **GRANTS** the motion to dismiss for lack of subject matter jurisdiction, and it **DENIES AS MOOT** two

22   motions to dismiss that plaintiff filed while he was proceeding pro se.

23   **I.     BACKGROUND**

24          Plaintiff Light Field Lab is a Delaware corporation that conducts business in the State of

25   California.  Compl. ¶ 1, Docket No. 1.[1]  Defendant Alan Jones is a citizen of the State of

26
27

---

[1] The complaint was partially redacted.  *See* Docket No. 1.  The unredacted version of the
28   complaint was filed as Docket Number 4-3.

*(left margin, rotated)* United States District Court
Northern District of California

1    Washington.  *Id.* ¶ 2.  Plaintiff alleges that the requirements for diversity jurisdiction under 28

2    U.S.C. § 1332 are met because there is diversity of citizenship and the amount in controversy

3    exceeds $75,000.  *See id.* ¶ 5.

4         According to the complaint, "[t]his action arises out of Jones's employment for Light Field

5    Lab in California."  *Id.* ¶ 6.  Between 2019 and 2023, defendant was employed by plaintiff as an

6    at-will software engineer.  *Id.* ¶ 8.  While an employee, defendant accepted stock option grants

7    under Light Field Lab's 2017 Stock Incentive Plan and related documents, namely the Stock

8    Option Agreement and the Exercise Agreement (collectively, "the Plan").  *Id.* ¶ 9.  Light Field Lab

9    stock option grants are not stocks; they are contracts that allow the option grant recipient to

10   exercise options to purchase the common stock shares of Light Field Lab at a strike price and only

11   during specific time periods.  *Id.* ¶ 13.  The Plan's terms and conditions govern Light Field Lab's

12   stock options and provide that stock options are not employee wages or "expected salary or

13   compensation for any purpose, including but not limited to calculating severance payments, if any,

14   upon termination."  *See id.* ¶¶ 9-10 (citation and internal quotation marks omitted).  Defendant

15   allegedly agreed that any options granted to him by plaintiff were subject to the Plan's terms and

16   conditions.  *Id.* ¶ 11.  The Plan provides that, if defendant was involuntary terminated, he would

17   have three months from the date of termination to exercise his vested options.  *Id.* ¶ 16.

18        On June 23, 2023, plaintiff terminated defendant's employment; as of that date, defendant

19   had 116,458 vested options and 102,917 unvested options.  *Id.* ¶ 21.  Pursuant to the terms of the

20   Plan, September 24, 2023, was the deadline by which defendant could exercise the vested options

21   he had at the time of his termination.  *Id.* ¶ 22.  Defendant never attempted to exercise those vested

22   options.  *Id.*  Consequently, defendant's right to exercise those vested options allegedly ended on

23   September 24, 2023, pursuant to the terms of the Plan.  *See id.*

24        Plaintiff asserts a single claim against defendant for declaratory relief.  Plaintiff alleges that

25   the parties have "an actual and ongoing dispute concerning Jones's entitlement to ownership

26   interests" in shares of Light Field Lab, and that defendant "threatens to sue" it to obtain "the

27   equity interest in these shares" even though plaintiff "owns the disputed shares."  *Id.* ¶ 4.  Plaintiff

28   alleges that defendant asserts an entitlement to exercise stock options after the three-month

United States District Court
Northern District of California

2

exercise period set forth in the Plan expired and an entitlement to "stock equity interest from unvested options" in contravention of the terms of the Plan, and thus insists that "he alone is exempt from the Plan[.]"  *See id.* ¶¶ 22-24.  Plaintiff alleges that it needs a "judicial interpretation of the Plan Documents to avoid" legal uncertainty and risk of financial harm.  *See id.* ¶¶ 4, 23-24, 30.  Specifically, plaintiff alleges that defendant's demands impact its ability to secure investment capital and to issue new options already committed to other employees from a finite options pool under the Plan, and expose plaintiff to business risks, such as potential allegations by other Plan participants that plaintiff breached the Plan by acceding to defendant's demands even though such demands contradict the Plan's terms.  *See id.*

Plaintiff seeks a declaratory judgment providing that (1) pursuant to the Plan, defendant never earned any right to Light Field Lab's stock equity interest through option grants that were not vested at the time he was terminated, and that his vested stock options expired three months after his employment with plaintiff ended; (2) defendant failed to comply with the Plan because he failed to exercise his options; (3) defendant's demand for Light Field Lab's "stock equity interest" is not permitted under the Plan; and (4) plaintiff has no further or ongoing "equity-related obligations" to defendant.  *See* Compl. at 7.

In December 2023, while proceeding pro se, defendant filed a motion for a more definite statement, *see* Docket No. 21, and a motion to dismiss, *see* Docket No. 23.  Plaintiff filed oppositions to each of those motions.  *See* Docket Nos. 22, 29.

On January 2, 2024, counsel for defendant filed a notice of appearance.  Docket No. 27.  Thereafter, while represented by counsel, defendant filed a special motion to strike the complaint, Docket No. 31, and a motion to dismiss the complaint for lack of subject matter jurisdiction, Docket No. 32.

Defendant filed a declaration and documents in support of his motion to dismiss for lack of subject matter jurisdiction.  *See* Jones Decl. ¶ 5, Docket No. 34; Docket No. 33.[2]  Defendant

---

[2] The documents were filed as Docket No. 33 but were authenticated by way of defendant's declaration, which was filed as Docket No. 34.  *See* Docket Nos. 33, 34, 47.  Plaintiff does not dispute the authenticity of the documents or argue that the Court may not consider them for the

United States District Court
Northern District of California

declared that he never authorized his former counsel to "articulate [to plaintiff] a claim for stock options under a contract theory[.]" *See* Jones Decl. ¶ 5, Docket No. 34.  The documents that defendant filed show that, prior to the filing of this action, defendant's former counsel sent plaintiff a demand letter in which he complained about the terms of the severance offer that defendant received from plaintiff and stated that defendant had "strong claims" against plaintiff for "defamation/false light, disability discrimination, and retaliation." *See* Docket No. 33-2 at ECF header page 2.  The demand letter states that defendant is entitled to damages in connection with these employment-related claims, including "loss of equity" and "equity compensation" in connection with vested options that defendant could not afford to exercise before the deadline for doing so under the terms of the Plan, as well as unvested options he would have received had he not been terminated. *See id.* at ECF header pages 9, 11.  The demand letter further states that defendant would be willing to settle his employment claims for a cash payment, as well as an "extension of the exercise date" for his vested options from three months from the date of his termination to five years. *See id.* at ECF header page 11.  Thereafter, the parties communicated by email about a possible mediation; in that context, counsel for plaintiff described the parties' dispute as pertaining to a "single plaintiff wrongful termination claim." *See* Docket No. 33-3 at ECF header page 27.

The parties subsequently discussed a "money-only" settlement offer that no longer included the potential five-year extension of the options-exercise deadline but that included the value of vested and unvested options that defendant claimed as "equity loss as part of [his] wages." *See id.* at ECF header pages 40-46.  After plaintiff's counsel failed to respond to that settlement offer for weeks, defendant's former counsel stated that he would proceed with defendant's "administrative filings" in connection with his employment claims against plaintiff if he did not receive a counteroffer by October 18, 2023. *See id.* at ECF header pages 47-48.  Plaintiff filed the present action the next day, on October 19, 2023. *See* Docket No. 1.  Counsel

_____

purpose of resolving defendant's motion to dismiss for lack of subject matter jurisdiction. *See* Docket No. 45 at 16.

1    for plaintiff then sent defendant a release and covenant not to sue for his consideration, which

2    provides that, in exchange for plaintiff's dismissal of its declaratory judgment claim, defendant

3    would release all claims against plaintiff based upon or relating to the Plan, including "damages

4    based in any way on the Plan as compensation in connection with his Employment Claims" and

5    "any other demands arising from or related to the Plan," but that the release would otherwise

6    exclude any employment claims defendant may bring against plaintiff based on the termination of

7    his employment.  *See* Docket No. 33-5 at ECF header page 2; Docket No. 33-6 at ECF header

8    pages 2-4.

9    **II.   LEGAL STANDARD**

10   Under the Declaratory Judgment Act ("DJA"), any court of the United States may, "[i]n a

11   case of actual controversy within its jurisdiction" and "upon the filing of an appropriate pleading,"

12   declare "the rights and other legal relations of any interested party seeking such declaration,

13   whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The DJA is procedural

14   and does not confer subject matter jurisdiction; accordingly, a party seeking a declaratory

15   judgment under the DJA must establish subject matter jurisdiction arising under a federal question

16   or diversity of citizenship.  *See Skelly Oil v. Phillips Petroleum*, 339 U.S. 667, 671-72 (1950).

17   The DJA "confer[s] on federal courts unique and substantial discretion in deciding

18   whether to declare the rights of litigants," even if the declaratory claim "otherwise satisfies subject

19   matter jurisdictional prerequisites."  *Wilton v. Seven Falls Co*., 515 U.S. 277, 282, 286 (1995).  In

20   other words, a district court is "under no compulsion to exercise [its] jurisdiction" over declaratory

21   relief claims.  *See Brillhart v. Excess Ins. Co. of Am*., 316 U.S. 491, 494 (1942) ("*Brillhart*").

22   "When presented with a claim for a declaratory judgment . . . federal courts must take care

23   to ensure the presence of an actual case or controversy, such that the judgment does not become an

24   unconstitutional advisory opinion."  *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1157 (9th Cir.

25   2007) (citation omitted).  Accordingly, the Ninth Circuit has "long held that the district court must

26   first inquire whether there is an actual case or controversy within its jurisdiction."  *Principal Life*

27   *Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citation omitted).  "[I]f the court finds

28

United States District Court
Northern District of California

5

1  that an actual case or controversy exists, the court must decide whether to exercise its jurisdiction

2  by analyzing the factors set out in" *Brillhart* and its progeny.  *Id.*

3        "The requirement that a case or controversy exist under the Declaratory Judgment Act is

4  identical to Article III's constitutional case or controversy requirement."  *Id.*  "Thus, the Act

5  requires no more stringent showing of justiciability than the Constitution does."  *Societe de*

6  *Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981).  "To

7  establish that a particular declaratory action presents an actual case or controversy, a party is

8  required to show that, under all the circumstances of the case, there is a substantial controversy

9  between parties having adverse legal interests, and the controversy is of sufficient immediacy and

10  reality to warrant declaratory relief."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d

11  1542, 1555 (9th Cir. 1989).  "Absent a true case or controversy, a complaint solely for declaratory

12  relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1)."  *Rhoades*, 504

13  F.3d at 1157 (citation omitted).  A Rule 12(b)(1) motion will be granted if the complaint, when

14  considered in its entirety, fails to allege on its face facts sufficient to establish an actual case or

15  controversy.  *See id.*  A defendant may seek dismissal under Rule 12(b)(1) by presenting evidence

16  to refute the jurisdictional facts alleged in the complaint.  *See White v. Lee*, 227 F.3d 1214, 1242

17  (9th Cir. 2000).  If the defendant's evidence contradicts the allegations in the complaint, the

18  district court need not presume the truthfulness of the plaintiff's allegations, and the plaintiff must

19  then come forward with evidence to establish that the court has subject matter jurisdiction.  *See id.*

20  The party invoking a federal court's jurisdiction bears the burden of establishing that subject

21  matter jurisdiction exists.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

22  2004).

23        If a district court has subject matter jurisdiction over a claim for declaratory relief, it is

24  "authorized" to "stay or to dismiss" it in its discretion, so long as it considers the *Brillhart* factors.

25  *See Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1284 (9th Cir. 2021).  Under

26  *Brillhart*, district courts must "avoid needless determination of state law issues," "discourage

27  litigants from filing declaratory actions as a means of forum shopping," and "avoid duplicative

28  litigation."  *See id.* (citation omitted).  A district court also may but is not required to consider

factors that include: (1) whether the declaratory action will settle all aspects of the controversy; (2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; (4) whether the use of a declaratory action will result in entanglement between the federal and state court systems; (5) the convenience of the parties; and (6) the availability and relative convenience of other remedies.  *See id.* (citation omitted).

III.    DISCUSSION

A.    **Successive Motions to Dismiss**

Before turning to the substance of defendant's motion to dismiss for lack of subject matter jurisdiction, the Court will first address a procedural matter.  As noted, defendant filed two motions to dismiss while he was proceeding pro se.  *See* Docket Nos. 21, 23.  After he retained counsel in January 2024, defendant filed an additional motion to dismiss and a motion to strike. *See* Docket Nos. 31, 32.  Defendant requests that the Court consider the motions he filed after he retained counsel on the ground that, when he was proceeding pro se, he lacked the ability to recognize and properly present the allegedly dispositive jurisdictional issues that he raises in the motions he filed with the assistance of his counsel.  *See* Docket No. 32 at 7.

Plaintiff argues that the Court should not consider defendant's arguments if they were not made in the first motion to dismiss he filed when he was proceeding pro se because considering them would enable defendant to take a "second bite at the apple."  *See* Docket No. 45 at 5.

The Court will consider the motions that defendant filed after he retained counsel, Docket Nos. 31 and 32, instead of the ones he filed when he was proceeding pro se, Docket Nos. 21, 23. A district court has discretion to consider arguments made in successive motions to dismiss where, as here, there is no evidence that the subsequent motions were filed for the purpose of delay and the resolution of the issues raised in the subsequent motions would expedite the resolution of the case.  *See Evans v. Arizona Cardinals Football Club, LLC*, 231 F. Supp. 3d 342, 351 (N.D. Cal. 2017), *aff'd*, 761 F. App'x 701 (9th Cir. 2019) (collecting cases).  Because the Court will consider the motions that defendant filed with the assistance of his counsel, the Court **DENIES** the motions to dismiss that he filed while he was proceeding pro se, Docket Nos. 21 and 23, **AS MOOT**.

United States District Court
Northern District of California

1

**B.      Subject Matter Jurisdiction and the Declaratory Judgment Act**

2        As noted, the single claim in the complaint is for a declaratory judgment that clarifies the

3    parties' rights and obligations under the Plan and provides that plaintiff owes no "equity-related"

4    obligations to defendant.

5        Defendant argues that the Court lacks subject matter jurisdiction to adjudicate plaintiff's

6    declaratory judgment claim because there is no actual case or controversy between the parties with

7    respect to the terms of the Plan or any other contract.  *See* Docket No. 32 at 20-21.  Defendant

8    contends that plaintiff's allegations that its declaratory claim arises out of a contractual dispute are

9    not entitled to a presumption of truth because the materials he filed in support of his motion show

10   that the parties' dispute is about his allegations that plaintiff wrongfully terminated him and

11   discriminated against him.  Specifically, defendant declared that he never authorized his former

12   counsel to "articulate [to plaintiff] a claim for stock options under a contract theory[.]"  *See* Jones

13   Decl. ¶ 5, Docket No. 34.  The documents that defendant filed, whose authenticity plaintiff does

14   not dispute, show that, prior to the filing of this lawsuit, defendant's former counsel and counsel

15   for plaintiff discussed the possible settlement of defendant's allegations of wrongful termination

16   and employment discrimination.[3]  In that context, defendant's former counsel demanded, *as*

17   *damages* for defendant's employment claims, *the value* of the "equity loss" that defendant

18   allegedly suffered as a result of his termination, as well as a five-year extension of the three-month

19   deadline for exercising his options after his termination.  Those documents do not indicate that

20   defendant ever demanded options, shares, or other equity interests in Light Field Lab (as opposed

21   to the value thereof), or that defendant disputed the terms of the Plan or the parties' rights and

22   obligations under the Plan.

23       Plaintiff does not dispute any of the facts just described.[4]  Plaintiff relies exclusively on the

24   allegations in the complaint to argue that the parties have a live "contract-related" dispute about

25

26   ───────────────────
     [3] The Court may consider defendant's declaration and documents for the purpose of resolving the
27   present motion to dismiss for lack of subject matter jurisdiction.  *See Safe Air for Everyone*, 373
     F.3d at 1039.

28   [4] Where, as here, the party challenging a district court's subject matter jurisdiction has submitted
     evidence beyond the complaint to assert a factual challenge to jurisdiction, the Court need not

United States District Court
Northern District of California

the "scope of their rights" under the Plan in connection with "disputed options," *see* Docket No. 45 at 1-2. Plaintiff argues that a "case or controversy" exists that warrants the issuance of a declaratory judgment that clarifies the parties' rights and obligations under the Plan because defendant allegedly "continues to demand options and/or the value of the same to which he is not entitled" under the terms of the Plan and will not "stipulate that he will not sue for stock options when he brings his separate employment claims[.]" *See* Docket No. 45 at 2. Plaintiff seeks the declaratory judgment in question to preempt defendant from claiming options or their value as damages for his potential employment claims against plaintiff. *See id.*; *see also id.* at 14 (arguing that the Plan precludes any argument that defendant can demand options or their value as damages for his employment claims).

At issue is whether plaintiff has met its burden to show that a "case or controversy" exists between the parties under the DJA that warrants the issuance of a declaratory judgment that clarifies the parties' rights and obligations under the Plan. As noted, the existence of a "case or controversy" is one of the requirements for establishing subject matter jurisdiction to adjudicate a claim for a declaratory judgment under the DJA.[5]

The Declaratory Judgment Act's "actual case or controversy" requirement is met where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Principal Life*, 394 F.3d at 671. Where an actual case or controversy exists based on those standards, the Declaratory Judgment Act permits "potential defendants to file preemptive litigation to determine whether they have any legal obligations to their potential adversaries." *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014). "Filing a preemptive declaratory

---

presume the truthfulness of allegations in the complaint that are contradicted by that evidence. *See Safe Air for Everyone*, 373 F.3d at 1039. In that circumstance, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *See id.* (citation and internal quotation marks omitted). Here, plaintiff has not done so, as discussed in more detail throughout this order.

[5] Another requirement for subject matter jurisdiction to issue a declaratory judgment under the DJA is that the district court be able to exercise federal question jurisdiction or diversity jurisdiction. Here, it is undisputed that the requirements for diversity jurisdiction under 28 U.S.C. § 1332 are met.

United States District Court
Northern District of California

judgment action benefits potential defendants by relieving them from the Damoclean threat of impending litigation which a harassing adversary might brandish[.]" *Id.* (citation and internal quotation marks omitted).

"To determine whether the parties to a declaratory judgment action have adverse legal interests" that give rise to an actual case or controversy under the DJA, "[courts] first identify the law underlying the request for a declaratory judgment." *Shell*, 771 F.3d at 636. "It is necessary to first examine the underlying law because the Declaratory Judgment Act only creates new remedies, and therefore, the adverse legal interests required by Article III must be created by the authority governing the asserted controversy between the parties." *Id.* In a preemptive declaratory judgment action, such as the one at issue here, the "potential defendant in effect borrows the underlying cause of action that would be available to the potential plaintiff." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 879 (9th Cir. 2022) (noting that "it is the underlying cause of action of the defendant against the plaintiff that is actually litigated" in a declaratory action) (citation and internal quotation marks omitted); *see also Shell*, 771 F.3d at 636 (same) (citation omitted). "For example, a potential defendant in a patent infringement suit may proactively seek a declaratory judgment of non-infringement before the potential plaintiff asserts a cause of action under 35 U.S.C. § 281, which grants a patentee a remedy for patent infringement." *See City of Reno*, 52 F.4th at 879 (citation omitted). As another example, an insurer can proactively seek a declaratory judgment clarifying the parties' rights and obligations under an insurance contract before the insured brings a lawsuit to recover benefits under the contract. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 244 (1937).

Here, there is a mismatch between the cause of action underlying plaintiff's claim for declaratory relief and the causes of action that defendant threatened to file against plaintiff. Plaintiff argues that its "pleaded claim is for breach of contract,"[6] Docket No. 45 at 11, and that

---

[6] Although plaintiff argues that its declaratory judgment claim is for breach of contract, it alleges no facts in the complaint that either party breached any of the Plan's terms. The Court cannot infer, based on the facts alleged in the complaint, that defendant's alleged failure to exercise his options by the September 24, 2023, deadline for doing was a breach of the Plan, as opposed to a mere failure to exercise his rights under the Plan.

1    the parties' dispute is about their "contractual rights under the Plan," *see id.* at 2.  However, it is

2    undisputed that the claims that defendant threatened to bring against plaintiff before this litigation

3    began were employment claims (wrongful termination, employment retaliation and discrimination,

4    and defamation/false light).  Accordingly, plaintiff's declaratory relief claim does not "borrow"

5    defendant's underlying causes of action, as it must.  *See City of Reno*, 52 F.4th at 879.  Plaintiff

6    has cited no authority showing that its claim for a declaratory judgment is justiciable despite that

7    mismatch.

8              The cases that plaintiff relies upon for the proposition that its claim for a declaratory

9    judgment is justiciable are distinguishable.  In each of those cases, prior to the filing of the

10   declaratory action, the parties disputed whether there had been a breach of a contract or otherwise

11   disagreed as to their rights and obligations under a contract.  *See, e.g.*, *Bitter v. Windsor Sec., LLC*,

12   No. 13-CV-05022-WHO, 2014 WL 1411219, at *2-3 (N.D. Cal. Apr. 11, 2014) (holding that there

13   was a justiciable contract-related case or controversy that warranted the issuance of a declaratory

14   judgment that clarified the parties' rights and obligations under a contract because, prior to the

15   filing of the declaratory action, the declaratory defendant had sent a demand letter to the

16   declaratory plaintiff alleging that the declaratory plaintiff had breached the contract); *Aetna*, 300

17   U.S. at 242 (same where, prior to the filing of the declaratory action, "the parties had taken

18   adverse positions with respect to their existing obligations" under an insurance contract); *Molde-*

19   *Duque v. HH Riverside Prop. LLC*, No. EDCV202678JGBSPX, 2021 WL 2791612, at *4 (C.D.

20   Cal. Apr. 2, 2021) (same where "the parties disagree[d] as to [the] meaning" of a term in a

21   contract before the filing of the declaratory action); *Clear Channel Outdoor, Inc. v. Bently*

22   *Holdings California LP*, No. C-11-2573 EMC, 2011 WL 6099394, at *6 (N.D. Cal. Dec. 7, 2011)

23   (same where there was "a dispute between the parties as to their respective rights and obligations

24   under [a contractual] lease" before the filing of the declaratory action).

25             Here, by contrast, defendant's evidence, which is undisputed, shows that the parties' pre-

26   litigation dispute did *not* arise out of a disagreement about whether the Plan had been breached or

27   a dispute about the parties' rights and obligations under the Plan, as plaintiff alleges in the

28

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1   complaint.[7]  As noted, that evidence shows that the parties' dispute and discussions before the

2   filing of this lawsuit were about defendant's allegations of employment discrimination and

3   retaliation and wrongful termination and the possible settlement of the same.  The declaratory

4   judgment that plaintiff seeks, which would only clarify the parties' rights and obligations under

5   the Plan, would not resolve the parties' employment-related dispute.[8]  All of this renders

6   plaintiff's authorities inapposite.  Plaintiff has cited no authority in which a court has held that a

7   claim for a declaratory judgment on a private contract is justiciable under the DJA where, as here,

8   the claim does not arise out of a dispute about that contract.

9          Additionally, plaintiff has not shown that a dispute between the parties exists that is of

10   "sufficient immediacy" to warrant the issuance of a declaratory judgment.  That is another

11   requirement for finding that a declaratory judgment claim presents a justiciable case or

12   controversy under the DJA.  *See Principal Life*, 394 F.3d at 671.  Where, as here, the declaratory

13   judgment sought is intended to clarify a contract, the "sufficient immediacy" requirement can be

14   met where the dispute about the meaning of the contract involves "measurable financial

15   consequences."  *See id.* at 671-72.

16          Here, plaintiff alleges that the issuance of a declaratory judgment is necessary because it

17   will suffer potential financial harm if the declaratory judgment it seeks is not issued.  Specifically,

18   plaintiff alleges that (1) defendant has demanded *stock options or shares*, and (2) unresolved

19   disputes about options or shares impact its ability to issue new options already committed to other

20   employees from a finite options pool under the Plan, *see* Compl. ¶ 4, as well as its ability to secure

21   additional investments, *see id.* ¶ 30.  However, defendant's documents contradict those

22

23   ────────────────

    [7] Because defendant's evidence contradicts plaintiff's allegations that the parties' dispute is

24   contractual in nature and arises out of the Plan, the Court does not presume that those allegations
    are true for the purpose of resolving the present motion.

25   [8] At best, the declaratory judgment that plaintiff seeks may resolve only one of the issues that
    defendant could raise if he decides to file employment-based claims against plaintiff, namely

26   whether defendant can recover as damages for those claims the value of certain options he
    allegedly lost as a result of his termination.  However, a declaratory judgment claim is not

27   justiciable where the declaratory judgment sought "would not resolve the entire case or
    controversy" but "would simply carve out one issue in the dispute for separate adjudication."  *See*

28   *Calderon v. Ashmus*, 523 U.S. 740, 746-49 (1998).

allegations.  Defendant's documents show, and plaintiff has pointed to no evidence to dispute, that defendant demanded *the value* of options (i.e., cash), as opposed to options, shares, or other equity interests.[9]  Plaintiff's allegations of potential harm are premised on defendant having demanded equity interests, not cash.  Plaintiff has not shown that the potential harms it alleges in the complaint exist even though defendant demanded the value of options (i.e., cash) instead of equity interests in Light Field Labs.  Accordingly, the Court cannot find that the "sufficient immediacy" requirement for finding a justiciable case or controversy under the DJA is met here.

For the foregoing reasons, the Court tentatively finds that plaintiff has failed to meet its burden to establish that its declaratory judgment claim satisfies the case or controversy requirement of the DJA.  The Court, therefore, tentatively **GRANTS** defendant's motion to dismiss for lack of subject matter jurisdiction.

### IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the motions to dismiss that plaintiff filed while proceeding pro se, Docket Nos. 21 and 23, **AS MOOT**.

The Court is tentatively inclined to **GRANT** defendant's motion to dismiss for lack of subject matter jurisdiction.

The Court will permit plaintiff to file a **SUPPLEMENTAL BRIEF** of no more than ten pages, within fourteen days of the date this order is filed, showing that its declaratory judgment claim is justiciable.  To the extent that plaintiff takes the position that the deficiencies discussed in this order can be cured by amending the complaint, plaintiff shall specify how and why in its supplemental brief, and it shall include citations to supporting authority.

---

[9] Defendant's initial demand for a five-year extension of the deadline to exercise his options is not akin to a demand for options or equity in Light Field Labs, because the extension in and of itself would not entitle defendant to any shares or equity in Light Field Labs.  Under the Plan, defendant would not be able to receive any shares in Light Field Labs even if the exercise deadline was extended by five years; to receive shares, defendant would need to exercise his options (and pay a price for doing so) before the five-year deadline expired.  *See* Compl. ¶ 13.  In any case, defendant later dropped his demand for a five-year extension of the exercise deadline in favor of a money-only settlement; accordingly, defendant's demand for the five-year extension appears to no longer be at issue.

United States District Court
Northern District of California

1    Defendant may file a **RESPONSE** to plaintiff's supplemental brief of no more than ten pages

2    within fourteen days of the date that plaintiff's supplemental brief is filed.

3    Plaintiff may file a **REPLY** of no more than five pages within seven days of the date

4    defendant's response is filed.

5    After the supplemental briefing is completed, the Court may set a hearing if it finds that

6    one is necessary.

7    If plaintiff does not file a supplemental brief within fourteen days of the date this order is

8    filed, the Court will grant defendant's motion to dismiss for lack of subject matter jurisdiction for

9    the reasons set forth above and it will terminate the action.

10    This order terminates Docket Numbers 21 and 23.

11    **IT IS SO ORDERED.**

12    Dated:  April 19, 2024

13    _____
        **YVONNE GONZALEZ ROGERS**

14    **UNITED STATES DISTRICT COURT JUDGE**

15

United States District Court
Northern District of California

16

17

18

19

20

21

22

23

24

25

26

27

28